Arno Naeckel (SBN 026158)
Michael Kielsky (SBN 021864)
**Davillier Law Group, LLC**
Anaeckel@davillierlawgroup.com
Phxadmin@davillierlawgroup.com (file copies)
4105 North 20th Street Ste. 110
Phoenix, AZ 85016
Telephone: (602) 730-2985
Facsimile: (602) 801-2539
*Attorneys for Amicus Arizona Republican Party*

# IN THE UNITED STATES DISTRICT COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Kathleen Hobbs, et al., <br><br> Defendants. | Case No. 2:22-cv-00677-JJT <br><br> **Arizona Republican Party's Brief Amicus Curiae in Support of Plaintiffs' Motion for Preliminary Injunction** |

**Our elections should be as secure as Fort Knox. But instead, they're less secure than your Amazon account.** State and local officials take their jobs seriously, but they ☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐☐ Even then, it's hard for local officials to defend against attacks from foreign governments. In the 2016 election, the Russian government tried to infiltrate at least 39 state election systems and at least one election equipment company. They tried to spear-phish more than 100 local election officials' email accounts. They even successfully broke into several voter registration databases.

The harsh truth is that our elections are extremely vulnerable to attack[.]

-Senator Elizabeth Warren (D-MA) (June 25, 2019) (emphasis in original)[1]. While Senator

---

[1] Elizabeth Warren, *My Plan to Strengthen our Democracy*, Medium (June 25, 2019) (available at: https://medium.com/@teamwarren/my-plan-to-strengthen-our-democracy-6867ec1bcd3c).

Warren has been far less vocal about such issues since the 2020 general election, these vulnerabilities in our elections systems remain of the utmost concern to the Arizona Republican Party (sometimes "AZGOP"). Therefore, the AZGOP, as Amicus Curiae, respectfully urges this Court to issue injunctive relief and enter judgment in favor of Plaintiffs herein.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Arizona has two sources of election law, statute and a document referred to as the Elections Procedures Manual ("EPM"), which must be issued "not later than December 31 of each odd-numbered year immediately preceding the general election". A.R.S. § 16-446(B). When procedures are properly propounded via the EPM, they have the force of law and their violation is subject to criminal penalty. *Id*. (C).

A.R.S. § 16-446, et cet., authorizes the use, and prescribes the requirements of, electronic voting systems. A.R.S. § 16-449(B) provides that "Electronic ballot tabulating systems shall be tested for logic and accuracy within seven days before their use for early balloting **pursuant to the instructions and procedures manual for electronic voting systems that is adopted by the secretary of state as prescribed by section 16-452**" (emphasis added).

A.R.S. § 16-449(A) provides that political parties have the right to send representatives to observe such logic and accuracy tests.

Title 16 does not contain a full set of specific procedures for securing electronic voting systems from unauthorized access or manipulation. Rather, this has historically been left to the EPM.[4] However, despite the fact that the deadline to propound an EPM for the 2022 election cycle has long-passed, no new EPM has been put in place and the Attorney General, in conjunction with the Yavapai County Republican Committee, has brought a lawsuit against Secretary Hobbs alleging that no valid EPM exists which governs the 2022

---

[4] *See e.g.*, 2019 EPM pg. 95-98 (available at https://azsos.gov/sites/default/files/2019_ELECTIONS_PROCEDURES_MANUAL_APPROVED.pdf)

2

primary and general elections.[5] It is the AZGOP's contention that this uncertainty, so close to a general election, regarding how Arizona's electronic voting systems will be safeguarded in advance of the 2022 general election, makes their use in that election especially risky.

**ARGUMENT**

**I. Plaintiffs' Have Sought Relief Under the Federal Constitution but Granting Such Relief Would Also Further the Goals of the Arizona Constitution.**

In Griffin v. Buzard, 86 Ariz. 166, 173, 342 P.2d 201, 208 (1959), the Arizona Supreme Court stated that "the courts must be alert to preserving the purity of elections and its doors must not be closed to hearing charges of deception and fraud that in any way impede the exercise of a free elective franchise."

In Chavez v. Brewer, 222 Ariz. 309, 214 P.3d 397 (App. 1 2009), Arizona's Supreme Court discusses several Arizona constitutional provisions, including our requirement in Article 2, Section 21, that "elections shall be free and equal." The Supreme Court concluded that Arizona's constitutional right to a "free and equal" election is implicated when votes are not properly counted. *Id*. p. 320:

> We further conclude that appellants may be entitled to injunctive and/or mandamus relief if they can establish that a significant number of votes cast on the Diebold or Sequoia DRE machines will not be properly recorded or counted.

Thus, preliminary injunctive relief furthers the goals of the Arizona Constitution of ensuring that all votes are accurately counted and only lawful votes are counted.

**II. Reliance on Logic and Accuracy Testing to Safeguard our Elections Systems from Unauthorized Intrusion is Misplaced.**

Reliance on the Logic and Accuracy testing to secure our elections systems from unauthorized intrusion is misplaced. Logic and accuracy testing amounts to nothing more

---

[5] *See* Plaintiffs' Verified Compl. for Special Action Relief (P1300CV 2022-00269) (available at http://apps.supremecourt.az.gov/docsyav/Cases/Brnovich%20v.%20Hobbs/2022-04-21%20-%20COMPLAINT%20-%20COMPLAINT.pdf)

than an elaborate public relations or sales presentation, no different in function and practice than administering a multiple-choice examination when handing each test subject the answer key.

Representatives of the AZGOP have a statutory right under Arizona law to observe logic and accuracy testing of automatic tabulating equipment. A.R.S. § 16-449(A). This testing is supposed to "ascertain that the equipment and programs will correctly count the votes cast for all offices and on all measures." *Id*. However, the specific testing prescribed by statute is, even on its face, insufficient to achieve this goal. It consists only of "processing a preaudited group of ballots so marked as to record a predetermined number of valid votes for each candidate and on each measure and shall include for each office one or more ballots that have votes in excess of the number allowed by law in order to test the ability of the automatic tabulating equipment and programs to reject such votes." *Id*. Maricopa County's understanding of logic and accuracy testing appears to comport with these limited statutory requirements:

> The logic and accuracy test uses a set of test ballots with a predetermined set of results to verify that the election management system (EMS) is accurately programed for the specific election. Ballots and individual votes are scanned on precinct and central count tabulators and reports are run to determine if votes attributed to candidates and ballot measures in the election management system (EMS), are correct and accurately being counted, sent to adjudication, summarized, and reported.

2022 Elections Plan, Maricopa County Elections Department, p. 59[10].

This type of test cannot meaningfully assure that the tested equipment does anything other than report the very result it was pre-programmed to report at a particular date and time, and thus is of extremely limited practical value. It is not any type of true testing of anything, yet it is touted by Defendants for political and public relations purposes, which appears to be the main benefit of this elaborate exercise. Thus, the logic and accuracy testing that the AZGOP's representatives are permitted to observe, even when correctly

---

[10] https://recorder.maricopa.gov/site/pdf/FINAL%20-%202022%20Elections%20Plan.pdf last retrieved 05-10-2022

4

performed, necessarily fails to satisfy the AZGOP that electronic voting systems are adequately secured against manipulation by bad actors with in-person access to the voting equipment (or with access via internet).

**III. Loss of Data Requiring Preservation Pursuant to State Records Retention Laws.**

A.R.S. § 39-121.01 requires "[a]ll officers and public bodies shall maintain all records, including records as defined in section 41-151, reasonably necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities that are supported by monies from this state or any political subdivision of this state". Plaintiffs credibly allege that Defendants have in prior elections utilized electronic voting systems which failed to preserve data as required by law, and threaten to use such systems in future elections.

Most concerning is that Defendants never had access to some of the relevant records to begin with. They were apparently denied the authority to access them under the contract with their chosen electronic voting system vendor. *See* Allister Adel, *Re: Your July 26, 2021 legislative subpoena to the Board of Supervisors* pg. 2 ("Maricopa County does not have passwords that allow for administrative access to the Dominion tabulation equipment, which is not needed to conduct elections. Those passwords are in the exclusive custody and control of Dominion Voting Systems, and the County has no right 'to access' them.").[12]

Also concerning, as the Arizona Attorney General has noted, is that Maricopa County, in particular, engaged in obstructionist behavior when it came to requests to preserve electronic data contained on election equipment made in the wake of the 2020 election.[13] Further, Maricopa County appears to have allowed some records necessary to

---

[12] Available at: https://www.maricopa.gov/DocumentCenter/View/70435/Final-Signed-Letter-to-Senators

[13] Mark Brnovich, Interim Report – Maricopa County November 3, 2020 General Election, Apr. 6, 2022, pg. 2 (available at https://www.azag.gov/sites/default/files/2022-04/2022-04-06%20Fann%20letter.pdf). As a further example of such obstructionist behavior, though Maricopa County makes much of its own supposedly "independent" audit in its Motion to Dismiss, Maricopa Co. Mot. to Dismiss 2:16-3:24, Maricopa County strenuously and successfully resisted attempts by the Maricopa County Libertarian Party to send a representative to observe this audit. *See* case history CV2021-

keep account of its official activities during the 2020 general election to be overwritten. *See* Answers to Senate Questions Regarding Maricopa County Election Network pg. 7 ("Special Master's Report") (noting that, by the time of inspection, the vote tabulating equipment used during the 2020 election had been replaced), pg. 10-18 [third column] (noting several instances where contemporaneous data from the 2020 general election had been rendered unavailable by the passage of time because it had been copied over by newer data), *see also* Compl. ¶ 127 (alleging that these entries had been programmatically overwritten).[14]

This point, standing alone, appears a violation of Defendants' records retention obligation under Arizona's record retention laws, as well as the applicable federal and state laws for maintaining records and logs identified by Plaintiffs. Indeed, under the terms of its contract, Maricopa County *cannot* fully comply with Arizona law's record retention requirements. Lacking even administrative access to these systems, Maricopa County is in no position to reassure anyone that they are safe and secure.

**IV. Defendant Hobbs' Refusal to Comply with Statutory Duties**

As Plaintiffs note above, Secretary of State Hobbs has refused to comply with her statutory duty to propound a lawful Elections Procedures Manual ("EPM"). *See* Complaint, p. 43 at ¶ 146. That issue is subject to separate litigation brought by the Arizona Attorney General and the Yavapai County Republican Party. It is another example of Arizona's elections officials shirking their duties which the legislature has required so as to protect and preserve the rights of voters. This failure, as noted above, means that Maricopa and Pima County's electronic voting systems will be devoid of even some of the protections that they enjoyed in 2020.

**V. Maricopa County is in no Position to Dispute Plaintiffs' Allegations that**

---

002205. Available at: https://www.clerkofcourt.maricopa.gov/records/election-2020/cv2021-002205/-npage-2. The AZGOP filed an amicus brief in support of the Libertarian Party's position.

[14] Available at: https://www.maricopa.gov/DocumentCenter/View/74501/Final-Report-Answers-to-Senate-Questions.

**Defendants Permit Voting Systems with Internet Connections.**

Plaintiffs allege in their complaint that Defendants utilized electronic voting systems which permit or are capable of unauthorized user access over the internet or by cellular networks. *See First Amended* Complaint, ¶¶ 12, 26, 29, 61, 88, 104, 109, 110, 111, 128, 129, 133, and 164. Amici join this concern. While the Special Master's Report, *supra*, failed to find evidence in that audit, it must be pointed out that this audit was only able to review a limited snapshot in time, over a year after the election, yet the electronic voting systems are built with the capability of being connected to the internet or cellular networks. Further, the elections equipment utilized by Maricopa County contains an access port into which USBs can be inserted. Special Master's Report pg. 19-20. Though the Special Master's Report noted that Maricopa County takes steps to prevent unauthorized physical access to the election equipment, it also found that these safeguards had been breached on at least one occasion in 2020. *Id*. 17.[15] This is of special concern to the AZGOP because, while political party observers are permitted to observe when elections officials access completed vote tallies on the machines, Special Master's Report pg. 19, they obviously cannot observe incidences of unauthorized access.

**VI. Amici Specifically Note that Defendants' Vendor's System Failed Certification.**

Plaintiffs allege that Dominion's DVS 5.5-B voting system, scheduled to be used in the upcoming Midterm elections in Arizona, is substantially similar to the 5.5-A system which has twice failed certification in Texas. *See* Complaint, p. 30 at ¶ 106. The AZGOP highlights this fact because it further illustrates the failure of Defendants to subject these electronic voting systems to proper, independent, exhaustive hardware, firmware, and software testing and a detailed examination by skilled and experienced independent engineers.

Amici understands that it may be the contention of Defendant Maricopa County that

---

[15] The equipment that was illegally accessed was not the same equipment that contains the access port but this still highlights the limitations of Maricopa County's security procedures.

7

meaningful differences exist between these two versions. Amici urge the Court to carefully scrutinize whether this is indeed the case.

**CONCLUSION**

As recent years have demonstrated, there continues to exist widespread concern regarding how Arizona conducted past election, specifically the tabulation of votes. While this is a concern for all political parties, this concern is uniquely heightened for the Republican Party in the 2022 election.

Unfortunately, the deficiencies outlined above and alleged in Plaintiffs' complaint fuel strong reactions from many Arizona Republicans who are losing confidence in our elections system and who would be reassured by the issuance of a preliminary injunction. The Arizona Republican Party has long fought to ensure that elections are conducted in a transparent matter. This goal is of even greater import as the State and the nation are still reeling from hyper-partisanship and stark political divides, and since significant concerns have been raised about states and counties launching new procedures and methods for voting and vote tabulation, each relying to a greater extent than ever before on the "black box" voting equipment. Without question, these issues are of grave concern to the Arizona Republican Party and its members.

For the foregoing reasons in addition to those raised by Plaintiffs, the Arizona Republican Party respectfully requests that this Court enter the preliminary injunction requested by Plaintiffs.

RESPECTFULLY SUBMITTED on June 14, 2022.

By */s/Michael Kielsky*

Arno Naeckel
Michael Kielsky
**Davillier Law Group, LLC**
4105 North 20th Street Ste. 110
Phoenix, AZ 85016
*Attorneys for Amicus Arizona Republican Party*

I CERTIFY that a copy of the forgoing has been served upon the other parties to this action in conformity with the applicable rules of procedure.

By */s/Yuka Bacchus*
**Davillier Law Group, LLC**
