**Parker Daniels Kibort**
Andrew Parker (028314)
888 Colwell Building
123 Third Street North
Minneapolis, Minnesota 55401
parker@parkerdk.com
Telephone: (612) 355-4100
Facsimile: (612) 355-4101

**OLSEN LAW, P.C.**
Kurt Olsen (D.C. Bar No. 445279)*
1250 Connecticut Ave., NW, Suite 700
Washington, DC 20036
Telephone: (202) 408-7025
ko@olsenlawpc.com

Alan M. Dershowitz (MA Bar No. 121200)*
1575 Massachusetts Avenue
Cambridge, MA 02138
* Admitted Pro Hac Vice

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake; Mark Finchem, | No. 22-cv-00677-JJT |
| Plaintiffs, | (Honorable John J. Tuchi) |
| v. | |
| Kathleen Hobbs, as Arizona Secretary of State; Bill Gates; Clint Hickman; Jack Sellers; Thomas Galvin; and Steve Gallardo, in their capacity as members of the Maricopa County Board of Supervisors; Rex Scott; Matt Heinz; Sharon Bronson; Steve Christy; Adelita Grijalva, in their capacity as members of the Pima County Board of Supervisors, | **PLAINTIFFS' OPPOSITION TO MARICOPA DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Oral Argument Requested |
| Defendants. | |

Plaintiffs respectfully submit this Opposition to the Motion to Dismiss the First Amended Complaint filed by the Maricopa County defendants and joined by the Pima County defendants (collectively, "Defendants"). Most of the Defendants' arguments merely frame disputes of fact between the parties. A defendant's assertion of facts contrary to the allegations in a complaint provides no basis for dismissal. The other arguments advanced by Defendants fail on their merits. Accordingly, the motion should be denied.

## I.     PLAINTIFFS' ALLEGATIONS

The Amended Complaint ("Complaint") alleges that Defendants intend to use electronic voting machines to administer future elections, including the 2022 Election scheduled for November 8, 2022. Compl. ¶¶ 1, 177-183 (ECF no. 3). To this day, security failures in electronic voting systems that permit hacking, tampering, and fraud that would wrongfully alter vote totals are continually being discovered. *Id*. ¶¶ 71-92. Security measures are inadequate to remediate these failures. *Id*. ¶¶ 144-152. Moreover, these security failures and vote manipulation can be undetectable notwithstanding security measures such as logic and accuracy tests, risk limiting audits, and certification standards. *Id*. ¶¶ 75, 31, 116, 146.

Conducting an election by a means that allows vote totals to be secretly manipulated violates Plaintiffs' fundamental constitutional right to vote. *Id*. ¶¶ 178-81. If the result of an election can be determined by an electronic intruder changing data in Defendants' computerized election equipment, then the votes cast by voters are meaningless and their right to vote and have the votes accurately counted has been nullified, regardless of which party they vote for. Defendants do not seriously contest this legal claim. Instead, their motion to dismiss improperly attacks the factual basis for Plaintiffs' theory, and advances meritless procedural arguments.

## II.     DEFENDANTS' FACTUAL DISPUTES PROVIDE NO BASIS FOR DISMISSAL.

The core of Defendants' motion is their refrain that the allegations in the Complaint

1

are incorrect. This refrain does not – cannot – provide a basis for dismissal under Rule 12(b)(6). At most Defendants show that material disputes of fact exist. If their assertions were presented as evidence in a motion for summary judgment, the motion would fail. Framed as a motion to dismiss, their assertions do not even make it to the legal starting line as a basis for dismissal.

A. **Dismissal May Not Be Obtained by Contradicting the Facts Alleged in the Complaint.**

Defendants' motion is brought under Fed. R. Civ. P. 12(b)(6). Maricopa Cty. Defs.' Mot. to Dismiss Pls. First Am. Compl. at 1 (ECF no. 27) ("Defs.' Mot."). "[O]n a Rule 12(b)(6) motion, 'The facts alleged in a complaint are to be taken as true.'" *Hoffman v. Preston*, 26 F.4th 1059, 1061 (9th Cir. 2022) (citations omitted); *Martin v. Pierce Cty.*, _ F.4th _ (9th Cir.), no. 21-35251, 2022 U.S. App. LEXIS 14640, at *4 (May 27, 2022). The facts alleged must be "construed in the light most favorable to the nonmoving party." *Hamm v. Equifax Info. Servs. LLC*, No. CV-17-03821-PHX-JJT, 2018 U.S. Dist. LEXIS 123505, at *3-4 (D. Ariz. July 24, 2018) (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)).

It is elementary that facts outside the complaint may not be considered at the motion-to-dismiss stage. *WBS, Inc. v. Croucier*, 762 Fed. Appx. 424, 428 (9th Cir. 2019). The Court must "disregard[]" evidence outside the Complaint, such as "portions of the Federal Communications Commission's website." *Enos v. Arizona*, No. CV-16-00384-PHX-JJT, 2017 U.S. Dist. LEXIS 19268, at *10 (D. Ariz. Feb. 10, 2017). The "simple question before the Court" on a motion to dismiss is "whether Plaintiffs have alleged sufficient facts in the Amended Complaint to allow the Court to plausibly infer" that the Defendants' conduct will deny Plaintiffs their rights. *See id*.

The Court may consider "matters that may be judicially noticed pursuant to Federal Rule of Evidence 201." *Hamm*, No. CV-17-03821-PHX-JJT, 2018 U.S. Dist. LEXIS 123505, at *4 (citing *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988)).

However, to be judicially noticed, facts must be able to be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Moreover, a court may not take judicial notice of a fact that is "subject to reasonable dispute." *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). It may not take notice of disputed facts, even if asserted in public records. *Id*. If the court takes judicial notice of another court's opinion, "it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" *Id*. at 690 (citation omitted). As explained in *In re Gilead Scis. Sec. Litig.*, cited at Defs.' Mot. 1, "a district court ruling on a motion to dismiss is not sitting as a trier of fact." 536 F.3d 1049, 1056-57 (9th Cir. 2008) (reversing dismissal of a complaint, where the district court rejected the plaintiff's factual allegations).

### B. The Facts Relied Upon by Defendants Are Disputed or Inadequate to Defeat Plaintiffs' Claims for Relief.

Each of Defendants' key factual assertions is either disputed or inadequate to defeat Plaintiffs' claims. Accordingly, Defendants' factual assertions provide no basis for dismissal.

**Testing of Election Equipment**. Defendants argue that their election equipment has been subjected to "neutral, expert evaluation," contrary to the allegations in the Complaint, because it was tested by "EAC-accredited" testing laboratories. Defs.' Mot. 2-4. Defendants' say-so that their testing process was neutral, expert, and independent is not a basis for dismissal, even if they point to an evaluation report. Plaintiffs dispute that the testing was actually independent, neutral, expert, or adequate, and allege that the equipment is insecure, deficient, and constitutionally inappropriate for use in elections. Compl. ¶¶ 23-29, 33, 57, 83-84, 90, 106-107, 137-43, 180-183. In effect, Defendants argue, with no authority, that EAC testing preempts Plaintiffs' claims. At this stage of the litigation, Defendants may not avoid scrutiny of the gross deficiency of their equipment merely by claiming that the equipment went through a process which could have been, and was,

3

inadequate to discover the deficiencies.

Plaintiffs' allegations that any testing performed on Defendants' equipment was inadequate are highly plausible. Voting machines have been cited in academic literature as the "best-documented example" of "adversarial testing" finding "flaws in software that had been certified by outside parties." Steven M. Bellovin et al., *Seeking the Source: Criminal Defendants' Constitutional Right to Source Code*, 17 Ohio St. Tech. L. J. 1, 35 (Dec. 2020) (Parker Decl. ¶ 8 & Ex. G). "[O]utside auditors have *always* found flaws" in voting machine software. *Id*. As a result, "[t]here is broad consensus among elections experts that modern software systems are, by virtue of their design, too complex and unreliable to be relied upon for determining the outcomes of civil elections." *Id*. at 36-37. Security failures are still being found in the face of EAC testing. Compl. ¶¶ 77-89, 116, 126. The Dominion system used in Georgia – the same Dominion system certified to be used in Arizona – was found by a federal court to be plagued by security risks and the potential for votes to be improperly rejected or misallocated. *Id*. ¶¶ 84-85. In response to security failures identified in the Dominion system by an expert witness in the Georgia case, *id*. ¶ 4, CISA, the federal agency responsible for certifying election equipment, on June 3, 2022, announced that Dominion's ImageCast X device, which is approved for use in Arizona,[1] has nine different security vulnerabilities "that should be mitigated as soon as possible."[2] Certification of voting equipment for use by federal and state authorities does not prove the equipment is secure against unauthorized manipulation.

**Auditing of Tabulation Results.** Defendants argue that the Complaint incorrectly alleges Arizona's vote tabulation results are not subject to a secure, independent audit. Defs.' Mot. 4-5. This argument is only another articulation of a disputed issue of fact. The

---

[1] *See* Arizona Secretary of State, 2022 Election Cycle/Voting Equipment*, *available at* https://azsos.gov/sites/default/files/2022_Election_Cycle_Voting_Equipment-Feb-Final.pdf.

[2] Cybersecurity & Infrastructure Security Agency, *ICS Advisory (ICSA-22-154-01): Vulnerabilities Affecting Dominion Voting Systems ImageCast X* (June 3, 2022), *available at* https://www.cisa.gov/uscert/ics/advisories/icsa-22-154-01.

Complaint alleges that Arizona's audit regime does not and cannot remediate the security problems inherent in the use of electronic voting machines. Compl. ¶ 144. The Complaint further alleges that post-election audits can be defeated by manipulation of electronic voting machines, citing expert testimony and EAC findings. *Id.* ¶¶ 31, 75, 116, 146. Defendants claim their audit system is sufficient; Plaintiffs allege that it is not. This disputed fact issue provides no basis to dismiss Plaintiffs' claims.

**Paper Ballot Procedures.** Defendants argue that they do use paper ballots to conduct elections. Defs.' Mot. 2. This argument is an attempt to distract from Plaintiffs' claims that the use of electronic equipment to scan and count ballots is not reliable and secure, and that hand counting of the paper ballots, visible and open to the public, is necessary. Compl. ¶¶ 7, 153. The issue is Defendants' use of unsecure and non-transparent electronic voting machines. Whether Defendants also use paper ballots is not relevant, and provides no basis for dismissal.

At the pleadings stage, Plaintiffs are only obligated to plead a claim showing an entitlement to relief. Fed. R. Civ. P. 8(a). Accepting their allegations as true, they have far surpassed that threshold. They are entitled to an opportunity to prove their allegations.

### III.  PLAINTIFFS' CLAIMS ARE TIMELY.

Defendants also seek refuge in various procedural arguments to the effect that Plaintiffs waited too long to bring their claims. Defs.' Mot. 6-10. None of these arguments provide any basis for dismissal. These arguments essentially assert that if the state can get away with unconstitutional election procedures long enough, its unconstitutional procedures become immune from legal challenge. That is not the law.

**Statute of Limitations.** Defendants' first argument for dismissal of the Complaint is their contention that it is barred by a two-year statute of limitations. Defs.' Mot. 6. Defendants' argument – unsupported by authority except for the uncontroversial proposition that the limitations period for a § 1983 claim is borrowed from state law – fails to recognize that Plaintiffs' claims are based on the expected occurrence of future harm during elections yet to come, not a completed harm. As a result, Defendants misstate the

5

point at which the applicable limitations period begins to run.

Defendants argue that a claim accrues when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Id*. But this formulation articulates only the "discovery rule," "which postpones the beginning of the limitations period from the date the plaintiff is actually injured to the date when he discovers (or reasonably should discover) he has been injured." *Lukovsky v. City & Cty. of S.F.*, 535 F.3d 1044, 1048 (9th Cir. 2008). The discovery rule is not relevant here, for Plaintiffs' injury, while impending in upcoming elections, has not yet occurred, and so the limitations period on Plaintiff's claims has not yet even started to elapse. *Hileman v. Maze*, 367 F.3d 694, 697 (7th Cir. 2004) (candidate's claim of fraudulent ballots in election arose out of injury that "could not have taken place" until the election date); *Davis v. Commonwealth Election Comm'n*, 990 F. Supp. 2d 1089, 1096 (D. N. Mar. I. 2012) (injury to plaintiff from being barred from voting "would only occur, if ever, on the date of the election"). The injury caused by unconstitutional methods of conducting an election is inflicted anew with each election. *Cf. Ellis v. Salt River Project Agric. Improvement & Power Dist.*, 24 F.4th 1262, 1271-72 (9th Cir. 2022) (claim alleging improper billing under new rate structure began accruing anew with each successive monthly bill, which constituted new injury).

For purposes of a statute of limitations, "[a]n accrual analysis begins with identifying "'the specific constitutional right'" alleged to have been infringed." *McDonough v. Smith*, 139 S. Ct. 2149, 2155 (2019) (citation omitted). Plaintiffs' constitutional right to vote in an election, and have their votes properly counted in that election, is infringed when Defendants use electronic election equipment that is fundamentally unsecure to scan and count votes. Absent this Court's intervention, that outcome and injury is impending in November. A plaintiff who is subject to the "credible threat" of impending injury through enforcement of law or government policy may bring suit seeking injunctive relief to prevent the threatened harm. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). That is what Plaintiffs' Complaint seeks to accomplish. It is not too late to bring these claims.

Defendants' statute of limitations theory is nonsensical. If their theory was correct, the statute of limitations would prevent any Arizona law from being challenged as unconstitutional if the challenge was not brought within two years of the law first being passed. That is not the law.

**Laches**. Defendants' second argument for dismissal alleges the Complaint is barred by laches. Defs.' Mot. 7-8. "Laches is an equitable time limitation on a party's right to bring suit." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 835 (9th Cir. 2002) (quoting *Boone v. Mech. Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979)). "[A] laches determination is made with reference to the limitations period for the analogous action at law. If the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." *Jarrow,* 304 F.3d at 835. Here, because Plaintiffs brought their claim within the two-year statute of limitations applicable to a § 1983 claim in Arizona, there is a strong presumption that laches is inapplicable. Defendants provide no showing sufficient to overcome that presumption.

Defendants argue that defects in electronic voting machines have long been known. Defs.' Mot. 7. True. But new security failures are also constantly being discovered. *See*, *e.g.*, Compl. ¶ 116. Defendants' laches argument in essence claims that a defective, illegal, improper election system becomes impervious to legal action to overturn it merely by the passage of time. That is not the purpose or function of the doctrine of laches. Every election resets the clock on claims seeking to reform the election system; every year provides more experience and evidence to guide citizens and officials in their response to the existing system. Laches does not bar Plaintiffs from bringing claims in one election merely because the same claims were not brought in previous elections. *Cf. Judulang v. Holder*, 565 U.S. 42, 61 (2011) ("Arbitrary agency action becomes no less so by simple dint of repetition.").

The laches cases cited by Defendants involved very different circumstances than here. In *Ariz. Libertarian Party v. Reagan*, 189 F. Supp. 3d 920 (D. Ariz. 2016), the plaintiffs gave notice to defendants of their intention to challenge an election law in August of 2015, but did not file their complaint until April 12, 2016 and brought an "emergency"

7

motion for a temporary restraining order on May 12, 2016 – where the provision they sought to overturn concerned a June 1, 2016 signature requirement for having a candidate's name printed on the primary election ballot. *Id.* at 924. The court's emergency hearing was held only eight days before the deadline. *Id*. Even so, the court invoked laches only to deny the plaintiffs' request for emergency relief concerning the June 1 primary deadline – not to dismiss the lawsuit altogether. *Id*. at 925. In *Ariz. Pub. Integrity All. Inc. v. Bennett*, No. CV-14-01044-PHX-NVW, 2014 U.S. Dist. LEXIS 84968, at *4-7 (D. Ariz. June 23, 2014), the plaintiffs also sought an injunction against Arizona's signature requirement for a candidate's name to be printed on the primary ballot, but they did not seek injunctive relief until May 15, 2014, where the deadline to file the signatures was May 28, 2014, challenges to signature sufficiency were due by June 11, 2014, and primary voting began on July 28, 2014. In *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 717 (D. Ariz. 2020), the plaintiffs filed suit *after* the election, seeking to decertify the results.

In this case, Plaintiffs filed on April 22, 2022, their initial complaint concerning the counting of votes in the November 2022 general election. They amended their complaint on May 4, 2022. The Defendants will have ample time to prepare their response – a key consideration in *Ariz. Libertarian Party*, *Ariz. Pub. Integrity All.*, and *Bowyer*. Further, the relief sought by Plaintiffs here extends beyond the 2022 Election. Laches affords no basis to dismiss this action.

**Purcell.** Defendants' third argument seeking dismissal relies upon *Purcell v. Gonzalez*, 549 U.S. 1 (2006). Defs.' Mot. 8-10. *Purcell*, not laches or a statutory limitations period, provides the appropriate legal framework to evaluate the timeliness of Plaintiffs' claims concerning vote counting in the 2022 Election. *Purcell* looks not to time past, but to time future – specifically, the amount of time remaining *before* the election, for that is the amount of time that determines whether changes can be made to the system before election day. And Plaintiffs' claims are easily timely under *Purcell*.

*Purcell* stands for the principle that a federal court should not cause confusion among voters by enjoining state election laws immediately before an election. 549 U.S. at

8

4-5 ("Faced with an application to enjoin operation of voter identification procedures just weeks before an election, the Court of Appeals was required to weigh . . ."). "That consideration is not present in this case, for two reasons. First, when Plaintiffs brought their action, the 2022 Election was more than five months away, not bare weeks, as in *Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081, 1086-87 (9th Cir. 2020) and the cases cited therein. "When an election is 'imminen[t]' and when there is 'inadequate time to resolve . . . factual disputes,'" *Purcell* will "often" (though "not always") prompt courts to "decline to grant an injunction to alter a State's established practice." *Ohio Republican Party v. Brunner*, 544 F.3d 711, 718 (6th Cir. 2008). The 2022 Election is upcoming, but not so imminent that inadequate time remains to allow for the relief sought by Plaintiffs. Defendants cite *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020), but the order in that case was issued five days before the election. They also cite *Short v. Brown*, 893 F.3d 671, 676 (9th Cir. 2018) and *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020), but in both of those cases the courts rejected the plaintiffs' arguments on their merits, not in reliance on *Purcell*. The other cases cited on page 9 of Defendants' Motion are also quite different from this one, in that they involved voting rules applicable in advance of an election (such as redistricting), not vote counting techniques applicable only after the election; or the relief was denied based on an analysis of the merits of the claims, not *Purcell*; or they were decided far closer to the election (e.g., less than eight weeks prior); or they addressed a motion to file amicus briefs.

Second, the "concerns that troubled the Supreme Court in *Purcell* are not present in this instance," where voters "will be entirely unaffected by an order enjoining" the disputed practice because it "applies only after a ballot is submitted." *Self Advocacy Sol. N.D. v. Jaeger*, 464 F. Supp. 3d 1039, 1055 (D.N.D. 2020). The relief sought by Plaintiffs here only affects the counting of the cast ballots – it does not affect the location of polling places, voter identity requirements, or any other matter that might prevent a voter from voting. All voters will be able to cast their ballots by appearing at the same poll locations just as they would in the absence of an injunction, so *Purcell*'s policy of preventing voter confusion is

9

not germane. *See also Common Cause Ind. v. Lawson*, No. 1:20-cv-01825-RLY-TAB, 2020 U.S. Dist. LEXIS 247756, at *13 (S.D. Ind. Oct. 9, 2020) ("But the concerns animating *Purcell* and its progeny are not present in this case. This court's decision to preliminarily enjoin the Challenged Amendments poses little risk of disrupting Indiana's election process or confusing voters. The laws only pertain to Election Day activities, so they have no effect on any aspect of the election process up until then; any ongoing early voting activity is unaffected by the injunction."). Here, as in "many election-related disputes" that may occur even as late as "*on* election day" or "*during* election week," it is "unclear" why *Purcell* would apply – and so the court need not refrain from granting injunctive relief. *Ohio Republican Party*, 544 F.3d at 718.

On the contrary, in light of the clear risk that illegal manipulation of vote totals may occur through unauthorized access to electronic election equipment, a different policy affirmed by *Purcell* weighs in favor of *granting* the relief sought by Plaintiffs:

> Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised. "[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise." *Reynolds* v. *Sims*, 377 U.S. 533, 555 (1964).

*Purcell*, 549 U.S. at 4. Plaintiffs' Complaint seeks to vindicate *Purcell*'s concern for the "integrity of the electoral processes." *Purcell* provides no basis to for dismissal here.

**The next election.** Even if Defendants' concerns about adequate time to prepare a hand count of ballots before the 2022 Election had any substance, those concerns would not justify outright dismissal of Plaintiffs' claims. At most they would counsel that the relief Plaintiffs seek be implemented in subsequent elections. *See Ariz. Libertarian Party*, 189 F. Supp. 3d at 925.

Plaintiffs' claims are timely.

10

## IV. THE COMPLAINT ALLEGES SUFFICIENT FACTS.

Defendants next argue that the Complaint lacks sufficient factual allegations to support a cognizable legal theory. Defs.' Mot. at 10-13. This argument simply ignores the allegations in the Complaint. The Complaint adequately alleges that Arizona's use of electronic election equipment permits unauthorized persons to manipulate vote totals, without detection, thereby infringing Plaintiffs' right to vote and have the vote counted accurately. The Complaint supports these claims with a wealth of facts showing that electronic election equipment can be fraudulently manipulated, and that manipulation can remain undetected. These facts plead a claim for relief.

Ignoring these detailed allegations, Defendants focus fact-based arguments on tangential matters. As noted above, Defendants argue that Arizona already uses paper ballots. *Id*. 10-11. The relief sought by the Complaint extends beyond the existence of paper ballots to the counting of votes, which must be done by hand and within public view to eliminate the opportunity for fraud, and to the tabulation of results across multiple voting centers, which must not permit an interloper to change electronic records of vote totals after votes are counted. Compl. ¶ 153.

Defendants also say the Complaint "is devoid of factual allegations sufficient to support" its claims for hand counting of votes. Defs.' Mot. 11. The Complaint alleges the manifold faults of electronic voting machines, showing that they are open to cyberattacks that can change votes and that safety measures cannot prevent such manipulation. Compl. ¶¶ 4-5, 28-31, 33, 73-92, 94-107, 116-17, 126-34, 146. These detailed allegations are sufficient to support a claim that the election equipment is unconstitutionally deficient. The alternative to using machines to count ballots is counting them by hand.

Defendants seek to distance themselves from the Complaint by pointing out that some of its allegations relate to events in other states. Defs.' Mot. 11. First, examples of defective election equipment in other states show that the risks Plaintiffs complain of in Arizona are real, not imaginary. Second, many of these allegations concern equipment similar to or the same as equipment used in Arizona. *E.g.* Compl. ¶¶ 14, 28, 73, 83, 103,

106-107, 116, 126-29, 133, 137, 139. Third, many of the allegations in the Complaint do directly mention Arizona or its equipment. *E.g.* Compl. ¶¶ 14-27, 33, 63-64, 66-70, 79, 94, 106-107, 132, 137, 139-143, 148-49. Defendants' assertion that the Complaint fails to allege facts to support the claim that electronic election equipment should not be used to count votes in Arizona is disconnected from reality.

## V. DEFENDANTS' JUDICIAL NOTICE ARGUMENT IS MERELY ANOTHER VEHICLE TO CONTRADICT FACTUAL ALLEGATIONS IN THE COMPLAINT AND PROVIDES NO BASIS FOR DISMISSAL.

Defendants next reiterate their disputes with the facts alleged in the Complaint. Defs.' Mot. 12-13. Defendants' assertion of contrary facts is improper and cannot justify dismissal. *See*, *e.g.*, *Hamm*, No. CV-17-03821-PHX-JJT, 2018 U.S. Dist. LEXIS 123505, at *3-4. Defendants seek to circumvent this rule by alleging *their* contrary facts are "matters of public record." Defs.' Mot. 12. This argument fails for two reasons. First, the exception they seek to rely upon does not apply to disputed facts – even if those facts are stated in a document that is purportedly of "public record." Second, the documents Defendants rely on for judicial notice do not provide a permissible basis to take notice of the matters that Defendants cite them for.

**No judicial notice of disputed facts.** The Ninth Circuit has explained on multiple occasions that, on a motion to dismiss, a court may not take judicial notice of "disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018); *Lee*, 250 F.3d at 689; *Quinones v. Cty. of Orange*, No. 20-56177, 2021 U.S. App. LEXIS 36293, at *4 (9th Cir. Dec. 9, 2021). Defendants' assertions concerning the Maricopa County audit are vigorously disputed. *See* Compl. ¶¶ 70, 132 & n.35, 148-49. *See also* Decl. of Doug Logan ¶¶ 59-64 & Exs. D & E (ECF nos. 39 & 39-1). As explained above, Defendants' claims that their electronic election equipment is not "untested and unverified," Defs.' Mot. 13, are also contested. Defendants' claims about air-gapping and internet connections, Defs.' Mot. 13-14, are vigorously disputed. Decl. of

12

Douglas Logan ¶¶ 81-84 (ECF no. 39).[3] Defendants' claims about the efficacy of hand-counting ballots, Defs.' Mot. 12, are tendentious and mischaracterize the Complaint; Plaintiffs do not cite the successful hand count of ballots in Maricopa in 2020 to show that all ballots in the state should be hand-counted at a single location by a small number of people. A proper hand-count would be conducted at each precinct on election day, vastly increasing the number of people counting and decreasing the number of ballots each counter reviewed, as compared with the Maricopa after-the-fact hand count.

**Judicial notice not permissible based on Defendants' citations.** This Court has held that "portions of the Federal Communications Commission's website" were not appropriate for consideration concerning a motion to dismiss. *Enos v. Arizona*, No. CV-16-00384-PHX-JJT, 2017 U.S. Dist. LEXIS 19268, at *10 (D. Ariz. Feb. 10, 2017). The materials cited by Defendants to contradict the allegations in the Complaint are even less worthy of judicial notice – a series of political party and media websites, and an advocacy document published by Maricopa County itself. *See* Defs.' Mot. at 12 n.6 & Maricopa County Defs.' Mot. for Jud. Notice Ex. 13 (ECF no. 29-14). These materials cannot seriously be called "sources whose accuracy cannot reasonably be questioned" within the meaning of Fed. R. Evid. 201(b)(2). Defendants also cite a special master report. Defs.' Mot. at 13 & Maricopa County Defs.' Mot. for Jud. Notice Ex. 12 (ECF no. 29-13). In *Lee*, the Ninth Circuit held that a waiver of extradition and a hearing transcript, from a different litigation, could not be used as the basis for judicial notice of disputed facts. 250 F.3d at 689-90. Further, the Ninth Circuit explained that taking judicial notice of "another court's opinion" does not allow notice of "the truth of the facts recited therein," but only "the existence of the opinion." *Id*. at 690. The same principle applies to a special master's report.

Defendants' disputes of the factual truthfulness of the allegations in the Complaint are far afield from any legal argument acceptable under Fed. R. Civ. P. 12 that could justify

---

[3] The Court may take judicial notice of court filings, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir. 2006*)*, not to determine disputed facts, but here to ascertain that the filings show a dispute *exists* concerning Defendants' asserted facts.

dismissal of a pleading. The Complaint alleges, in stark detail and providing a multitude of non-speculative facts to support these allegations, that electronic voting machines are vulnerable to manipulation that can change votes in an election. These allegations, accepted as true for purposes of a Rule 12 motion, are more than adequate to state a claim for relief.

## VI.   THE COMPLAINT STATES COGNIZABLE LEGAL CLAIMS.

Defendants' final arguments for dismissal, belatedly addressing the legal merits of the Complaint, fail to show that Plaintiffs cannot obtain relief. The claims pled in the Complaint are straightforward. Defendants are government officials and entities who seek to violate Plaintiffs' constitutional right to vote. Plaintiffs ask this Court to enjoin Defendants from violating their rights. These claims are neither new nor uncommon. Federal courts hear and grant relief on similar claims regularly.

Notably, Defendants do not deny (nor could they) that Plaintiffs enjoy a constitutional right to vote. Defs.' Mot. 14-19. Instead, Defendants argue (1) Arizona has constitutional authority to determine how elections are administered, Defs.' Mot. 14; (2) the burden imposed on Plaintiffs' right to vote is outweighed by the state's regulatory interest under the *Anderson/Burdick* framework, *id*. at 15-16; (3) hand counting ballots is too hard, *id*. at 16-17; (4) no Equal Protection violation exists, *id*. at 18; and (5) § 1983 and § 2201 do not support cognizable claims, *id* at 19. None of these arguments support dismissal at this stage of the litigation.

**Constitutional Authority to Regulate Elections**. It is true that Defendants are granted constitutional authority to regulate Arizona elections. It is also true that Defendants may not exercise that authority in such a way as to violate citizens' constitutional rights. This principle should not be in dispute. *E.g. Gomillion v. Lightfoot*, 364 U.S. 339, 347 (1960) ("When a State exercises power wholly within the domain of state interest, it is insulated from federal judicial review. But such insulation is not carried over when state power is used as an instrument for circumventing a federally protected right."). Plaintiffs allege that the use of electronic election equipment by Defendants is an election regulation

that falls outside the zone of their constitutional discretion. This is a cognizable legal claim.

*Anderson/Burdick.* The Complaint alleges that Defendants' use of electronic election equipment nullifies Plaintiffs' right to vote, because it allows the outcome of an election to be determined by a cyber intruder who manipulates the results reported by the computerized equipment, without regard to the votes cast. Nullification of the right to vote is an extraordinary injury. *No* countervailing regulatory interest could be offered by the Defendants to justify such an injury. The regulatory interests offered by the Defendants fail to come anywhere near justifying nullification of the right to vote. *See* Defs.' Mot. 15-16. Accepting the allegations in the Complaint as true, as the Court must for purposes of this motion, the *Anderson/Burdick* framework does not support dismissal of Plaintiffs' claims.

Defendants cite *Weber v. Shelley*, 347 F.3d 1101 (9th Cir. 2003), another case in which a voter challenged the use of electronic election equipment. Defs.' Mot. 16. Crucially, *Weber* is a *summary judgment* opinion. 347 F.3d at 1102. The *Weber* plaintiff presented her evidence concerning a Sequoia Voting Systems device, and the trial court concluded that she failed to prove her case. *Id.* at 1107. *Weber* shows that claims like Plaintiffs' claims here must be litigated through discovery and a determination of the facts, not dismissed on the pleadings.

**Hand Counting.** Defendants claim that hand counting is too hard. Defs.' Mot. 16-17. Such an argument provides no basis for a motion to dismiss under Rule 12(b)(6). Nonetheless, it should be noted that electronic voting machines only came into vogue less than 30 years ago, and countries like France and Taiwan ban their use in elections because of their lack of security. Compl. ¶¶ 5, 32, 155. In any event, Defendants' hand-counting arguments are merely fact-intensive contradictions of the Complaint's allegation that a hand count is feasible. They afford no basis for dismissal.

**Equal Protection.** Defendants question Plaintiffs' Equal Protection claim. Defs.' Mot. 18. Arizona's use of electronic election equipment to count votes is a black-box system that permits undetectable fraud to change the outcome of an election, violating the principle of one person, one vote, and giving rise to an actionable Equal Protection claim.

15

Under the Equal Protection Clause, a voting system cannot "deprive any voter of his right to have his own vote given as much weight, as far as is practicable, as that of any other voter." *Hadley v. Junior Coll. Dist.*, 397 U.S. 50, 52 (1970); *Ball v. James*, 451 U.S. 355, 362 (1981) ("the Equal Protection Clause requires adherence to the principle of one-person, one-vote in elections"). A voting system that allows some voters or malicious third parties to nullify Plaintiffs' votes does not meet this basic minimum floor of Equal Protection.

**42 U.S.C. § 1983 and 28 U.S.C. § 2201.** Defendants oddly suggest that it is improper to bring claims under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, in addition to constitutional claims. Defs.' Mot. 19. A citizen may bring an action alleging that government action is unconstitutional. *E.g. Berger v. City of Seattle*, 569 F.3d 1029, 1034 (9th Cir. 2009). By the plain language of 42 U.S.C. § 1983, a citizen may bring an action under that statute to recover damages sustained as a result of the deprivation of federal rights by a person acting under color of law. And a citizen may seek declaratory relief under 28 U.S.C. § 2201 concerning "rights and other legal relations of any interested party," as well as injunctive relief. Defendants are simply wrong that Plaintiffs cannot bring these actions together as alternative claims for relief.[4]

Defendants provide no authority to support their remarkable assertion to the contrary. They cite *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617 (1979), but that case merely addressed whether a federal court had jurisdiction to hear a

---

[4] Defendants argue that injunction claims under *Ex parte Young*, 209 U.S. 123 (1908), do not apply to them because *Young* applies only to *state* officials. Defs.' Mot. 6 n.5. They are half right: the *Young* exception to States' sovereign immunity does not apply to county officials, because they lack sovereign immunity to begin with. An injunction action is certainly available against county officials. *Griffin v. Cty. Sch. Bd.*, 377 U.S. 218, 228 (1964); *Chaloux v. Killeen*, 886 F.2d 247, 251-52 (9th Cir. 1989). In any event, an injunction claim under *Young* and a damages claim under § 1983 are distinct causes of action, even if they sometimes rely on the same underlying violation. Whereas *Young* requires only a violation of federal *law*, § 1983 requires violation of a federal *right*. Cf. *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 636-37 (2002) *with Blessing v. Freestone*, 520 U.S. 329, 340 (1997). The two actions are different, and both apply to Defendants here.

particular claim that a state welfare regulation was invalid – it did not hold that a § 1983 claim may not be brought simultaneously with a claim seeking to bar unconstitutional government action. (Also, contrary to Defendants' mischaracterization, Defs.' Mot. 19, the Complaint in this case does not allege a "violation of § 1983"; it seeks relief "pursuant to" § 1983.) Defendants also cite *California v. Texas*, 141 S.Ct. 2104, 2115 (2021) for the proposition that § 2201 merely provides a remedy. *California* holds that § 2201 does not alone grant *jurisdiction* within the meaning of the constitutional case-or-controversy requirement, and there must be a "real and substantial" dispute between the parties for a declaratory judgment action to be heard. *Id*. at 2115-16 ("Thus, to satisfy Article III standing, we must look elsewhere to find a remedy that will redress the individual plaintiffs' injuries."). *California* does not in any way hold that bringing a claim under § 2201 is improper when done parallel to other theories seeking judicial relief.

## VII.   CONCLUSION

The primary substance of Defendants' motion to dismiss is a post-trial motion, asking the Court to accept Defendants' evidence and reject Plaintiff's allegations as untrue. This is improper at the pleadings stage. The legal arguments sketched in the motion are without merit. Plaintiffs have the right to challenge the constitutionality of Arizona's election equipment, and they are exercising that right in the appropriate way. The motion should be denied. If the Court does grant Defendants' motion in part or in whole, Plaintiffs ask leave to amend the Complaint to add further specific allegations supporting their claims.

| | | |
|---|---|---|
| 1 | | |
| 2 | DATED: June 21, 2022. | **PARKER DANIELS KIBORT LLC** |
| 3 | | By */s/ Andrew D. Parker* |
| 4 | | Andrew D. Parker (AZ Bar No. 028314) |
|   | | 888 Colwell Building |
| 5 | | 123 N. Third Street |
| 6 | | Minneapolis, MN 55401 |
|   | | Telephone: (612) 355-4100 |
| 7 | | Facsimile: (612) 355-4101 |
|   | | parker@parkerdk.com |
| 8 | | |
| 9 | | **OLSEN LAW, P.C.** |
| 10 | | By */s/ Kurt Olsen* |
|    | | Kurt Olsen (D.C. Bar No. 445279)* |
| 11 | | 1250 Connecticut Ave., NW, Suite 700 |
| 12 | | Washington, DC 20036 |
|    | | Telephone: (202) 408-7025 |
| 13 | | ko@olsenlawpc.com |
| 14 | | |
| 15 | | By /s/ Alan M. Dershowitz |
| 16 | | Alan M. Dershowitz (MA Bar No. 121200)# |
|    | | 1575 Massachusetts Avenue |
| 17 | | Cambridge, MA 02138 |
| 18 | | * Admitted *Pro Hac Vice* |
| 19 | | Counsel for Plaintiffs Kari Lake |
| 20 | | and Mark Finchem |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Andrew D. Parker*