Emily Craiger (Bar No. 021728)
emily@theburgesslawgroup.com
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Telephone: (602) 806-2100

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By: Thomas P. Liddy (Bar No. 019384)
Joseph J. Branco (Bar No. 031474)
Joseph E. LaRue (Bar No. 031348)
Karen J. Hartman-Tellez (Bar No. 021121)
Deputy County Attorneys
MCAO Firm No. 0003200

CIVIL SERVICES DIVISION
225 West Madison St.
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-8567
liddyt@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
laruej@mcao.maricopa.gov
hartmank@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for Maricopa County Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Kari Lake and Mark Finchem,

Plaintiffs,

vs.

Kathleen Hobbs, et al.,

Defendants.

No. 2:22-cv-00677-JJT

**MARICOPA COUNTY DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

(Honorable John J. Tuchi)

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants Bill Gates, Clint Hickman, Jack

Sellers, Thomas Galvin, and Steve Gallardo in their official capacities as members of the Maricopa County Board of Supervisors ("the County") respectfully reply in support of their motion to dismiss (the "MTD") Plaintiffs' First Amended Complaint ("FAC") for failure to state a claim upon which relief may be granted.

Plaintiffs' Response in Opposition to the Motion (Doc. 56 (the "Response")), fails to meaningfully address the County's arguments in support of dismissal of their claims. Instead, it simply reasserts the same irrelevant, speculative, misleading, and demonstrably false allegations contained in the FAC. Because Plaintiffs fail to state a claim upon which relief may be granted, this Court should grant the County's Motion.

**I. Plaintiffs' claims are not plausible.**

Throughout their Response, Plaintiffs incorrectly assert that *any* type of factual dispute—no matter how speculative, and no matter whether the alleged "facts" are plainly contrary to reality—precludes dismissal of the FAC. In so doing, they ignore the well-settled *Iqbal/Twombly* plausibility standard. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). While "a complaint need not contain detailed factual allegations [ ] it must plead 'enough facts to state a claim to relief that is plausible on its face.' " *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Here, Plaintiffs simply repeating, with no factual basis, that "Arizona's use of electronic election equipment permits unauthorized persons to manipulate vote totals without detection, thereby infringing Plaintiffs' right to vote and have the vote counted accurately" is insufficient to overcome dismissal. (Response at 12.) Indeed, Plaintiffs' Response does nothing to move the needle out of the realm of mere possibility. Most importantly, it makes no effort to address the two most critical deficiencies in the FAC,

namely, that: (1) it does not contain a single factual allegation that any Arizona ballot tabulation equipment has ever been hacked or manipulated or has improperly counted votes, and (2) it does not contain a single factual allegation that any Arizona voters' ballot, including Plaintiffs', has ever been improperly counted by an electronic tabulation machine. Plaintiffs' fears of invisible, undetectable intrusion into the vote tabulation equipment is purely speculative, at best, and insufficient to support a plausible claim for relief.

Further, as addressed at length in the Motion, Plaintiff's factual allegations relating to alleged events in other states and machines not used in Arizona need not be considered by the Court (FAC, ¶¶ 73-89, 125-31, 133-34.) Likewise, as addressed in detail in Defendant's Response in Opposition to Plaintiff's Request for Preliminary Injunction (Doc. 57 ("Response to MPI")), Arizona is statutorily required to use paper ballots and paper back-up for its limited use of Ballot Marking Devices ("BMDs"). As a result, Plaintiffs' selective quoting from testimony by Professor J. Alex Halderman about Georgia's voting equipment in *Curling v. Raffensperger,* 493 F. Supp. 3d 1264 (N.D. Ga. 2020), and before the Senate Select Committee on Intelligence is inapposite. (*See* Response to MPI at 3–5.) Plaintiffs cite this testimony in an attempt to clear the plausibility hurdle, but this testimony cannot save their FAC. It relates to alleged vulnerabilities in electronic voting equipment that is not used in Maricopa County or any other Arizona county and so has nothing whatsoever to say about whether equipment used in Arizona accurately tabulates ballots. (*Id.*) More importantly, it addresses alleged vulnerabilities resulting from the fact that voters in Georgia do not cast their votes on paper ballots; rather, every voter casts her ballot on a BMD. This is vastly different than how voting happens in Arizona. The overwhelming majority of Arizona voters cast their ballots by hand on paper ballots. As allowed by both federal and state law, a small number of Arizona voters with disabilities cast their ballots on BMDs. But even then, Arizona's BMDs produce a paper ballot that is then tabulated by the same machines that tabulate the hand-marked paper ballots. Thus, the alleged vulnerabilities highlighted in Professor Halderman's testimony about *Georgia*'s voting equipment are inapplicable to *Arizona*'s completely different tabulation equipment

and system for voting. (*Id.*)

Finally, and as also addressed in the Response to MPI, Plaintiffs' reliance on the recently released statement from the U.S. Cybersecurity and Infrastructure Agency ("CISA") report is misleading. (Response to MPI at 5.) That report addresses the older, different version of the Dominion Voting Systems' BMDs used in Georgia, rather than the version used by the County. (*Id.*) Moreover, the County has already implemented all necessary measures to provide security for the tabulation equipment. (*Id.*)

**II. The Court may Take Judicial Notice of Public Records**

Plaintiffs' assertion that the court may not take judicial notice of public records is false. (*See* Doc. 55 (Pl.s' Partial Opp'n to Maricopa Def.s' Mot. for Judicial Ntc. ) at 1 (incorrectly asserting that judicial notice of "documents" is inappropriate under Fed. R. Evid. 201).) It is well-settled that courts may take judicial notice of public records, including documents accessible on government websites. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"); *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010) (taking judicial notice of government published documents hosted on government website). It is also well-settled that courts may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Id.* at 998; *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998). Contrary to Plaintiffs' contention, the County does not request judicial notice of records to merely "dispute" Plaintiffs' allegations or to "prove 'disputed' facts." (Doc. 55 at 1.) Rather, it provides this Court facts upon which it may take judicial notice that clearly contradict Plaintiffs' repeated assertions that are clearly false. These include, among others, the assertion that Arizona does not use paper ballots (it does) [MTD at 2], that Arizona's election equipment is not tested (it is) [*id.* at 2–4], and that Arizona's tabulation results are not subject to vote-verifying auditing (they are) [*id.* at 4–6].

Further, Plaintiffs' reliance on this Court's ruling in *Enos* is misplaced. *Enos v.*

*Arizona*, No. 16-CV-00384, 2017 WL 553039 (D. Ariz. Feb. 10, 2017). There, the Court did not rule it was prohibited from taking judicial notice of information contained on the Federal Communications Commission's ("FCC") website as a matter of law, as Plaintiffs assert. Rather, the Court determined that the information on the FCC website, upon which defendants relied, was not relevant to whether the Court should grant the defendants' motion to dismiss. *Id*. at *3 (citing *Mir*, 844 F.2d at 649, which expressly authorizes courts deciding motions to dismiss to "take judicial notice of matters of public record outside the pleadings," but then declining to consider the FCC website because "the simple question before the Court" is whether plaintiffs had alleged sufficient facts to state a plausible claim, which they had). Here, as addressed above, those facts of which the County requests the Court take judicial notice demonstrate the utter falsity of the few allegations in the FAC that actually relate to voting and vote tabulation in the state of Arizona. (MTD at 2–6.)

**III. Laches and the *Purcell* Doctrine**

As to the timeliness of the FAC, the Response makes no effort to address Plaintiffs' years' long delay in bringing these claims. Instead, it asserts that because Defendants will have ample time to "prepare their response," Plaintiffs' delay is not an issue. (Response at 9.) However, as addressed at length on pages 6 through 8 of the County's Response to MPI, Plaintiffs' requested relief, including the bullet-pointed wish list of changes to Arizona's elections procedures [FAC, ¶¶ 49–50, 153], would dramatically change all aspects of the election process. It is likely to confuse voters, overwhelm election administrators, and be impossible to accomplish in the barely four-month period left before the November 2022 General Election. (Response to MPI at 6–8.) Most telling is Plaintiffs' fantastical assertion that hand counting all the ballots on election day will be a breeze because all the ballots can be transported to precinct tabulation centers staffed with plenty of poll workers to do all the counting. (Response at 14.). Precinct-based tabulation centers do not exist in Maricopa County. They have not been identified, authorized, procured, fitted with appropriate security measures, or staffed, to name just a few of the logistical hurdles election administrators would be forced to overcome in less than four months.

Further, contrary to Plaintiffs' assertions (Response at 8–10), *Purcell* and its progeny do not stand *only* for the proposition that federal courts should avoid changes to election law that will cause voter confusion. Rather, those cases also caution federal courts to refrain from enjoining election law too close in time to an election if the changes will create administrative burdens for election officials. *See, e.g.*, *Ariz. Democratic Party v. Hobbs*, 976 F.3d 1081, 1086 (9th Cir. 2020) ("And, as we rapidly approach the election, the public interest is well served by preserving Arizona's existing election laws, rather than by sending the State scrambling to implement and to administer a new procedure for curing unsigned ballots at the eleventh hour."); *Purcell v. Gonzalez*, 549 U.S. 1 (2006). And as just explained in the preceding paragraph, the administrative burden to Arizona's election officials caused by granting Plaintiffs' request for injunction would not just be a heavy lift, it would be an impossible one.

But even if Plaintiffs were correct, that the *Purcell* principle relates only to issues of voter confusion, *Purcell* and its progeny would still caution this Court against granting the relief Plaintiffs seek. Their requested change would take place after the August Primary and first be applicable to the November General Election, creating different rules for elections in the midst of an election cycle. Worse, in-person voters, for the first time in years, would be placing their ballots in ballot boxes instead of onsite tabulators. The risk of voter confusion and fear related to the concern that their ballots will not be counted is certain. (Response to MPI at 6–8.)

**IV. Statute of Limitations**

Plaintiffs' bizarre assertion that the two-year statute of limitations for § 1983 claims does not apply because their "claims are based on the expected occurrence of future harm during elections yet to come, not a completed harm," (Response at 5), is untenable, for several reasons. First, Plaintiffs cannot on the one hand assert that they have standing to bring their claims and then on the other hand assert that no harm has occurred so their statute of limitations period has not yet begun. Indeed, if no harm has occurred, the Plaintiffs have no standing to bring their claims, as the Court found in *Davis v. Commonwealth Election*

*Comm'n,* 990 F. Supp. 2d 1089 (D. N. Mar. I. 2012), a case upon which Plaintiffs inexplicably rely. There the court found that the voter lacked standing because he could not show an injury in fact and because any alleged injury would not occur until he was denied the right to vote or his ballot was disallowed. *Id*. at 1091.

Second, contrary to what Plaintiffs claim in their Response about only being concerned about a future harm that has not yet occurred, the FAC asserts that the harm for which Plaintiffs seek redress is being "required to vote using an electronic voting system or [to] have their vote counted using an electronic voting system." (FAC, ¶ 172.) As demonstrated in Exhibit 15 to Maricopa County's Motion for Judicial Notice [Doc. 29-16], Plaintiffs have each voted in elections in Arizona since the early 2000s. This means that, if their theory of the case were correct (it is not), each of the Plaintiffs have been harmed by having their votes counted by electronic tabulation equipment for *far* longer than the two-year statute of limitations period. This may be why Plaintiffs seek to deflect discussion to "the expected occurrence of future harm during elections yet to come" in their Response. But that is not actually what their FAC alleges.

With absolutely no evidence relating to the elections equipment used in Arizona to support their speculative claims that Arizona's equipment is unreliable and likely to be manipulated by rogue forces, Plaintiffs have brought a § 1983 claim. *Either* they have been harmed, or they have not been. If they have *not* been harmed, they do not have standing to assert their claim and their FAC must be dismissed, because the only "harms" they allege are too speculative to sustain their Complaint. *See, e.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (requiring an "injury in fact" that is "actual or imminent, not 'conjectural' or 'hypothetical'"). (*See also* MTD at 10-14 (discussing the speculative nature of the FAC's allegation and their failure to meet the plausibility standard for pleading).)

To the extent Plaintiffs claim they have standing because a harm has occurred, then the discovery rule applies and their claim started accruing "when the plaintiff [knew] or [had] reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999). In this case, Plaintiffs knew or should have known about

their alleged injuries in the early 2000s, when they both began voting in Arizona elections and had their ballots tabulated by electronic tabulation devices. After all, their FAC cites numerous instances of alleged problems with electronic tabulation equipment in other jurisdictions from the early 2000s. (*See, e.g.*, FAC, ¶¶ 71–82.) Plaintiffs certainly should have known about the alleged harm caused by tabulating ballots with machines by November 5, 2019, when the County began using its Dominion Voting Systems equipment. Indeed, Plaintiffs allege that on November 5, 2019, the Secretary "certified the Dominion Democracy Suite 5.5b voting system for use in elections held in Arizona." (*See id.*, ¶¶ 18, 137.) Yet Plaintiffs did not challenge machine tabulation in the early 2000s, nor did they challenge it when the County began using Dominion equipment. They waited until they were running for statewide political office when this lawsuit could be politically profitable. In other words, they waited until long after the statute of limitations had run.

Either Plaintiffs have standing, but the statute of limitations bars their suit, or the statute of limitations is not an impediment but Plaintiffs lack standing. Under either scenario, Plaintiffs' claims must be dismissed.

**V. Plaintiff's Constitutional Claims Fail**

In response to the inadequacies raised by the County concerning Plaintiffs' constitutional claims, the Response merely reasserts that there is a possible, but unknown "cyber intruder" who could manipulate election result or who may engage in "undetectable fraud to change the outcome of an election." (Response at 15, 16.) And, because of this possible risk, Plaintiffs allege that the right to vote *could* be nullified. Therefore, according to Plaintiffs, because said nullification hypothetically, possibly *could* occur, Plaintiffs have pled sufficient facts to support their § 1983 claims. (*Id.*) But that is not how this works. Plaintiffs' conjecture is insufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, because Plaintiffs do not have a constitutional right to their preferred method of counting votes, there is no basis for their constitutional claims. *Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003).

## CONCLUSION

For the foregoing reasons, this Court should grant the County's Motion to Dismiss.

RESPECTFULLY SUBMITTED this 28th day of June, 2022.

THE BURGESS LAW GROUP

BY: */s/ Emily Craiger*
Emily Craiger

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: Thomas P. Liddy
Joseph J. Branco
Joseph E. La Rue
Karen Hartman-Tellez
Deputy County Attorneys

*Attorneys for Maricopa County Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ Dana N. Troy*