Roopali H. Desai (024295)
D. Andrew Gaona (028414)
Kristen Yost (034052)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5478
rdesai@cblawyers.com
agaona@cblawyers.com
kyost@cblawyers.com

Sambo (Bo) Dul (030313)
**STATES UNITED DEMOCRACY CENTER**
8205 South Priest Drive, #10312
Tempe, Arizona 85284
T:  (480) 253-9651
bo@statesuniteddemocracy.org

Christine Bass *
**STATES UNITED DEMOCRACY CENTER**
3749 Buchanan Street, Unit 475165
San Francisco, California 94147-3103
T:  (309) 242-8511
christinebass@statesuniteddemocracy.org

* *Admitted Pro Hac Vice*

*Attorneys for Defendant*
*Arizona Secretary of State Katie Hobbs*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake and Mark Finchem,<br><br>  Plaintiffs,<br><br>  v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State, et al.,<br><br>  Defendants. | No. 2:22-cv-00677-JJT<br><br>**ARIZONA SECRETARY OF STATE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

1095047.2

## Introduction

Arizona Secretary of State Katie Hobbs moved to dismiss Plaintiffs' First Amended Complaint because Plaintiffs (1) lack standing, (2) bring claims barred by the Eleventh Amendment, and (3) fail to state a cognizable constitutional claim. [Doc. 45] Each of these is reason enough to dispose of Plaintiffs' attempt to obtain a mandatory injunction that would impose Plaintiffs' preferred procedures for preparing, distributing, collecting, and tabulating ballots at the expense of imposing insurmountable burdens on election officials throughout Arizona.

Plaintiffs' response [Doc. 58] does not change this reality and is unconvincing. Instead, it relies on a raft of inapposite authority, fails to meaningfully grapple with decisions from other district courts rejecting similar claims, and endeavors to obscure the core of Plaintiffs' claims. Plaintiffs also try to hide behind unsupported hyperbole, such as their proclamation [at 18] that this case is about the Secretary's "intention to nullify Plaintiffs' constitutional rights by permitting computer manipulations to overrule Plaintiffs' ballots and determine the election outcomes." But this states nothing more than Plaintiffs' conspiracy-driven policy preference for how ballots should be counted in Arizona which this Court cannot and should not entertain.

For all the reasons described in the Secretary's Motion and below, and alternatively for any of the reasons set forth in the Maricopa County Defendants' Motion to Dismiss [Doc. 27], the FAC should be dismissed with prejudice and without leave to amend. Arizona's elections officials – and indeed, all Arizonans – deserve to know <u>now</u> that there will be no drastic, last-minute changes to the administration of our elections.

## Argument

**I.    Plaintiffs Lack Standing.**

To show an injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*

*v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). A "concrete" and "particularized" injury must be "real," not "abstract," *id.*, and an "actual or imminent" injury must be "certainly impending"—"allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up). Plaintiffs offer nothing but innuendo and conjecture about "potential" vulnerabilities in election equipment generally, but they do not (and cannot) allege that any specific election equipment in Arizona has harmed or will harm them.

Plaintiffs cite [at 3] *Bonas v. Town of N. Smithfield*, 265 F3.d 69, 75 (1st Cir. 2001), for the proposition that "total and complete disenfranchisement of the electorate as a whole" is an actionable injury in federal court. But Plaintiffs don't plausibly allege that they (or anyone) face "total and complete disenfranchisement." In *Bonas*, the plaintiffs alleged actual and imminent disenfranchisement of the entire electorate because of the town's "refusal to hold" an election it was legally required to hold. *Id.* Plaintiffs don't allege that they or any Arizona voters cannot exercise their right to vote in upcoming elections—they merely object to the State's method of counting votes.[1]

As Plaintiffs frame their claim [at 1], certain potential "security failures" in electronic voting systems could "nullify the fundamental right to vote by permitting elections to be decided by computer manipulation rather than vote totals." But that claim requires a long chain of hypothetical contingencies: that the specific voting equipment used in Arizona has these "security failures"; that unknown bad actors will exploit these failures to breach the equipment and manipulate an election; that Arizona's specific procedural safeguards cannot detect or

---

[1] Plaintiffs also rely on this Court's findings in *Arizona Democratic Party v. Arizona Republican Party*, 2016 WL 8669978, at *2 (D. Ariz. Nov. 4, 2016), where a political party sought to enjoin threatened voter intimidation of its members. This Court noted that "Defendants do not challenge Plaintiff's standing to bring its claims in this matter," and found that the party had standing because it alleged that the defendants' "conspiracy to intimidate voters" would harm the party and its electoral prospects in the upcoming election. *Id.* That case is nothing like this one.

1 prevent the manipulation; and that the manipulation will change the outcome of the election.
2 Plaintiffs' FAC doesn't even allege facts to plausibly show <u>step one</u> in this fantastical chain.
3       Plaintiffs mainly rely on *Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020) and
4 *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1314–16 (N.D. Ga. 2018). Neither case supports them.
5 In *Carson*, the Minnesota Secretary of State planned to count votes that were received after
6 election day in violation of state and federal law. Because votes received after election day would
7 be unlawfully counted, the Eighth Circuit found that candidates had "a cognizable interest in
8 ensuring that the final vote tally accurately reflects the legally valid votes cast," and an
9 "inaccurate vote tally is a concrete and particularized injury to candidates." *Carson*, 978 F.3d at
10 1058. Unlike the *Carson* plaintiffs, Plaintiffs here don't allege that unlawful votes have been or
11 will be counted in 2022 elections.
12       In *Curling*, the court found allegations sufficient to show an actual or imminent injury
13 when the plaintiffs alleged (1) that the <u>specific</u> voting machines used to cast votes in Georgia
14 elections were "*actually* accessed or hacked multiple times already," *Curling*, 334 F. Supp. 3d
15 at 1314; (2) that Georgia officials were "alerted" that the system was accessed but had "not taken
16 steps to secure the DRE system from such attacks," *id.* at 1316; and (3) that even after alerting
17 Georgia officials of these "serious security breaches," a cybersecurity expert was "able to access
18 the system *again* about six months later," and Georgia officials "continued to fail to take action
19 to remedy the DRE system's vulnerabilities," *id.* at 1317. Plaintiffs offer nothing of the sort here.
20       Instead, like the plaintiffs in *Shelby Cnty. Advocs. for Valid Elections v. Hargett*, Plaintiffs
21 offer only conclusory, speculative allegations that electronic voting equipment is "vulnerable to
22 undetectable hacking and malicious manipulation." 2019 WL 4394754, at *2 (W.D. Tenn. Sept.
23 13, 2019), *aff'd Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977 (6th Cir. 2020).
24 Plaintiffs [at 6] brush this case off in a footnote, claiming "none of the plaintiffs were current
25 candidates for office." That's true, but it's a distinction without a difference. Indeed, in *Shelby*,
26 some plaintiffs specifically alleged "their <u>intention</u> to run as candidates in future elections," yet

that status didn't alter the court's analysis in the least. *Id.* at *10 (emphasis added). Instead, the court found that "[e]ven construing the allegations in the light most favorable to them, Plaintiffs offer no proof showing that Shelby County's voting system is any more likely to miscount votes than any other system used in Tennessee. At the same time, they have no proof that the [specific voting machines used in Shelby County] are more likely to be hacked or manipulated than other Tennessee voting machines." *Id.* The same is true here.

Many other courts have held that similar "allegation[s] that voting machines may be 'hackable'" cannot "constitute injury-in-fact" under Article III. *Stein v. Cortés*, 223 F. Supp. 3d 423, 432 (E.D. Pa. 2016); *see also Samuel v. Virgin Islands Joint Bd. of Elections*, 2013 WL 842946, at *5 (D.V.I. Mar. 7, 2013) ("conjectural" allegations "that the election process 'may have been' left open to compromise" by using certain voting machines were "amorphous due process claims, without requisite concreteness"); *Schulz v. Kellner*, 2011 WL 2669456, at *7 (N.D.N.Y. July 7, 2011) (allegations that "votes will allegedly not be counted accurately" because of "machine error and human fraud resulting from Defendants' voting procedures" were "merely conjectural and hypothetical"); *Landes v. Tartaglione*, 2004 WL 2415074, at *3 (E.D. Pa. Oct. 28, 2004), *aff'd,* 153 F. App'x 131 (3d Cir. 2005) (claim "that voting machines are vulnerable to manipulation or technical failure" was "conjectural or hypothetical"). Plaintiffs try [at 6] to distinguish *Stein* and *Samuel* because those cases involved requests for a recount or decertification <u>after</u> an election, and "federal courts are loath to invalidate elections that have already been completed." But the courts in those cases didn't dismiss the claims because federal courts are "loath" to grant post-election relief—they dismissed the claims because, as here, the plaintiffs' allegations that voting systems are vulnerable to manipulation were too conjectural to show an actual injury-in-fact. And Plaintiffs ignore that the relief they seek is just as drastic: an injunction upending the State's entire vote tabulation process weeks before an election.

1   At bottom, Plaintiffs' generalized grievance about the use of electronic voting systems in Arizona rests on a "speculative chain of possibilities" that cannot establish Article III standing. *Clapper*, 568 U.S. at 414.

**II.   The Eleventh Amendment Bars Plaintiffs' Claims.**

Next, the Eleventh Amendment bars Plaintiffs' request that the Court order state officials to follow certain election procedures based on Plaintiffs' (incorrect) interpretation of state law.

Plaintiffs don't have a constitutional right to their preferred method of counting votes (as detailed below). Plaintiffs' purported federal constitutional claims instead stem from their baseless argument that Defendants violate Arizona law by using insecure or inaccurate electronic voting systems. [*E.g.*, Doc. 3 ¶¶ 156-61 (claiming the Secretary "has failed to meet the duties" in Arizona statutes, including A.R.S. §§ 16-446(B), 16-452, and § 16-445(D)); ¶¶ 162-64 (describing statutory requirements that the County Defendants allegedly violated); ¶¶ 181, 194 (claiming Defendants "abrogated their statutory duties")] Courts have repeatedly rejected similar state law claims cloaked as alleged federal law violations. *See, e.g.*, *S&M Brands, Inc. v. Georgia ex rel. Carr*, 925 F.3d 1198, 1204-05 (11th Cir. 2019) (Eleventh Amendment barred alleged federal constitutional claim that "relied on a determination that state officials had not complied with state law"); *Bowyer*, 506 F. Supp. 3d at 716 (Eleventh Amendment bars "state law claims, masked as federal law claims") (citing *Massey v. Coon*, 865 F.2d 264 (9th Cir. 1989)); *Balsam v. Sec'y of New Jersey*, 607 F. App'x 177, 183-84 (3d Cir. 2015) (rejecting plaintiffs' "attempt to tie their state law claims into their federal claims").

Plaintiffs argue [at 10] that the "Court need make no pronouncement concerning whether Arizona's procedures comply with state law [to] grant Plaintiffs relief." But Arizona statutes set out a comprehensive set of requirements for the conduct of elections in the state, including the accurate casting and counting of ballots. *See* A.R.S. § 16-400 *et seq*. There are detailed requirements on voting equipment, *see* A.R.S. § 16-441 *et seq.*, including that electronic voting systems are "used safely, efficiently and accurately in the conduct of elections and counting

ballots," "record correctly and count accurately every vote cast," and "[p]rovide for voting in secrecy." A.R.S. § 16-446(B)(1), (4), (6). Plaintiffs do not challenge the constitutionality of these statutes. They instead vaguely conclude in the FAC that Arizona's election officials violate these and other state statutes by using electronic voting equipment.

What's more, Plaintiffs' requested relief highlights the federalism concerns "that underlie the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Plaintiffs request a long mandatory injunction detailing how ballots must be cast, conveyed, counted, and recounted, and how the whole process must be recorded, streamed, and archived. [Doc. 3 ¶ 153]. The Court should reject Plaintiffs' request to "entangle[]" the Court, "as [an] overseer[] and micromanager[], in the minutiae of state election processes." *Ohio Democratic Party v. Husted*, 834 F.3d 620, 622 (6th Cir. 2016).

### III. Plaintiffs Fail to State Cognizable Constitutional Claims.

Lastly, Plaintiffs fail to state cognizable claims that Arizona's electronic voting systems burden their right to vote.

Plaintiffs insist [at 16] that they allege "specific, plausible facts showing that Arizona's electronic election equipment can be manipulated to change votes and decide the results of elections without regard to votes actually cast." Not so. Plaintiffs point to conclusory allegations that [at 12] unspecified types of voting equipment by certain manufacturers "can be hacked or compromised with malware" and "are vulnerable to cyberattacks before, during, and after an election in a manner that could alter election outcomes," that [at 13-14] an expert in a different case analyzing equipment and procedures used in a different jurisdiction found "security risks and the potential for votes to be improperly rejected or misallocated,"[2] and that [at 15-16]

---

[2] Despite Plaintiffs' repeated claim that a voting machine used statewide in Georgia is used in Arizona elections, one county in Arizona uses a different version of that voting equipment only as an accessible voting device for voters with disabilities. Only 453 voters in Maricopa County cast ballots using an accessible voting device during the 2020 General Election [Doc. 57-1 ¶ 24], nowhere near enough to impact the outcome of the election.

1  "foreign states" have tried to interfere "in U.S. elections in the past." None of these allegations plausibly suggest that the specific election equipment and specific security procedures used in Arizona have ever been or are at imminent risk of being compromised.

Plaintiffs instead double down [at 13] on their broad, conclusory allegations that "*all* electronic equipment" is too unsecure to use in elections, and "all" safety measures "can be defeated." But it "is the job of democratically-elected representatives to weigh the pros and cons of various balloting systems. So long as their choice is reasonable and neutral, it is free from judicial second-guessing." *Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003); *see also Green Party of N.Y. v. Weiner,* 216 F. Supp. 2d 176, 190-91 (S.D.N.Y. 2002) (debate over use of voting machines or paper ballots "is for the elected representatives of the people to decide, after balancing the pros and cons of different systems against their expense."). At bottom, "[n]othing in the Constitution forbids" the use of electronic election equipment. *Weber*, 347 F.3d at 1107.

Plaintiffs try to get around *Weber* by arguing [at 10] that the complaint in that case "was *not* dismissed at the pleadings stage, but proceeded through discovery to summary judgment, where the plaintiff failed to prove her claims." But the defendant in *Weber* didn't move to dismiss, and instead chose for whatever reason to answer and move for summary judgment. *See* Docket, *Weber v. Jones, et al.*, CV-01-11159-SVW (C.D. Cal.). That does not mean *Weber* was "entitled" to proceed beyond the complaint stage; the court was never asked to consider the sufficiency of the allegations in the complaint. But even so, the Ninth Circuit held as a matter of law that the use of touchscreen voting systems—even if they create a risk that fraud will be harder to detect—does not violate the Constitution. *Weber*, 347 F.3d at 1106-07.[3]

All told, Plaintiffs fail to allege any burden on their right to vote.

---

[3] Arizona doesn't even use paperless touch screen voting systems that lack an auditable trail like the systems in *Weber*. Voters with disabilities may use accessible electronic voting devices to select their choices on a ballot, but Arizona law requires that every accessible voting device produce a paper ballot or voter verifiable paper audit trail. 2019 EPM at 80.

### IV. Plaintiffs Should Not Be Given Leave to Amend.

In their conclusion, Plaintiffs say [at 17] that if this Court dismisses the FAC, they should be given leave to amend to "add additional factual allegations," including unspecified "information" from the declarations Plaintiffs filed in support of their request for a preliminary injunction. Not only does this request violate LRCiv 15.1(a), but Plaintiffs make no effort to identify how any "additional factual allegations" would remedy the fundamental defects discussed in the Secretary's Motion. *See, e.g.*, *Oasis Foot & Ankle LLC v. HonorHealth*, No. CV-20-00402-PHX-DLR, 2021 WL 4319211, at *3 (D. Ariz. Sept. 23, 2021) (denying request for leave to amend filed in response to a motion to dismiss because it didn't comply with LRCiv 15.1(a) and did "not even indicate what additional facts, if any, it could allege, rendering its request for leave to amend even more deficient").

Indeed, there are no facts that could account for the FAC's many <u>legal</u> deficiencies. In any event, Plaintiffs already dallied far too long to bring their claims, and they should not be given any further opportunity to protract these proceedings and inject needless uncertainty into the conduct of the 2022 general election. Their request for leave to amend should be denied.

### Conclusion

Plaintiffs' vague innuendo about electronic voting systems "cannot be a substitute for earnest pleadings and procedure in federal court." *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 WL 7238261 (D. Ariz. Dec. 9, 2020). The Court should dismiss the FAC with prejudice and without leave to amend and should award the Secretary her attorneys' fees under 42 U.S.C. § 1988(b).

Respectfully submitted this 29th day of June, 2022.

**COPPERSMITH BROCKELMAN PLC**

By /s/ D. Andrew Gaona
    Roopali H. Desai
    D. Andrew Gaona
    Kristen Yost

**STATES UNITED DEMOCRACY CENTER**
Sambo (Bo) Dul
Christine Bass *

*\* Pro Hac Vice*

*Attorneys for Defendant Arizona Secretary of State Katie Hobbs*