**Parker Daniels Kibort**
Andrew Parker (028314)
888 Colwell Building
123 Third Street North
Minneapolis, Minnesota 55401
parker@parkerdk.com
Telephone: (612) 355-4100
Facsimile: (612) 355-4101

**OLSEN LAW, P.C.**
Kurt Olsen (D.C. Bar No. 445279)*
1250 Connecticut Ave., NW, Suite 700
Washington, DC 20036
Telephone: (202) 408-7025
ko@olsenlawpc.com

Alan M. Dershowitz (MA Bar No. 121200)*
1575 Massachusetts Avenue
Cambridge, MA 02138
* Admitted Pro Hac Vice

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake; Mark Finchem,<br><br>Plaintiffs,<br><br>v.<br><br>Kathleen Hobbs, as Arizona Secretary of State, et al.,<br><br>Defendants. | No. 22-cv-00677-JJT<br><br>(Honorable John J. Tuchi)<br><br>**PLAINTIFFS' REPLY TO SECRETARY OF STATE KATIE HOBBS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Oral Argument Requested |

Arizona Secretary of State Kathleen Hobbs's Opposition ("Opp.") to Plaintiffs' Motion for Preliminary Injunction ("Mot.") is long on assertion and short on rebuttal evidence. Hobbs does not even attempt to present admissible evidence concerning the central issues in the Motion, expert testimony demonstrating: (1) the security failures of computerized election machines Hobbs authorized for use in Arizona; and (2) that elections in Arizona are being manipulated through the computerized machines. Indeed, Hobbs's only evidence in response to the Motion is declarations asserting difficulty in hand counting ballots. These declarations only serve to create a dispute of fact concerning the appropriate remedy. The Court should grant the Motion and move the parties forward to a discussion concerning the remedy and what is reasonable and attainable – a discussion that Plaintiffs are happy to have, for their claim is that the machines fail constitutional muster, *not* that Plaintiffs are entitled to a particular method of hand counting. Arizona's computerized vote counting system leaves an open, unwatched door for bad actors anywhere in the world to pick the winners of Arizona's elections without regard to the choices of the voters. That state of affairs is constitutionally intolerable, and the Court should enjoin it.

The facts supporting Plaintiffs' arguments are stated in the Motion (ECF no. 50) and not repeated here, except as necessary to respond to Hobbs's Opposition (ECF no. 59).

**I.     HOBBS'S FACTUAL ASSERTIONS PROVIDE NO BASIS TO DENY INJUNCTIVE RELIEF.**

Hobbs's Opposition begins with various statements about Arizona's voting system, use of paper ballots, and the 2020 election. Opp. 2-3. These statements admit that Arizona "uses electronic equipment to tabulate votes," and confirm that Plaintiffs appropriately relied on the list of equipment published on the Arizona Secretary of State's website as being used in the next election. *Id*. at 2. Hobbs's factual assertions are otherwise irrelevant to the Motion, including her citation to an unsworn, partisan position document produced by her own office criticizing the audit of Maricopa County's 2020 election results. *See id*. at 3. This document is not admissible under Fed. R. Evid. 802.

## II. PLAINTIFFS HAVE BROUGHT MERITORIOUS CLAIMS.

Hobbs next asserts that the Motion fails to meet the requirements of *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) for preliminary relief. Opp. 4. Hobbs's claim that Plaintiffs' request for what she calls a "mandatory injunction" is extreme or "particularly disfavored," *id*. at 4, is incorrect. Violations of constitutional rights by state officials may always be enjoined, and an injunction against future unconstitutional conduct is "prohibitory," not "mandatory." *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017) ("[T]he injunction is prohibitory: it prohibits the government from conducting new bond hearings under procedures that will likely result in unconstitutional detentions.").[1] Hobbs's other arguments concerning the merits of Plaintiffs' claims are also incorrect.

### A. Plaintiffs Have Standing.

The standing argument advanced by Hobbs is a truncated version of an argument in Hobbs's Motion to Dismiss the Complaint. *Cf.* Opp. 5-6 *with* ECF no. 45 at 5-9. Hobbs now appears to abandon her previous incorrect assertion that Plaintiffs' injuries are "generalized" and not "particularized," and rests solely on her argument that Plaintiffs' injuries are "conjectural and hypothetical." Opp. 5. To satisfy the "actual or imminent" requirement of standing, a plaintiff may allege "future injury" if "there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation omitted). Plaintiffs here show not only a substantial risk of election interference that would prevent accurate counting of votes, Decls. of Logan, Cotton, Smith (ECF nos. 39. 35, 41), but also unrebutted evidence that elections in Arizona have been manipulated. Decl. of Walter Daugherity (ECF no. 38). This is sufficient to establish standing. But Plaintiffs show more. With the security failures of the machines approved by Hobbs, it is not speculative – it is guaranteed – that reliance on the machines to count the ballots in 98% of Arizona precincts means Hobbs and the other Defendants will never know whether

---

[1] In any event, mandatory injunctions are permissible when "extreme or very serious damage will result" that is not "capable of compensation in damages" and the merits of the case are not "doubtful." *Hernandez*, 872 F.3d at 999. That is the case here.

the vote totals reported in future elections accurately represent the choice made by the voters. It is not speculative, but guaranteed, that software manipulation can cause these computerized machines to work properly both prior to and after Election Day, yet report incorrect vote totals on Election Day. Ample facts show that persons have means, motive, opportunity, and impunity to change votes in Arizona's elections to determine outcomes, and have in fact done so. The harms to Plaintiff's rights are not speculative. *See* Pls.' Reply to Maricopa Cnty. Defs.' Opp. to Mot. for Prelim. Inj. at 7-9.

The authorities Hobbs cites regarding standing are quite different from the situation here – two post-election challenges in which the plaintiffs did not allege that the relief they sought would have changed election outcomes,[2] and a case in which none of the plaintiffs were current candidates for office.[3] Hobbs ignores the authorities cited in Plaintiffs' opposition to her motion to dismiss that held voters had standing to challenge election procedures in a future election, including *Curling v. Kemp*, 334 F. Supp. 3d 1303, 1316 (N.D. Ga. 2018) (standing established where the plaintiffs "plausibly allege a threat of a future hacking event that would jeopardize their votes and the voting system at large") and *Ariz. Democratic Party v. Ariz. Republican Party*, No. CV-16-03752-PHX-JJT, 2016 U.S. Dist. LEXIS 154086, at *4 (D. Ariz. Nov. 4, 2016) (standing established by allegation that plaintiff would suffer injury "if Defendants' alleged conspiracy to intimidate voters 'succeeds in disrupting or changing the results of the election'"). *See also Carson v. Simon*, 978 F.3d 1051, 1058 (8th Cir. 2020) ("An inaccurate vote tally is a concrete and particularized injury to candidates" sufficient to meet the injury-in-fact requirement for standing). Plaintiffs have standing, for the reasons set forth more fully in

---

[2] *Stein v. Cortés*, 223 F.3d 423, 426, 433 (E.D. Pa. 2016) (candidate who received less than 1% of votes demanded recount of votes), and *Samuel v. V.I. Joint Bd. of Elections*, No. 2012-0094, 2013 U.S. Dist. LEXIS 31538, at *1, 16 (D.V.I. Mar. 7, 2013) (plaintiffs sought "to decertify the November 6, 2012 general election" but "do not claim that they have been deprived of . . . election.") (quotation and citation omitted).

[3] *Shelby Cnty. Advocs. for Valid Elections v. Hargett,* 2019 WL 4394754, at *2 (W.D. Tenn. Sept. 13, 2019), *aff'd* 947 F.3d 977 (6th Cir. 2020).

3

their Opposition to Hobbs's Motion to Dismiss the Complaint, ECF no. 58 at 3-9.

### B. The Eleventh Amendment Does Not Bar Plaintiffs' Claims.

Hobbs next asserts Eleventh Amendment immunity. Opp. 6-7. Hobbs ignores that Plaintiffs' claims seek prospective injunctive relief against a state official to remedy an ongoing violation of federal constitutional law, and therefore meet the *Ex parte Young* exception to Eleventh Amendment immunity. *E.g.* Am. Compl. ¶¶ 178-79, 191-92 (ECF no. 3); *Mecinas v. Hobbs*, 30 F.4th 890, 904 (9th Cir. 2022). Instead, Hobbs mischaracterizes Plaintiffs' claims as seeking to "order state actors to comply with state law." Opp. 6. Hobbs is wrong. First, Plaintiffs allege that use of computerized equipment to process votes violates their federal constitutional rights without regard to state law. Plaintiffs allege, *e.g.*, that Arizona's machines fail "to provide reasonable and adequate protection" against "intrusion and manipulation," and fail to "provide a reasonable and adequate method for voting by which Arizona electors' votes would be accurately counted." Am. Compl. ¶ 180. They seek "an Order that Defendants collect and count votes through a constitutionally acceptable process." *Id*. ¶ 7. The Eleventh Amendment is not a bar to these claims. Second, Plaintiffs do not rely upon state law violations. Plaintiffs agreed to withdraw their Fifth Count pleading a violation of state law. The references in the Complaint to Arizona's failure to meet its own certification requirements are evidentiary and support Plaintiffs' contention that Arizona's voting machines are not secure. The inclusion of state law references does not change the substance of Plaintiffs' federal claims under *Ex parte Young* and 42 U.S.C. § 1983. Hobbs's mischaracterization of Plaintiffs' operative claims provides no basis for Eleventh Amendment dismissal.

### C. The Complaint Asserts Cognizable Claims.

Hobbs asserts the Complaint fails to state a cognizable legal claim. Opp. 7-10. This is a misnomer, for her argument challenges the *evidentiary basis*, not the legal sufficiency, of Plaintiffs' claims. Hobbs says, "All agree that voting is a fundamental constitutional right," but wrongly asserts the Plaintiffs "do not allege—much less offer any evidence—

1    that they have been or will be deprived of that right." *Id*. 7-8. However, Hobbs contradicts
2    herself, next admitting that Plaintiffs *do* allege they will be deprived of their right to vote
3    and *do* provide evidence. *Id*. at 8. In truth, Hobbs's argument is that she disagrees with
4    Plaintiffs' evidence, without offering any rebuttal evidence. *Id*. at 8-9.

5        Hobbs's conclusory disagreement with Plaintiffs' evidence provides no basis to
6    deny the Motion. The only evidence Hobbs provides is three cookie-cutter declarations
7    concluding that hand counting of ballots is too hard. ECF nos. 59-1, 59-2, 59-3. Hobbs
8    does not offer any evidence to dispute that malicious programming can alter votes in
9    computerized election machines from specific precincts at specific times or days, and can
10   be written to delete itself after its instructions are completed. Logan Decl. ¶¶ 22, 36, 23
11   (ECF no. 39). Hobbs does not offer any evidence to dispute that a person who gains access
12   to modify code on electronic voting equipment can control the equipment's behavior,
13   including changing votes, *id*. ¶ 34, nor any evidence to dispute that "air gap" cyber security
14   practices are insufficient to adequately protect election systems. *Id*. ¶¶ 81-84. Hobbs does
15   not offer any evidence to dispute that the Dominion equipment used in Maricopa County
16   in 2020 lacked necessary security measures and had lost security logs and deleted files. *Id*.
17   ¶¶ 59-63 & Ex. E. Hobbs does not offer any evidence to dispute that "in the November
18   2020 election ballots in Maricopa County and Pima County . . . were artificially processed
19   through the tabulators tracking a Proportional-Integral-Derivative (PID) type control
20   function in a closed-loop feedback system." Daugherity Decl. ¶ 7. Hobbs does not offer
21   any evidence to dispute the testimony provided by any of the expert witnesses whose
22   declarations Plaintiffs submitted in support of the Motion. Hobbs's presentation on these
23   issues is limited to "reserv[ing] the right to object" to the expert declarations, Opp. at 8 n.2;
24   providing an argumentative critique of small parts of Plaintiffs' evidence, *id*. at 8-9; and
25   disparaging the testimony of two of the experts without providing any reason their decades
26   of cyber security experience would not qualify them to offer expert testimony on cyber
27   security issues, *id.* at 9 n.3. The time for Hobbs to object to these experts' testimony was
28   in her Opposition, not at some undefined time in the future.

1    Hobbs has vacated the field, declining to submit any evidence other than regarding
2    the difficulty of a hand count of ballots. Her failure to submit evidence concerning the
3    security and manipulation of the computerized systems Arizona seeks to use to tabulate
4    paper ballots is telling. Notably, the district court in *Curling v. Raffensperger* "held three
5    days of hearing on Plaintiffs' motions" in addition to reviewing "the parties' extensive
6    briefs and evidentiary submissions." 493 F. Supp. 3d 1264, 1268 (N.D. Ga. 2020).

7    Hobbs tries to obscure her lack of evidence by ignoring Plaintiffs' evidence. She
8    first claims that Plaintiffs' "only evidence of security vulnerabilities" is "a CISA advisory."
9    Opp. 8. This claim is doubly wrong. First, Plaintiffs provided extensive expert testimony
10   about security failures in Arizona's equipment specifically, and about all computerized
11   election equipment generally. *See* ECF nos. 35, 39, 40, 41. Second, Plaintiffs do not cite
12   the CISA advisory as evidence concerning the characteristics of Arizona's election
13   equipment, but rather as evidence that the federal certification process is manifestly
14   inadequate to ensure the security of election equipment – so Hobbs's reliance on the
15   certification process as proof of security, *see* Opp. at 2, 8, must be rejected.

16   Hobbs asserts that Plaintiffs do not offer evidence that Arizona's equipment has
17   security vulnerabilities, has been breached in the past, or is at imminent risk of being
18   breached. Opp. 9. These assertions are wrong. Plaintiffs' evidence of security
19   vulnerabilities and actual vote manipulation is summarized above and available in the
20   Declarations of Douglas Logan, Ben Cotton, Shawn Smith, Dr. Walter Daugherity, and
21   John Mills. Plaintiffs provided ample evidence of means, motive, opportunity, and
22   impunity for those who would manipulate Arizona's reported vote totals in elections.

23   Hobbs claims Plaintiffs do not address Arizona's security procedures. Opp. 9.
24   Plaintiffs' Motion lays out a host of evidence that Arizona's security procedures do not
25   keep its computerized equipment secure. *E.g.* Mot. 7 ("*any* computer can be hacked given
26   enough time and access"); 8-9 (all computerized voting equipment studied by experts has
27   been found to contain security flaws); 11, 15-18 (Maricopa County equipment lacked
28   necessary security measures and "air gap" security practices not adequate); 14-15

6

1  (equipment vulnerable to supply chain attacks); 21-23 (same Democracy Suite 5.5B system
2  used in Arizona found to contain "erroneous code" and miscount votes).

3        Hobbs disingenuously claims that Plaintiffs criticize hand-counting of ballots as
4  "error-prone." Opp. 9. Plaintiffs criticized Arizona's limited "sort and stack" *method* as
5  error-prone – not all methods of hand counting. Other methods, *not* the sort and stack
6  method, provide better reliability than the sort and stack method, and are not error-prone.

7        Hobbs distinguishes Arizona's election system from Georgia's system, and alleges
8  "Arizona's approach" meets the standard advocated by an expert in the *Curling* litigation.
9  Opp. 10 & n.4. Plaintiffs address this argument on pages 2-4 of their Reply to the Maricopa
10 Defendants' Opposition to the Motion.

11       Hobbs disparages the legal substance of Plaintiffs' equal protection claim. Opp. 11.
12 Plaintiffs responded to this attack on pages 15-16 of their opposition to the Maricopa
13 Defendants Motion to Dismiss the Complaint, ECF no. 56.

14       Hobbs's attack on the evidentiary basis of Plaintiffs' claims is rhetorically bold but
15 substantively empty. It assumes that Hobbs need not offer any evidence to support her
16 assertions and that her inaccurate characterizations of Plaintiffs' evidence and arguments
17 are sufficient. That is not the standard for granting or denying motions in federal court.

18    **III.**   **ARIZONA'S PURPORTED COMPELLING INTEREST DOES NOT**
19             **EXCUSE CONSTITUTIONAL VIOLATIONS.**

20       Hobbs argues that Arizona has "compelling interests in using electronic voting
21 systems," asserting that electronic tabulation is "faster, more cost effective, and more
22 accurate than hand counting." Opp. 11. If Arizona could be assured that the results
23 produced by computerized scanners were secure against undetected manipulation, Hobbs's
24 argument might be worth entertaining. But Plaintiffs' evidence shows that Arizona cannot
25 be assured that its equipment is secure and that votes are not being manipulated. Hobbs's
26 argument, then, in substance claims that computerized vote counting makes the job so
27 much easier that it doesn't matter if the results are correct. This is risible. A result open to
28 secret manipulation is worthless, and any effort invested in a worthless result is wasted.

Plaintiffs' Motion argues that the use of computerized voting machines nullifies Plaintiffs' right to a secure and accurate vote. It is no rebuttal to say that Arizona's method of nullifying the vote is easy and cost-effective. Hobbs offers no other substantive response.

## IV.     THE IRREPARABLE HARM FACTOR FAVORS PLAINTIFFS.

Hobbs argues that Plaintiffs will not suffer irreparable harm in the absence of an injunction. Opp. 12-13. The irreparable harm is denial of Plaintiffs' constitutional right to vote. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quotation omitted); *Hernandez*, 872 F.3d at 994-95. Hobbs oddly claims, "Plaintiffs don't even state a claim for a constitutional violation," Opp. at 12, but mere pages earlier she admitted, "All agree that voting is a fundamental constitutional right . . . and that the right to vote includes the right of 'qualified voters . . . to vote and to have their votes counted," *id*. at 7. Plaintiffs state a claim for irreparable harm through Arizona's intended violation of their constitutional rights to vote and have their votes counted.

Hobbs's actual argument concerning irreparable harm, again buried, is that Plaintiffs waited too long to file the Complaint and seek a preliminary injunction. Opp. 12-13. First, Hobbs ignores that new evidence of security failures in computerized voting machines is constantly being uncovered. *See* Mot. at 5 & n.2 (June 4, 2022 CISA statement). Second, Hobbs fails to acknowledge the legal standard governing this kind of argument. Delay is "but a single factor to consider in evaluating irreparable injury," and courts are "loath to withhold relief solely on that ground." *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (quotation omitted). "[D]elay by itself is not a determinative factor in whether the grant of interim relief is just and proper." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (quotation omitted). Where there is an ongoing, repeated constitutional violation, "each instance" is a separate matter. *Cuviello*, 944 F.3d at 833. Each election must stand on its own, and a citizen is entitled to challenge the constitutionality of the procedures used in the next election without regard to whether those procedures were challenged in past elections. Hobbs's arguments that Plaintiffs did

8

not challenge previous Arizona elections do not show lack of irreparable injury with respect to the 2022 (and successive) elections. Moreover, "a strong showing of irreparable harm" is not required "for constitutional injuries," because "the need for immediate injunctive relief without further delay" is a "direct corollary of the matter's great importance." *Id*. (quotation omitted). Plaintiffs brought their claims less than two months after Arizona published its list of equipment for the "2022 Election Cycle,"[4] and more than six months before the November election. In other voting contexts, courts in the Ninth Circuit have entered election-related injunctions much closer to election day, or much more intrusive injunctions. *Sanchez v. Cegavske*, 214 F. Supp. 3d 961 (D. Nev. 2016) (granting injunction one month prior to election requiring addition of new in-person voting locations); *Krieger v. Peoria, City of*, No. CV-14-01762-PHX-DGC, 2014 U.S. Dist. LEXIS 117235, at *13-14 (D. Ariz. Aug. 22, 2014) (enjoining primary election four days before election day due to "fundamental unfairness" of ballot that omitted candidate's name); *Montes v. City of Yakima*, No. 12-CV-3108-TOR, 2015 U.S. Dist. LEXIS 194284, at *33 n.9 (E.D. Wash. Feb. 17, 2015) (entering injunction requiring adoption of different candidate districts "nearly six months" before election). With respect to the constitutional injury Plaintiffs allege, delay is not a weighty consideration. Righting the constitutional wrong takes precedence.

The authorities cited by Hobbs are not to the contrary. Opp. 12-13. Hobbs cites

- a legislative redistricting case which says that enjoining a state from enforcing its statutes constitutes irreparable harm "[u]nless that statute is unconstitutional," *Abbott v. Perez*, _ U.S. _, 138 S.Ct. 2305, 2324 (2018);
- a business dispute where "no new harm [was] imminent" and in which the business practice in question had continued unchallenged for "several years," *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985);
- a labor dispute in which the Ninth Circuit clarified, "delay by itself is not a

---

[4] See the equipment list cited on page 2 of Hobbs's Opposition, dated February 20022.

9

determinative factor in whether the grant of interim relief is just and proper," *Miller v. Cal. Pac. Med. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993); and

- a business dispute in which the plaintiff allowed the defendant to have possession of allegedly confidential business information for two months before bringing suit, *Barton & Assocs. v. Trainor*, No. CV-20-01560-PHX-SPL, 2020 U.S. Dist. LEXIS 191583, at *19 (D. Ariz. Oct. 15, 2020).

None of these cases apply to the facts here. Further, the consideration of delay has more weight when a plaintiff seeks an injunction to *preserve* the status quo. *See Miller*, 991 F.2d at 544 (delay "suggests that . . . the parties cannot be returned to the status quo"); *Aguayo ex rel. NLRB v. Tomco Carburetor Co.*, 853 F.2d 744, 750 (9th Cir. 1988), *overruled on other grounds*, *Miller ex rel. NLRB v. Cal. Pac. Med. Ctr.*, 19 F.3d 449, 457 (9th Cir. 1994). Plaintiffs here do not seek an injunction to preserve the status quo; they seek an injunction to preserve their rights.[5]

Hobbs's arguments on irreparable harm fail to acknowledge the proper standard; fail to apply the proper standard; and lack factual basis. Hobbs offers no basis to conclude that Plaintiffs will not suffer irreparable harm in the absence of preliminary relief.

### V.   THE REMAINING WINTER FACTORS FAVOR PLAINTIFFS.

Hobbs makes one last effort to attack Plaintiffs' showing concerning the *Winter* factors for preliminary injunctive relief, but this argument is simply a rehash of her assertions that hand counting votes is too difficult and the election is too soon. Opp. 13-16. Hobbs ignores that Plaintiffs do not ask for any change to pre-election procedures, candidate districting, voter eligibility, absentee ballot requirements, or any aspect of

---

[5] Hobbs cites "*Feldman v. Ariz. Sec'y of State's Off.*, 2016 WL 5900127, at *8 (D. Ariz. Oct. 11, 2016), *aff'd,* 842 F.3d 613 (9th Cir. 2016)." Opp. 13. This Ninth Circuit opinion was vacated for rehearing en banc, 841 F.3d 791 (9th Cir. 2016) ("The three-judge panel opinion shall not be cited as precedent by or to any court of the Ninth Circuit"). The en banc rehearing was limited to "whether or not a preliminary injunction should issue as to future elections." *Feldman v. Ariz. Sec'y of State's Office*, 840 F.3d 1165, 1166 (9th Cir. 2016). The en banc rehearing never occurred and the appeal was mooted by final judgment in the district court. Order, No. 16-16865 (9th Cir. June 1, 2018).

1  election administration that would affect voters. Accordingly, Hobbs's protestations about
2  UOCAVA ballots already being mailed – the only concrete example she offers, Opp. at 14
3  – are beside the point. Plaintiffs do not object to the UOCAVA ballots. Hobbs's other
4  arguments citing laches and *Purcell* are addressed in Plaintiffs' opposition to the Maricopa
5  Defendants' Motion to Dismiss the Complaint, ECF no. 56 at 7-10, and Plaintiffs' Motion
6  itself at 33-35. Hobbs's claims of hardship impairing the public interest, Opp. 15-16,
7  reprise her refusal to acknowledge that election results may not be opened to undetectable
8  manipulation merely to simplify administration. Ironically, Hobbs admits in a footnote on
9  the same page, "The *Purcell* principle, of course, 'does not supervene other relevant legal
10 considerations applicable when reviewing the grant or denial of preliminary relief. There
11 may well be cases where a state election rule is so constitutionally problematic . . . that a
12 federal court must intervene, even shortly before an election." Opp. 15 n.5 (quoting *Mi
13 Familia Vota v. Hobbs*, 977 F.3d 948, 953 (9th Cir. 2020)). That is the case here.

## VI.   CONCLUSION

Plaintiffs' Motion for Preliminary Injunction should be granted.

DATED: June 29, 2022.              **PARKER DANIELS KIBORT LLC**

                                       By */s/ Andrew D. Parker*
                                            Andrew D. Parker (AZ Bar No. 028314)
                                            888 Colwell Building
                                            123 N. Third Street
                                            Minneapolis, MN 55401
                                            Telephone: (612) 355-4100
                                            Facsimile: (612) 355-4101
                                            parker@parkerdk.com

                                   **OLSEN LAW, P.C.**

                                   By */s/ Kurt Olsen*
                                            Kurt Olsen (D.C. Bar No. 445279)*
                                            1250 Connecticut Ave., NW, Suite 700
                                            Washington, DC 20036
                                            Telephone: (202) 408-7025
                                            ko@olsenlawpc.com


                                   By /s/ Alan M. Dershowitz
                                            Alan M. Dershowitz (MA Bar No. 121200)*
                                            1575 Massachusetts Avenue
                                            Cambridge, MA 02138

                                     * Admitted *Pro Hac Vice*

                                     Counsel for Plaintiffs Kari Lake
                                     and Mark Finchem


## CERTIFICATE OF SERVICE

    I hereby certify that on June 29, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

                                          */s/ Andrew D. Parker*