Emily Craiger (Bar No. 021728)
emily@theburgesslawgroup.com
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Telephone: (602) 806-2100


RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:     Thomas P. Liddy (019384)
        Joseph J. Branco (031474)
        Joseph E. LaRue (031348)
        Karen J. Hartman-Tellez (021121)
        Deputy County Attorneys
        MCAO Firm No. 0003200

CIVIL SERVICES DIVISION
225 West Madison St.
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-8567
liddyt@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
laruej@mcao.maricopa.gov
hartmank@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for the Defendant
Maricopa County Board of Supervisors*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kari Lake and Mark Finchem, | No. 2:22-cv-00677-JJT |
| Plaintiffs, | **MARICOPA COUNTY DEFENDANTS' RESPONSE TO ARIZONA REPUBLICAN PARTY'S** ***AMICUS CURIAE*** **BRIEF (DOC. 53)** |
| vs. | |
| Kathleen Hobbs, et al., | |
| Defendants. | (Honorable John J. Tuchi) |

## INTRODUCTION

The purpose of an *amicus curiae* and its brief is to assist the Court by supplementing the work of the parties' counsel. It does this by highlighting arguments that had escaped their attention and providing the Court with helpful analysis of relevant law that had not been considered by the parties. *Miracle v. Hobbs*, 333 F.R.D. 151, 156 (D. Ariz. 2019) (*citing Miller-Wohl Co. v. Comm'r of Lab. & Indus. State of Mont.*, 694 F.2d 203, 204 (9th Cir. 1982)). The Arizona Republican Party's Brief *Amicus Curiae*, Doc. 53 (the "Amicus Brief"), does not do any of that. Rather, it offers this Court a plethora of factual and legal misstatements that serve only to muddy the waters and confuse the issues before this Court.

When *amicus curiae* briefs are not helpful, courts do not have to consider them or give weight to their arguments. *Miracle*, 333 F.R.D. at 156. As explained below, the Amicus Brief is not helpful, because each and every argument it advances is incorrect. This Court should give it no weight.

## ARGUMENT

### I. The AZGOP Mischaracterizes *Chavez v. Brewer*.

The Amicus Brief relies on *Chavez v. Brewer*, 222 Ariz. 309, 214 P.3d 397 (Ct. App. 2009), to assert that this Court should grant Plaintiffs' request for preliminary injunctive relief. [Amicus Brief at 3.] That is incorrect. The *Chavez* plaintiffs made numerous factual allegations regarding alleged deficiencies in the very machines that they challenged, and submitted expert declarations substantiating those allegations in the actual machines that were to be used in Arizona's elections. *Chavez*, 222 Ariz. at 313-14 ¶¶ 8-9. The court concluded that the plaintiffs might be entitled to injunctive relief on their constitutional claim "*if* they can establish that a significant number of votes cast on the [challenged accessible device] machines will not be properly recorded or counted." *Chavez*, 222 Ariz. at 320 ¶ 34 (emphasis added).[1]

---

[1] On remand and following discovery, the plaintiffs in *Chavez* agreed to dismiss all of their claims. As such, they never established that *any* vote cast on an accessible voting device in Arizona was not properly recorded or counted. *See Chavez v. Brewer,* No. CV2006-007000, Stipulation for Dismissal Without Prejudice (June 15, 2011); *see also* Joint Mot.

1

Contrast that with the instant case, where the vast majority of Plaintiffs' allegations concern machines and software that are not used in Arizona. [*See* Maricopa County's Motion to Dismiss (Doc. 27) at 11 (explaining the large number of Plaintiffs' allegations that have nothing to do with voting in Arizona).] The few allegations that actually concern machines used in Arizona are either conclusory in nature or demonstrably false, and so are incapable of defeating a motion to dismiss. [*Id*. at 11-14.] The Plaintiffs have not come forward with *any* evidence to support their request for injunctive relief. Rather, their Complaint contains wild speculation about what may have happened with other tabulation machines not used in Arizona, and mostly explains that they do not trust tabulation machines and they want the Court to order that Arizona must adopt their preferred method for counting votes, substituting their preference for that of the Arizona legislature. [*See id*. at 8 (citing Plaintiffs' wish list provided in the First Amended Complaint at 49-50).] But as the *Chavez* Court explained, mere "dissatisfaction with the voting equipment" does not entitle Plaintiffs to any relief. *Chavez*, 222 Ariz. at 319 ¶ 29.

## II.   The AZGOP Mischaracterizes Logic and Accuracy Tests.

The AZGOP also incorrectly claims that "[l]ogic and accuracy testing amounts to nothing more than an elaborate public relations or sales presentation, no different in function and practice than administering a multiple-choice examination when handing each test subject the answer key." [Amicus Brief at 3-4.] This conclusion betrays a remarkable lack of understanding of what the logic and accuracy test is, and how it works. And that lack of understanding is all the more remarkable considering that the Amicus Brief quotes A.R.S. § 16-449(A)'s description of how logic and accuracy testing is conducted: "[t]he test shall be conducted by processing a preaudited group of ballots so marked as to record a predetermined number of valid votes for each candidate and on each measure and shall include for each office one or more ballots that have votes in excess of the number allowed by law in order to test the ability of the automatic tabulating equipment and programs to

---

to Dismiss Pls. Terry's and Chavez's Claims due to Failure to Prosecute (June 20, 2011).

reject such votes." [*Id*. at 4.]

As the statute makes clear, logic and accuracy testing consists of inserting pre-marked ballots into tabulation equipment, to determine if the equipment accurately tabulates the ballots. Importantly, the counties do not know the content of the test ballots that the Secretary of State uses for logic and accuracy testing – they do not have the "answer key." [Doc. 53 at 4; Doc. 57-1 at ¶ 16] As such, the counties do not *and* cannot "pre-program[ ]" their tabulation equipment to achieve a certain result. [*Id.*] And as explained in Maricopa County's Motion to Dismiss, logic and accuracy tests are conducted both before and after each election. [Doc. 27 at 4-5.] This "before and after" approach is important because it demonstrates that the machines are correctly programed to count the ballots that will be cast in the upcoming election, and also that the programing was not altered during the election. Far from being an "elaborate public relations" stunt or "sales presentation," as the AZGOP incorrectly alleges, the statutorily-required logic and accuracy testing reveals whether the tabulation equipment accurately counts ballots *before* elections, and still accurately counts ballots *after* elections. And as noted in Maricopa County's Motion to Dismiss, Maricopa County had a 100% success rate in its logic and accuracy tests for the 2020 general election. [Doc. 27 at 4-5.]

**III.    The AZGOP Misstates the Requirements of the Public Records Law.**

The AZGOP also appears to assert that, because Maricopa County does not have access to proprietary, administrative passwords for its Dominion tabulation machines *that are never used by the County*, it is somehow violating Arizona's public records law. [Amicus Brief at 5.] To be clear, those passwords are not used by the County to conduct elections, and the County has no need for them. Despite the AZGOP's absurd contention, the Arizona Public Records law pertains to documents created by the government agency in the course of carrying out its public duties. It does not require government entities to keep and maintain records that they do *not* use, have *never* possessed, and do *not* need to conduct government business. *See* A.R.S. § 39-121.01(B) (providing that "[a]ll officers and public bodies shall maintain all records, including records as defined in § 41-151, reasonably

necessary or appropriate to maintain an accurate knowledge of their official activities and of any of their activities that are supported by monies from this state or any political subdivision of this state").

## IV. The AZGOP Misrepresents the Special Master's Report.

The AZGOP also falsely claims that the Special Master's Report, which was Exhibit 12 to Maricopa County's Motion to Dismiss, [Doc. 29-13], demonstrates that Maricopa County allowed records "necessary to keep account of its official activities during the 2020 general election to be overwritten." [Amicus Brief at 5-6.] This *too* is false; the Special Master's Report says nothing of the sort. Rather, the Special Master's Report emphatically states that "[t]he special master and expert panel found **no** evidence of data deletion, data purging, data overwriting, or other destruction of evidence or obstruction of the audit." [Doc. 29-13, *Special Master's Report*, at 12 (emphasis added).] Further, "there is **no** evidence of deletion, purging, overwriting, or destruction of logs or system data related to the audit." [*Id*. (emphasis added).]

Despite the Special Master's clear, unequivocal declaration that Maricopa County had not overwritten, deleted, or purged data, the AZGOP falsely states that the Special Master's Report claims the exact opposite. For support, it cites to the "third column" on pages 10–18 of the Report, which it claims "not[es] several instances where contemporaneous data from the 2020 general election had been rendered unavailable by the passage of time because it had been copied over by newer data." [Amicus Brief at 6.] But the third column on those pages does not support the AZGOP's contention.

For starters, the information contained in the third column on those pages does not relate to the 2020 general election. That data is contained in the second column, which recounts the Special Master's examination of the air-gapped Ballot Tabulation Center, where ballots are tabulated and election results are determined. [Doc. 29-13 at 10.] The data in the third column relates to the Voter Registration Database and the Recorder's Office's computer network, neither of which are involved in ballot tabulation. [*Id*.] Thus, even if the third column said what the AZGOP claims, that would not indicate that the County had

4

"copied over" data related to the 2020 general election.

Regardless, the third column does not say what the AZGOP claims. Rather, it contains several statements related to particular configuration commands, such as the "show clock detail command" and the "show running config-command," that the Arizona Senate had requested the Special Master to run. [*See, e.g.*, Doc. 29-13 at 12.] And it confirms that those types of commands produce results tied to the moment in time during which the command is executed. [*Id.*] Thus, because the Special Master was not present during the 2020 general election to execute those commands, but rather was requested to execute them months later, the results would say nothing about the conditions of the routers and splunk logs used by the Recorder's Office for its non-election-related activities during the time-period of the 2020 general election. [*Id.*]

Finally, the AZGOP oddly contends that, because Maricopa County was required to replace the tabulation machines that were examined by the Cyber Ninjas, it had somehow failed to keep account of its activities during the 2020 general election. [Amicus Brief at 6.] But the Special Master's Report explains that the tabulation equipment used in the 2020 general election "has been replaced as part of the State Senate audit and is sequestered at the request of the Attorney General." [Doc. 29-13 at 7.] Despite the AZGOP's contention at pages 5-6 of the Amicus Brief, none of the data necessary to keep an account of the 2020 election has been "overwritten."

V. **The AZGOP Misrepresents a Data Breach of a System Unrelated to Tabulation.**

In its Amicus Brief, the AZGOP alludes to a data breach of the Recorder's public-facing website that occurred in 2020, and then implies that the County's election equipment is similarly at risk. [Amicus Brief at 7.] Nonsense. The referenced data breach involved a bad actor who used the Internet to take screenshots of information contained in the voter registration database. [Doc. 29-13 at 17.] The voter registration database has nothing to do with the tabulation of votes and the determination of election results. [*Id.* at 18.] None of the compromised information was altered or deleted; rather, the bad actor obtained copies of the information without paying for it as required by A.R.S. § 16-168. [*Id.* at 17.] And the

5

hacker did not gain access to the portion of the County's system that tabulates election results, which is air-gapped and so not susceptible to such hacking. [*See id*. (noting in the second column that no records indicate that the Election Management System and/or Ballot Tabulation Center were breached); *id*. at 10 (noting that the election-related portion of the Elections Department is air-gapped).]

## VI. The AZGOP Falsely Accuses Maricopa County of Obstructionist Behavior.

The AZGOP also alleges that Maricopa County engaged in "obstructionist behavior" and, as an example, notes that the County did not allow the political parties to send observers to the forensic audits of its tabulation equipment the County conducted in February, 2021. [Amicus Brief at 5 and 5 n.13.] That, however, was not "obstructionist;" the political parties were not invited because of COVID-related concerns. And after the Maricopa County Libertarian Party sued Maricopa County, alleging that it had a legal right to attend the County's forensic audit, the Maricopa County Superior Court ruled that Arizona law did not require the political parties to be included in that type of discretionary, post-election audit at which no ballots from the election were counted. *Maricopa Cty. Libertarian Pty. v. Maricopa County*, No. CV 2021-002205 (Minute Entry, April 30, 2021) (attached as Exhibit A). The AZGOP's contention that the County was "obstructionist" when it declined to invite political parties to observe the discretionary audits it performed of its equipment is a shameful misrepresentation of what actually happened. And it is not as if the AZGOP does not know the truth: its attorney, Michael Kielsky, who filed the Amicus Brief, represented the Maricopa County Libertarian Party in its lawsuit against Maricopa County. [*See* Exhibit A, at 1.]

## VII. The AZGOP Falsely Claims that Maricopa County's Tabulation Equipment Has Not Been Adequately Tested.

Finally, the AZGOP falsely claims that the tabulation equipment used in Maricopa County has not been "subject[ed] . . . to proper, independent, exhaustive hardware, firmware, and software testing and a detailed examination by skilled and experienced independent engineers." [Amicus Brief at 7.] This is false. As explained in Maricopa County's Motion

to Dismiss, the County's equipment must pass testing by the Secretary of State's Certification Committee as well as by an independent, expert testing laboratory that is accredited by the United States Elections Assistance Commission (the "EAC"). That is what Arizona law requires, A.R.S. § 16-442(A), (B), and that is what happened. [Doc. 27 at 2-3.] Only after Maricopa County's tabulation equipment passed the requisite testing was it certified for use in Arizona elections. [*Id.*]

Despite the fact that the testing of Maricopa County's equipment is a matter of public record, the AZGOP claims that it has not been adequately tested, and as support for that contention it notes that a *different* version of Dominion's equipment was rejected for use in *a different* state. [Amicus Brief at 7.] This head-scratching contention completely misses the mark. To be clear, *Texas's* rejection of a *different* voting tabulation system has nothing to do with whether Maricopa County's tabulation equipment was properly tested and certified for use in Arizona. It was, as the record demonstrates. [Doc. 27 at 2-3.]

## **CONCLUSION**

The AZGOP's Amicus Brief is comprised of misrepresentations and misstatements offered as support for demonstrably incorrect arguments. This Court should give it no weight.

RESPECTFULLY SUBMITTED this 5th day of July, 2022.

THE BURGESS LAW GROUP

BY: */s/ Emily Craiger*
    Emily Craiger

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: Thomas P. Liddy
    Joseph J. Branco
    Joseph E. La Rue

7

Karen J. Hartman-Tellez
Deputy County Attorneys

*Attorneys for the Defendant*
*Maricopa County Board of Supervisors*

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

*/s/ A. Renteria*