Roopali H. Desai (024295)
D. Andrew Gaona (028414)
Kristen Yost (034052)
**COPPERSMITH BROCKELMAN PLC**
2800 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
T: (602) 381-5478
rdesai@cblawyers.com
agaona@cblawyers.com
kyost@cblawyers.com

Sambo (Bo) Dul (030313)
**STATES UNITED DEMOCRACY CENTER**
8205 South Priest Drive, #10312
Tempe, Arizona 85284
T: (480) 253-9651
bo@statesuniteddemocracy.org

Christine Bass *
**STATES UNITED DEMOCRACY CENTER**
3749 Buchanan Street, Unit 475165
San Francisco, California 94147-3103
T: (309) 242-8511
christinebass@statesuniteddemocracy.org

* *Admitted Pro Hac Vice*

*Attorneys for Defendant*
*Arizona Secretary of State Katie Hobbs*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake and Mark Finchem,<br><br>                  Plaintiffs,<br><br>     v.<br><br>Katie Hobbs, in her official capacity as Arizona Secretary of State, et al.,<br><br>                  Defendants. | No. 2:22-cv-00677-JJT<br><br>**ARIZONA SECRETARY OF STATE'S MOTION TO STRIKE DECLARATIONS OF JOHN MILLS, BEN COTTON, WALTER DAUGHERITY, DOUGLAS LOGAN, AND SHAWN SMITH AND MOTION IN LIMINE TO EXCLUDE THEIR TESTIMONY AT PRELIMINARY INJUNCTION HEARING** |

1100513.2

Defendant Secretary of State Katie Hobbs ("Secretary") respectfully moves under Federal Rule of Evidence 702 and the Supreme Court's decision in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), for an order (1) striking the declarations of John Mills, Ben Cotton, Walter Daugherity, Douglas Logan, and Shawn Smith proffered by Plaintiffs in support of their motion for a preliminary injunction [Docs. 35, 38-41], and (2) excluding their testimony at the July 21, 2022 preliminary injunction hearing. Undersigned counsel certifies that, after good faith consultation with Plaintiffs' counsel Andrew Parker, the parties were unable to resolve the disputed evidentiary issues.

**INTRODUCTION**

To support their claim that certain potential "security failures" in electronic voting systems could "nullify the fundamental right to vote by permitting elections to be decided by computer manipulation rather than vote totals," Plaintiffs rely on declarations and anticipated testimony from five individuals: John Mills, Ben Cotton, Walter Daugherity, Douglas Logan, and Shawn Smith.[1] Their declarations and anticipated testimony, however, advance generalized conclusions that voting machines are unreliable. These opinions largely rest on conjecture, conspiracy theories, and self-serving statements and reports that were produced to (unsuccessfully) overturn the 2020 election results. Plaintiffs' proffered declarations and anticipated testimony, which purport to be expert opinion, are unreliable, unhelpful to the trier of fact, and irrelevant to proving Plaintiffs' claims. The declarations' conclusions are hardly worthy of the kind of analysis required for "scientific, technical, or other specialized knowledge," but even if they were, Plaintiffs' "experts" are unqualified to offer opinions in the areas of electronic voting systems or electronic voting system security. The declarations of

---

[1] During the parties' meet and confer call, Plaintiffs' counsel disclosed the possibility of calling a sixth witness, Clay Parikh, to testify at the preliminary injunction hearing. The Secretary does not have any information about the background or scope of this new witness's anticipated testimony, but reserves the right to seek exclusion of his testimony on the same grounds set forth in this Motion.

1  John Mills, Ben Cotton, Walter Daugherity, Douglas Logan, and Shawn Smith are thus
2  inadmissible under Rule 702 and should be stricken in their entirety, and these individuals
3  should be barred from testifying at the preliminary injunction hearing.
4      For the same reasons, Plaintiffs' experts' testimony warrants exclusion under Federal
5  Rule of Evidence 403. There is no probative value to their review of equipment manuals,
6  Election Assistance Commission certifications, select Arizona county vote records, and
7  "research" regarding cybersecurity. Accordingly, introducing the testimony of Plaintiffs'
8  experts will only cause delay and confuse the issues.

9                                          **ARGUMENT**

10  **I.  The Mills, Cotton, Daugherity, Logan, and Smith Declarations, and Their
         Proposed Testimony Should Be Excluded Under Rule 702 Because They Offer
11       Unreliable, Unhelpful Opinions Without The Requisite Qualifications.**

12      To be admissible, expert testimony must be reliable, relevant, and qualified.
13  Specifically, Federal Rule of Evidence 702 provides that a qualified witness with "scientific,
14  technical, or other specialized knowledge" may testify if the witness "will help the trier of fact
15  to understand the evidence or to determine a fact in issue." *See also Daubert*, 509 U.S. at 593.
16  Among other things, the witnesses' testimony must be based on sufficient facts or data and the
17  product of reliable principles and methods. Fed. R. Evid. 702. Although there is "less danger
18  that a trial court will be 'unduly impressed by the expert's testimony or opinion' in a bench
19  trial" because the gatekeeper and the trier of fact are one and the same, the court must still
20  perform the *Daubert* inquiry as it concerns the admissibility—not the weight—of expert
21  evidence. *F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014). The Court may
22  exclude evidence prior to a preliminary injunction hearing that "clearly does not meet
23  the *Daubert* standard." *A.A. v. Raymond*, No. 2:13-CV-01167-KJM, 2013 WL 3816565, at *4
24  (E.D. Cal. July 22, 2013).

25
26

### A. Mills, Cotton, Daugherity, Logan, and Smith are not qualified to render opinions on electronic voting systems and procedures or electronic voting system security.

The party putting forward expert testimony bears the burden of proving admissibility. *See Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). This includes the threshold inquiry of whether the expert is actually "an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The proponent must prove that their "expert" is actually an "expert[] in a *particular* scientific field." *Daubert*, 43 F.3d at 1315 (emphasis added). Particularity is important; that a witness may be an expert in a certain field does not "automatically translate into expert status" in another field. *Aloe Vera of Am. Inc. v. United States*, No. CV-99-01794-PHX-JAT, 2014 WL 3072981, at *7 (D. Ariz. July 7, 2014). This is true even if the fields at issue are related. *See, e.g.*, *United States v. Chang*, 207 F.3d 1169, 1173 (9th Cir. 2000) (affirming exclusion of testimony from professor with expertise in international finance and foreign security instruments because he was not qualified as expert in identifying counterfeit foreign financial instruments); *Ancho v. Pentek Corp.*, 157 F.3d 512, 517–18 (7th Cir. 1998) (affirming exclusion of graduate mechanical engineer who lacked experience in architectural design of specific type of plant or conveyor system). Courts have applied this need for specificity in the field of election law. *See Koppell v. N.Y. State Bd. of Elections*, 97 F. Supp. 2d 477, 481–82 (S.D.N.Y. 2000) (excluding testimony of political scientist who had "significant political experience," but "lack[ed] any particular expertise" on the election practices at issue, and his work in the area had "neither been tested nor subject to peer review"). An additional, "very important" inquiry at this stage is "whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying." *Daubert*, 43 F.3d at 1317.

The declarations of Mills, Cotton, Daugherity, Logan, and Smith consist of a series of unscientific conclusions about the integrity of electronic voting systems, and speculation that

1  generalized cybersecurity concerns render voting systems potentially insecure. [Docs. 35, 38-
2  41]. But these conclusions do not rest within areas of expertise for any of these witnesses.
3         To start, Mills and Smith do not purport to have any firsthand knowledge, research, or
4  experience with Arizona's voting systems and procedures. Rather, their declarations cite
5  vaguely to publicly available records and reports relating to cybersecurity and then summarily
6  conclude that Arizona's voting systems are at risk of being compromised. Moreover, there is
7  nothing in Smith's or Mills' declarations or in the public domain to suggest that either one has
8  ever served as an expert witness in any case before. Nor have Plaintiffs provided a current
9  curriculum vitae for either proposed witness to establish they have the qualifications and
10 experience to serve as expert witnesses. And, in the case of Smith, the Secretary has serious
11 concerns that allowing Mr. Smith's declaration or testimony to be admitted at the preliminary
12 injunction hearing may increase threats of violence against election administrators. On several
13 occasions in the recent past, including at a public town hall meeting held in Castle Rock,
14 Colorado, Smith publicly threatened Colorado Secretary of State Jena Griswold by accusing
15 her of election fraud, and following up by saying that, "I think if you are involved in election
16 fraud then you deserve to hang. Sometimes the old ways are the best ways." *See*
17 https://www.9news.com/article/news/local/next/colorado-group-militia-wing-town-hall-
18 election-conspiracy-theorists-fec-united-tina-peters/73-fddb213a-7c47-47cd-964d-
19 f895746e6753. Not only do Mills and Smith have no expertise in electronic voting systems or
20 procedures or electronic voting system security—let alone Arizona's voting systems and
21 procedures—so as to not assist the trier of fact, but their testimony is likely to be harmful.
22        The other declarations and proposed testimony of Cotton, Daugherity, and Logan are
23 equally unreliable and should be excluded at the hearing.
24        There is no indication from Daugherity's declaration that he has ever served as an
25 expert witness in any case before, and his curriculum vitae does not list any work as a qualified
26 expert. In short, Daugherity has no relevant election experience or training or knowledge about

1  tabulation or recording procedures and is not qualified "by knowledge, skill, experience,
2  training, or education." He also appears to have invented his methodology, and never actually
3  reviewed any voting system used in Arizona. Thus, Daugherity's opinions are (a) not based on
4  "sufficient facts or data" (he provides no comparisons to other vote total calculations and
5  provides no explanation for how the counties tally and record the votes reflected in his charts),
6  (b) not based on "reliable principles and methods" (he provides essentially no explanation for
7  concluding that the "predictability and dependence" of vote totals "would not occur without
8  artificial manipulation"), and (c) not based on him "reliably appl[ying] the principles and
9  methods to the facts of the case" (he provides no discussion of tabulator equipment used or the
10 method of counting and recording votes in Arizona).

11      Although Cotton claims in his declaration that he has testified in state courts, federal
12 courts, and before Congress, the Secretary cannot find any case or matter in which Cotton has
13 been qualified as an expert witness on any topic, let alone electronic voting systems and
14 procedures. Like Mills and Smith, Cotton also did not provide his curriculum vitae, which
15 further undermines his anticipated testimony as an expert. Logan's declaration does not claim
16 he is a qualified expert and there is no indication that he has ever been qualified as an expert
17 witness in any case, let alone an election case. Like Daugherity, Logan and Cotton are not
18 qualified "by knowledge, skill, experience, training, or education." Simply put, they have no
19 relevant election experience. Thus, their purported opinions are (a) not based on "sufficient
20 facts or data" (both declarations rely on incomplete and incorrect findings), (b) not based on
21 "reliable principles and methods," and (c) not based on them "reliably appl[ying] the principles
22 and methods to the facts of the case."

23      **B.    The key conclusions in the declarations and anticipated testimony rest
24              largely on unreliable ipse dixit.**

25      Courts consider the following factors when assessing an expert opinion's reliability: (1)
26 whether the theory has been or can be tested; (2) whether the theory has been subject to peer

review; (3) the known or potential rate of error; and (4) "general acceptance" of the theory in the relevant scientific community. *Daubert*, 509 U.S. at 593–94. Under this test, expert testimony is properly excluded as unreliable "where it is based on subjective beliefs or unsupported speculation which is no more than unreliable *ipse dixit* guesswork." *Friend v. Time Mfg. Co.*, 422 F. Supp. 2d 1079, 1080 (D. Ariz. 2005) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) and *Domingo ex rel. Domingo v. T.K.*, 289 F.3d 600, 607 (9th Cir. 2002)). Indeed, an opinion resting on unsubstantiated and undocumented information "is the antithesis of the scientifically reliable expert opinion admissible under Daubert and Rule 702." *Cabrera v. Cordis Corp.*, 134 F.3d 1418, 1423 (9th Cir. 1998) *see also Haynes ex rel. Haynes v. Nat'l R.R. Passenger Corp.*, 319 F. App'x 541, 543 (9th Cir. 2009) (explaining that a Google search and a CNN.com report, "which would both ordinarily be a basis for little more than lay speculation," did not provide an appropriate basis for expert opinion).

Plaintiffs' purported experts cannot meet these basic gatekeeping requirements. Their theories—which stitch together an overview of cybersecurity literature, self-serving statements and reports, and debunked "audit" results—have not been peer reviewed. Much of their declarations amount to nothing more than background information based on a literature review of other political statements. These types of conclusory reports and generalized review of articles are hardly a "basis for little more than lay speculation," let alone reliable methodology. *Haynes*, 319 F. App'x at 543.

The only arguably independent analysis is Daugherity's chart of vote ratio changes over time in two (of fifteen) select counties in Arizona. [Doc. 38-5]. Daugherity – who has no apparent connection or experience with Arizona at all, let alone Arizona's elections systems – says that "vote counting by electronic voting machines used in Maricopa County, Pima County, and other counties throughout the United States that I have examined was manipulated and tightly controlled to reach predetermined outcomes." [Doc 38 ¶ 11] He bases that conclusion on a nonsensical "analysis" of "Cast Vote Records," and posits that the only explanation for the

"significant and systematic decline in the cumulative ratio [of votes] as counting progresse[d]" is "manipulation" of some kind. [*Id.* ¶ 9] His methodology defies all explanation and logic, and Daugherity provides no evidence that it has ever been subject to peer review or has any level of acceptance within the scientific community.

This circular reasoning and chain of suppositions cannot pass for a reliable opinion. It is based on assumptions and other unsupported conclusions. When strung together, Daugherity's second-hand research and unreliable "analysis" of vote counts does not amount to the kind of objective, scientific or specialized knowledge that satisfies Rule 702.

### C. The declarations and testimony will not help resolve the Plaintiffs' claims.

Expert evidence that does not logically advance a material aspect of a party's case is not relevant and thus unhelpful to the decisionmaker. *See Cooper*, 510 F.3d at 942; *Daubert*, 509 U.S., at 591.

None of Plaintiffs' experts' observations about electronic voting systems and procedures or electronic voting system security bear on a material aspect of any of Plaintiffs' claims. As such, none of their conclusions are helpful to the Court in resolving Plaintiffs' motion for a preliminary injunction. As explained in the Secretary's response to motion for preliminary injunction, Plaintiffs offer no evidence that Arizona's specific election equipment has any identifiable security vulnerabilities, or that anyone has ever breached or manipulated any equipment in Arizona. [Doc. 59 at 8-9] Plaintiffs' and their experts' broad, speculative claims about electronic voting systems generally is no more than their policy preferences for hand-counting; it says nothing about the constitutionality of Arizona's election equipment. [*Id.*] At bottom, nothing in the Constitution requires Plaintiffs' preferred method of tabulating votes. *Weber v. Shelley*, 347 F.3d 1101, 1107 (9th Cir. 2003).

## II. Plaintiffs' Expert Report Should Also Be Excluded Under Federal Rule of Evidence 403.

Federal Rule of Evidence 403 provides an independent basis to exclude the opinions of John Mills, Ben Cotton, Walter Daugherity, Douglas Logan, and Shawn Smith. Rule 403 requires the exclusion of evidence, the probative value of which is substantially outweighed by its prejudicial impact. *United States v. Ramirez-Robles*, 386 F.3d 1234, 1246 (9th Cir. 2004). Evidence may be prejudicial where there is a substantial likelihood that it might confuse the issues or waste time. *United States v. Wells*, 879 F.3d 900 (9th Cir. 2018).

For the reasons discussed above, the declarations and anticipated testimony of Mills, Cotton, Daugherity, Logan, and Smith have scant probative value. They do not help to prove any element of Plaintiffs' claims. Nor are their methods particularly sound or reliable. Admitting their declarations and testimony is unnecessary to resolve the legal issues. The Court should thus exclude the declarations and any attendant testimony under Rule 403.

## CONCLUSION

For the above reasons, the Secretary respectfully requests that the Court strike the declarations of John Mills, Ben Cotton, Walter Daugherity, Douglas Logan, and Shawn Smith and exclude their testimony at the preliminary injunction hearing.

Respectfully submitted this 20th day of July, 2022.

**COPPERSMITH BROCKELMAN PLC**

By /s/ Roopali H. Desai
    Roopali H. Desai
    D. Andrew Gaona
    Kristen Yost

**STATES UNITED DEMOCRACY CENTER**
Sambo (Bo) Dul
Christine Bass *

*Pro Hac Vice*

*Attorneys for Defendant Arizona Secretary of State Katie Hobbs*