RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:  Thomas P. Liddy (019384)
     Joseph J. Branco (031474)
     Joseph E. LaRue (031348)
     Karen J. Hartman-Tellez (021121)
     Deputy County Attorneys
     MCAO Firm No. 0003200

CIVIL SERVICES DIVISION
225 West Madison St.
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-8567
liddyt@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
laruej@mcao.maricopa.gov
hartmank@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

Emily Craiger (Bar No. 021728)
emily@theburgesslawgroup.com
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Telephone: (602) 806-2100

*Attorneys for the Defendant
Maricopa County Board of Supervisors*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake and Mark Finchem,<br><br>Plaintiffs,<br><br>vs.<br><br>Kathleen Hobbs, et al.,<br><br>Defendants. | No. 2:22-cv-00677-JJT<br><br>**SECOND DECLARATION OF SCOTT JARRETT**<br><br>(Honorable John J. Tuchi) |

For my second declaration, pursuant to 28 U.S.C. § 1746, I, Scott Jarrett, declare:

1. **None** of the equipment Mr. Cotton examined as part of Cyber Ninjas' examination will be used again; it has all been replaced. The Secretary of State notified the County that it should never again use the election equipment that had been in the Senate's control. The Secretary stated that election technology and security experts, including those at the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, advised to discontinue use of equipment that left election officials' custody and control. [Ex. 1, *Notice of Claim and Exhibits*, at 4.] She also noted "troubling security lapses" during the Cyber Ninja examination. [*Id.*] And she stated that she would consider initiating a decertification proceeding if the County intended to ever again use the equipment. [*Id.*] The County agreed with the Secretary's assessment and replaced its equipment at a cost of $2.8 million. [*Id.* at 5.]

2. Mr. Cotton's knowledge of the County's previously-used equipment is based on his analysis of it while it was in the Senate's custody, not under the conditions in which it is maintained while in the County's custody.

3. Mr. Cotton claims that "wireless 802.11 modems" "are a component of the integrated Network Interface Card which is soldered into the motherboards of the Election Management System (EMS) client workstations and the ballot adjudication workstations" he examined. [Doc. 89, ¶ 1.] I believe this claim is incorrect. To my knowledge, none of the equipment Mr. Cotton examined, including the EMS, the PC work stations, and the adjudication workstations, had wireless network cards installed. Had there been such cards, they would have been discovered during the checks performed by the Elections Department, or the two forensic audits we had conducted by EAC-accredited laboratories.[1]

4. Mr. Cotton claims that that his examination revealed that the EMS server and all connected Dell workstations had open ports that would allow USB-based modems to be

---

[1] The only soldered 802.11 component within the air-gapped EMS was a nonremovable wireless card attached to the motherboard of a Canon printer, which was never examined by Mr. Cotton, and which is set to inactive. [*See* Doc. 29-14, *Correcting the Record*, at 43.]

1  plugged in to access the internet. [Doc. 89, ¶ 2.] Even if that were true, neither Mr. Cotton's report presented to the Arizona Senate, nor his testimony in this case, mentioned any logs or historical data indicated that these allegedly "open ports" ever had Wi-Fi cards added.

Regardless, port blockers and security enclosures are implemented on both the tabulators and the workstations. The EMS server is subject to additional physical security controls which greatly limits access. We also have a two-person policy requirement for maintenance on the server, and the area is under 24/7/365 camera recording. These additional physical protections and access limitations provide elevated security.

5. Regarding Mr. Cotton's allegations concerning *passwords*, [*id.*], I direct the Court's attention to Doc. 29-14, *Correcting the Record*, at 50-51.

6. Regarding Mr. Cotton's allegations concerning the second hard drive, [Doc. 89, ¶ 3], the hard drive was not plugged in and so was not able to be used. [*See* Doc. 82 at 1-2.] We perform end user acceptance testing for every device received. In 2020, the end user acceptance testing did not involve opening the computer containers to look inside. We have modified this procedure and now do this additional inspection.

7. Concerning Mr. Cotton's claims about my testimony, [Doc. 89, ¶ 4.], I don't recall my specific testimony but I did not intend to testify that *logs* were not requested. My intention was to state that *backups* were not requested.

8. To the extent Mr. Cotton is claiming that Maricopa County did not fully comply with the Senate's subpoena [Doc. 89, ¶ 4], he is incorrect. Senate President Fann affirmatively stated that the County was in compliance with her subpoena. [Ex. 2, *Letter from Senate President Fann to Attorney General Brnovich*.]

9. Exhibits 1 and 2 are true and correct copy of Maricopa County's Notice of Claim and Senate President Fann's Letter to Attorney General Brnovich, respectively.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2022.

_____
Scott Jarrett