# Exhibit 1

225 WEST MADISON
PHOENIX, AZ 85003
WWW.MARICOPACOUNTYATTORNEY.ORG

PH.    (602) 506-8541
FAX   (602) 506-4317



# 𝕸𝖆𝖗𝖎𝖈𝖔𝖕𝖆 𝕮𝖔𝖚𝖓𝖙𝖞 𝕬𝖙𝖙𝖔𝖗𝖓𝖊𝖞

## ALLISTER ADEL

August 18, 2021

The Honorable Karen Fann
Arizona Senate President
Fifty-Fifth Legislature
1700 West Washington
Senate Building
Phoenix, Arizona 85007

RE:    Notice of Claim Pursuant to A.R.S. § 12-821.01

Dear Senate President Fann:

Maricopa County Attorney Allister Adel represents the Maricopa County Board of Supervisors
(the "Board").  We write to alert you to the Board's claims against the Arizona Senate as a result
of its election equipment being rendered unusable for Arizona elections because it was
compromised by the Senate's vendors, and also as a result of costs the County incurred
complying with the Senate's subpoenas.

## I.    FACTUAL BASIS OF CLAIMS.

### A.    The January 12, 2021 Subpoena.

Late in the afternoon of January 12, 2021, a little before 4:00 p.m., Senate President Fann caused
subpoenas issued jointly by her and Senator Warren Petersen to be served on the Board, the
Maricopa County Recorder, and the Maricopa County Treasurer.[1]  A true and correct copy of
those subpoenas is attached as Exhibit A.  They commanded the Board, the Recorder, and the
Treasurer—or their designees—to appear before the Senate the next morning, January 13, 2021,
at 9 a.m., "to provide testimony" and "testify" concerning the items the subpoenas commanded
to be produced.

---

[1] The subpoena to the Board of Supervisors was served on the Clerk's Office at 3:49 p.m.  The
subpoenas to the Recorder and the Treasurer were served at about the same time.

Notice of Claim to the Arizona Senate
August 18, 2021
Page 2

The Chairman of the Board of Supervisors, the Recorder, and the Treasurer all appeared with undersigned counsel at 9 a.m. on January 13, as the subpoenas commanded.  But there was no legislative hearing scheduled for that morning.  We were told that no Senator wanted to hear from any of the County's elected officials, despite the subpoenas' command that they appear that morning to provide testimony.

The County nonetheless immediately began producing what it lawfully could produce on January 15, 2021, and made a second production on January 21, 2021.  Exhibits B and C, attached hereto, are true and correct copies of letters from our office to the Senate's counsel that accompanied the production and listed the items produced.

### B.   *Maricopa County v. Fann*, CV2020-016840 and CV2021-002092.

The County was uncertain, however, whether it could lawfully produce some of the items the subpoenas commanded.  As a result, it filed a lawsuit, known as *Maricopa County v. Fann*, in order to clarify the County's legal obligations.  In that lawsuit, the County questioned whether the subpoenas were lawful when they had been issued under the authority of two Senators, alone, without any authorization by the Senate as a whole.  *See, e.g.*, Maricopa County's Motion for Summary Judgment (filed February 22, 2021), at 6-8.[2]  Judge Thomason, however, ruled that the subpoenas **_were_** lawful and enforceable, despite the fact that the Senate as a whole had not authorized the subpoenas.  *Maricopa County v. Fann*, CV2020-016840 (Minute Entry Ruling, filed March 1, 2021), at 7-8 and 15.

### C.   Preparing for Production of the County's Equipment, Ballots, and Data to the Senate.

The same day that the County received Judge Thomason's ruling, the County's attorneys contacted Senate President Fann's counsel, Kory Langhofer, in order to arrange for the delivery of the remainder of the subpoenaed items to the Senate.  Mr. Langhofer responded that the County should "maintain the materials in the County's facility until the Senate has made suitable arrangements for storing the materials elsewhere[.]"[3]  Mr. Langhofer also stated in his email that his hope was that "the Senate will have firmed up its plans in the next few days."

To that end, the County began preparations to transfer the 2.1 million ballots, 385 precinct-based tabulators, 9 central count tabulators, and other election equipment to the Senate.  On April 16, 2021, Mr. Langhofer sent an email to deputy county attorney Joseph La Rue, alerting the County that the Senate was finally prepared to receive the items it had subpoenaed.  Mr. Langhofer's email directed the County to produce the materials, beginning on April 21, 2021, to the Senate at the Veterans Memorial Coliseum.

---

[2]The County's Motion for Summary Judgment is available on the Maricopa County Superior Court's website, at https://www.clerkofcourt.maricopa.gov/home/showpublisheddocument-/2415/637498369569730000.

[3] Email from Kory Langhofer to Steve Tully, March 1, 2021 (5:08 p.m.).

Notice of Claim to the Arizona Senate
August 18, 2021
Page 3

### D.     The Indemnification Agreement.

On April 19, 2021, deputy county attorney Joseph La Rue wrote to Ken Bennett, who Senate President Fann had appointed as the Senate Liaison to oversee the "audit" that the Senate President intended to do of the County's equipment and ballots.  In his letter, Mr. La Rue asked that Senate President Fann agree that the Senate would indemnify the County for losses it might incur as a result of transferring its materials to the Senate.  By this time, the County was aware that the Senate planned to deliver the County's ballots and equipment to Cyber Ninjas, CyFir, and Wake TSI—none of whom were accredited by the federal U.S. Elections Assistance Commission to work with elections equipment.  In his letter to Mr. Bennett, Mr. La Rue noted that Senate President Fann had signed an indemnification agreement with Cyber Ninjas, thereby agreeing to indemnify Cyber Ninjas should it be sued or otherwise suffer losses as a result of participating in the "audit."  Mr. La Rue stated that if Senate President Fann would similarly agree to indemnify the County, the County would begin production of its materials to the Senate at the Coliseum on April 21, as Mr. Langhofer had directed.  However, if Senate President Fann would not agree to indemnify the County, the County would produce the subpoenaed materials to the Senate Building at 1700 West Washington Street, which is where the subpoenas had commanded the materials be produced.

#### 1.     Senate President Fann Executed the Indemnification Agreement.

The next day, April 20, 2021, Senate President Fann returned the Covenant of Indemnification, bearing her signature and constituting the Senate's agreement to indemnify the County, to Mr. La Rue.  A true and correct copy of the Covenant of Indemnification is attached as Exhibit D.

#### 2.     Senate President Fann is a Sophisticated Businesswoman who was Represented by Counsel.

Notably, Senate President Fann, in addition to having had a distinguished career as a public servant is also a sophisticated businesswoman.  According to her website, she founded Arizona Highway Safety Specialists, Inc., in 1984, and is the current owner and CEO of the company.  Today, Arizona Highway Safety Specialists employs 30 people and is Arizona's largest installer of roadway guardrails and signage.  *Karen Fann*, "Meet Karen," *available at* https://www.electkarenfann.com/meet-karen.  Additionally, Senate President Fann's website states that, prior to becoming a local business owner, she "gained four years of experience in the legal field[.]"  *Id.*  Senate President Fann also had access to good, competent counsel in Mr. Langhofer of Statecraft PLLC, who represented the Senate at the time she signed the Covenant of Indemnification on the Senate's behalf.

#### 3.     The County Relied on the Indemnification Agreement to its Detriment.

Having received the Senate's agreement to indemnify the County, and relying on that agreement, the County produced the subpoenaed materials to the Senate at the Veterans Memorial Coliseum, as the Senate preferred, instead of at the Senate Building, which is what was commanded by the subpoenas.

Notice of Claim to the Arizona Senate
August 18, 2021
Page 4

> **E.      The County Incurred Expenses as a Result of the County's Election Equipment Being Compromised While in the Control of the Senate.**

The County incurred costs as a result of its election equipment being compromised while in the control of the Senate.  Specifically, and as explained more fully below, the Senate allowed unqualified persons to handle, examine, and manipulate the County's election equipment in ways that compromised it and rendered it unfit to be used in future elections.  As a result, the County has had to replace the subpoenaed election equipment at a cost to the County of **$2,833,220.00**. These costs are directly recoverable from the Senate pursuant to the Covenant of Indemnification.

> **1.      The Senate Allowed Unqualified Persons and Firms to Handle, Examine, and Manipulate the County's Election Equipment.**

After the County produced its election equipment to the Senate, the Senate allowed Cyber Ninjas and other firms to handle, examine, and test the County's election equipment.  None of these firms were accredited by the U.S. Elections Assistance Commission to test or "audit" elections equipment.

As a result, the Arizona Secretary of State sent the County a letter on May 20, 2021, notifying the County that it should not use the election equipment that had been in the Senate's control in any future election.  Exhibit E is a true and correct copy of the Secretary's letter to the County. In her letter, the Secretary wrote that she had "grave concerns regarding the security and integrity of these machines, given that the chain of custody, a critical security tenet, has been compromised and election officials do not know what was done to the machines while under Cyber Ninjas' control."  *Id*. at 1. She further stated that she had "consulted with election technology and security experts, including at the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, regarding the appropriate next steps, and *each unanimously advised that once election officials lose custody and control over voting systems and components, those devices should not be reused in future elections*."  *Id*. at 1-2 (emphasis added).  The Secretary also noted that "once the subpoenaed machines were turned over to the Senate and Cyber Ninjas, it is unclear what, if any, procedures were in place or followed to ensure physical security and proper chain of custody[,]" and referenced "troubling security lapses" that had been observed by her official observers or the news media. *Id*. at 2.  As a result, the Secretary "urg[ed] the County not to re-deploy any of the subpoenaed machines that it turned over to the Senate in any future elections."  *Id*.  The Secretary also requested that, "[i]f the County intends to re-deploy the subpoenaed equipment, over which the County lost custody and control, for use in future Arizona elections, please notify my Office as soon as possible, and no later than July 1, 2021, so that we may properly consider decertification proceedings pursuant to A.R.S. § 16-442 as to the subpoenaed equipment."  *Id*. at 3.

> **2.      The County Obtained Replacement Equipment.**

Because the County's equipment was compromised while in the Senate's control, the equipment was rendered unusable not only in Arizona but in *every* jurisdiction.  The equipment could not be used by anyone without risking the safety and security of the elections.  As the Secretary of State

Notice of Claim to the Arizona Senate
August 18, 2021
Page 5

explained, election and cybersecurity experts—including those at the Department of Homeland Security—agreed that "no methods exist to adequately ensure those machines are safe to use in future elections." *Id.* at 2.

The County leases its election equipment from Dominion Voting Systems.  Having received the Secretary of State's letter, the County contacted Dominion to obtain replacement equipment so that the County could continue to conduct the federal, state, and local elections that it is statutorily obligated to conduct.  The County and Dominion negotiated an amendment to its lease contract.  In exchange for Dominion Voting Systems' agreement to (1) provide the County replacement equipment at the lease rates set in its current contract and (2) not require the County to extend its current contract, as Dominion could have required, the County purchased the compromised machines from Dominion.  A true and correct copy of "Amendment No. 3" to the lease contract, providing the just-described agreement and detailing the equipment and prices, is attached as Exhibit F.  The sum total to purchase the compromised equipment, in order to allow the County to obtain the replacement equipment, was $2,833,220.00.

> **F.      The County Incurred Costs Delivering (and Retrieving) the Subpoenaed Materials to (from) the Senate.**

The County delivered the subpoenaed materials to the Senate at the Coliseum on April 21 and 22, 2021. The County subsequently retrieved some of the materials from the Senate, at the Senate's direction, on April 30, 2021, and the remainder on July 29, 2021.  This caused the County to incur **$165,044.18** in costs, as follows:

- Rental of delivery trucks, **$46,602.00**;
- Reimbursement of travel costs, and payment to, a specialist to disassemble and reassemble certain pieces of the subpoenaed equipment, **$36,729.00**;
- Packaging materials (e.g., bubble wrap, card board boxes, gaylord boxes) for the tabulation equipment, **$1,399.00**;
- Retaining a firm to clone hard drives before turning them over to the Senate, **$15,186.00**;
- Regular and overtime pay for staff to prepare for the transfer of the materials, deliver the materials, and retrieve the materials, **$42,878.18**; and
- Securing emergency backup tabulation equipment in order to be able to conduct jurisdictional elections while the County's equipment was in the custody of the Senate, **$22,250.00**.

> **G.      Additional Costs.**

On July 26, 2021, the Senate served an additional subpoena on the Board of Supervisors.  The County may incur costs as a result of that subpoena, or as a result of other subpoenas that have yet to issue.  Further, additional claims may be discovered as a result of discovery.  The County, therefore, reserves its right to pursue additional costs that may be available but are unknown, or have not yet been paid, at this time.

Notice of Claim to the Arizona Senate
August 18, 2021
Page 6

## II.      LEGAL BASIS OF CLAIMS.

As an initial matter, the legislature has given its statutory consent to be sued.  A.R.S. § 12-820. *See also Lakritz v. Superior Ct. In & For Cty. of Coconino*, 179 Ariz. 598, 602, 880 P.2d 1144, 1148 (Ct. App. 1994) (explaining that "[b]y declaring the public policy of the state to be that public entities are liable for acts and omissions of employees, the legislature provided its consent to be sued in a variety of specific circumstances").  Although generally the legislature is immune from lawsuits related to "acts or omissions of its employees constituting . . . the exercise of a . . . legislative function[,]" A.R.S. § 12-820.01(A), that immunity has no application where, as here, the Senate President executed an indemnity agreement on the Senate's behalf, agreeing that the Senate would indemnify the County.  It also has no application to the recovery of costs incurred by the County complying with the subpoenas, such as the expense of renting delivery trucks.

### A.      The Covenant of Indemnification Requires that the Senate Make the County Whole with Respect to the Compromised Election Equipment.

Senate President Fann executed the Covenant of Indemnification on behalf of the Senate.  It provides in pertinent part that "[t]he Senate shall indemnify the County against any and all expenses it incurs as a result of the Subpoenaed Materials being damaged, altered, *or otherwise compromised* while in the Senate's custody and control, *including without limitation expenses associated with procuring new equipment*[.]"  Exhibit D, *Covenant of Indemnification*, at 1 (emphasis added).

The Covenant of Indemnification is binding upon the Senate.  Judge Thomason recognized that Senate President Fann has power to act for the Senate without the Senate approving such action through a vote or resolution.  *Maricopa County v. Fann*, CV2020-016840 (Minute Entry Ruling, filed March 1, 2021), at 15 (ruling that the subpoenas issued by Senators Fann and Petersen on their own authority were both legal and enforceable, despite not having been authorized by a vote of the Senate).

The County had to replace its subpoenaed election equipment because it was compromised while under the control of the Senate—the very possibility against which Senate President Fann agreed for the Senate to indemnify the County.  Accordingly, the Covenant of Indemnification requires that the Senate pay the County the cost to replace the compromised equipment.

### B.      The Equitable Doctrine of Promissory Estoppel Requires that the Senate Make the County Whole with Respect to the Compromised Elections Equipment.

As explained above, the County relied on the Senate's promise, given through the Covenant of Indemnification.  The County only agreed to deliver the subpoenaed material to the Senate at its preferred location—Veterans Memorial Coliseum—in exchange for the Senate's promise to indemnify the County from harm that might occur to it because it delivered its equipment to the Coliseum.  Although the general rule in Arizona is that promissory estoppel will not lie against the government, *Bd. of Trustees of Marana Elementary Sch., Dist. No. 6 v. Wildermuth*, 16 Ariz. App. 171, 173 (1972), "the government may be estopped . . . when its 'wrongful conduct

Notice of Claim to the Arizona Senate
August 18, 2021
Page 7

threatens to work a serious injustice and ... the public interest would not be unduly damaged.'" *Valencia Energy Co. v. Ariz. Dep't of Revenue*, 191 Ariz. 565, 576, ¶ 33 (1998) (citation omitted).

Here, the Senate's negligence in protecting the County's equipment worked the requisite "serious injustice" that necessitates applying the equitable doctrine of promissory estoppel. Having received the benefit of the County's agreement to deliver the subpoenaed equipment to the Senate's preferred location, it would be inequitable to allow the Senate to escape the requirements of the Covenant of Indemnification—especially when the Senate should have reasonably foreseen that placing the County's equipment in the hands of unqualified and unaccredited "auditors" would threaten the equipment's certification for use in elections.

### C. General Principles of Equity Require that the Senate Make the County Whole with Respect to the Costs It Incurred Complying with the Senate's Subpoenas.

Legislative subpoenas are not governed by the Arizona Rules of Civil Procedure. As a result, the provisions of Rule 45, including the mechanisms whereby parties may obtain their costs for subpoena compliance, do not control.

That does not mean, however, that the County may not recover the costs it incurred delivering the subpoenaed materials to the Senate and then retrieving them from the Senate, as described above in Part I.E. Nor does it mean the County may not recover the costs it incurred replacing the compromised equipment, as described in Part I.F. And it also does not mean that the County may not recover future costs arising from the subpoenas or future subpoenas, as contemplated in part I.G. Rather, general principles of equity require that the Senate reimburse the County for these expenses, which would not have been incurred but for the Senate's subpoenas.

The Arizona Supreme Court described equity as follows:

> Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents. It looks to the substance rather than the form. It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality. And once rightfully possessed of a case it will not relinquish it short of doing complete justice.

*Sanders v. Folsom*, 104 Ariz. 283, 289 (1969). Here, the County suffered **$2,998,264.18** in losses and damages as a result of having to comply with the Senate's subpoenas. This is "an unconscionable result," even though it was "brought about by means which simulate legality[,]" i.e., legislative subpoenas.

Notice of Claim to the Arizona Senate
August 18, 2021
Page 8

      **D.**    **Additional Legal Principles or Claims May Require that the Senate Make the County Whole with Respect to the Costs It Incurred Complying with the Senate's Subpoenas.**

This notice addresses the claims and legal theories that have been identified to date. Additional discovery may reveal additional claims and legal theories that the County has as a result of the subpoenas. The Senate is hereby on notice of their duty to preserve all potentially relevant documents and communications, including electronically-stored-information such emails and text messages.

## III.    SUM CERTAIN SETTLEMENT AMOUNT.

In accordance with A.R.S. § 12-821.01, the County is willing to settle all its claims against the Senate for a sum certain of **two million, eight hundred thirty-three thousand, two hundred twenty dollars ($2,833,220.00),** which is the cost to the County's taxpayers to replace the equipment that was compromised and rendered useless while in the Senate's custody and control. This offer shall remain open for sixty days following the service of this Notice of Claim. *See* A.R.S. § 12-821.01(E).

                       Sincerely,

                       ALLISTER ADEL
                       MARICOPA COUNTY ATTORNEY

                       Thomas P. Liddy
                       Civil Division Chief

# Exhibit A

# ARIZONA SENATE

*Fifty-Fifth Arizona Legislature*
*First Regular Session*

**Senate Judiciary Committee**

SUBPOENA *DUCES TECUM*

TO:     The Maricopa County Board of Supervisors

YOU ARE COMMANDED TO APPEAR at the time, date and place set forth below to provide testimony concerning the items set forth in Exhibit A attached hereto. You must designate one or more of your officers, agents or representatives who consent to testify on your behalf about the same.

**Date & Time:**     January 13, 2021 at 9:00 a.m.

**Place:**     Arizona Senate
Arizona State Capitol
1700 West Washington Street
Phoenix, Arizona 85007

You or your representative must also produce, and permit inspection, testing or sampling of the items set forth in Exhibit A at the date, time and location set forth above.

**FAILURE TO COMPLY WITH THIS SUBPOENA MAY CONSTITUTE CONTEMPT OF THE LEGISLATURE, PURSUANT TO A.R.S. § 41-1153**

Executed this 12th day of January, 2021.

*President Karen Fann*
Karen Fann, President of the Arizona Senate

Warren Petersen, Chairman
Senate Judiciary Committee

# EXHIBIT A

For the November 2020 general election in Maricopa County, Arizona:

1.    The ballot tabulation and processing equipment from each polling place and tabulation center.

2.    The software for the equipment described above and the election management system used.

3.    Hardware and Forensic Images of Election Servers, Desktops, Removable Media (such as thumb drives, USB, memory cards, PCMIA cards, Compact Flash, CD/DVD etc.) used to transfer ballots to tabulation centers from voting locations and to load software/programming.

4.    Election Log Files, in XML, EML, JSON, DVD and XSLT formats, and any other election files and logs for the:
- Tabulators
- Result Pair Resolution
- Result Files
- Provisional Votes
- RTMLogs
- SQL Database Files
- Signature Checking & Sorting Machine

5.    Election Settings
- Rejected Ballots Report by Reason Code

6.    Accounts and Tokens
- Username & Passwords (Applications, Operation Systems)
- Encryption Passwords (Bitlocker, Veracrypt, Etc)
- Security Tokens (iButton, Yubikey, SmartCard, Etc)

7.    Windows Server & Desktop
- Windows software log
- Windows event log and Access logs
- Network logs
- FTP Transfer Points Log
- Usernames & Passwords
- Application specific usernames and passwords (Election Software, Database Access)

8.    Dominion Equipment
- The Administrator & Audit logs for the EMS Election Event Designer (EED) and EMS Results Tally & Reporting (RTR) Client Applications.

9.    Dominion Network

- Identity of each person accessing the domain name Admin.enr.dominionvoting.com and *. dominionvoting.com domains.
- Windows security log of the server that is hosted at Admin.enr.dominionvoting.com
- Internal admin.enr.dominionvoting.com logs

10. Election Systems & Software (ESS) Specific
- The Administrator & Audit logs for the Electionware election management system, Ballot on Demand - BOD printing system, DS200 scanner and tabulator, DS450 scanner and tabulator, DS850 scanner and tabulator, and Voting Systems (ExpressPoll, ExpressVote, ExpressVote XL).

11. Voter rolls
- Database of voter rolls
- Forensic image of computers/devices used to work with voter rolls
- Copy of media device used to transfer voter rolls

12. Daily and cumulative voter records for those who voted, with sufficient information to determine for each voter:
- Name and voter registration address;
- Mailing address
- Date of birth;
- Voter ID number;
- Manner of voting (*e.g.*, early by mail, early in-person, in-person on Election Day)
- Voting location (if applicable)
- Date voted
- Political party affiliation (if applicable);
- Early ballot request date (if applicable)
- Early ballot sent date (if applicable)
- Voted early ballot return or receipt date (if applicable)
- Ballot canceled date (if applicable)
- Image of ballot envelope or pollbook entry in .RAW, HTML, XHTML, SVG, or other format

13. Access or control of ALL routers, tabulators or combinations thereof, used in connection with the administration of the 2020 election, and the public IP of the router.

14. Voter Rally Paper Rolls, Test Ballots, Ballot Test Matrix.

15. Access to all original, paper ballots (including but not limited to early ballots, Election Day ballots, and provisional ballots).

16. Each original, unique native electronic image of each early ballot cast, with the original associated metadata (multiple ballot images **may not** be combined into a single file and no metadata associated the original electronic ballot image shall be deleted, removed or altered).

17.     Each image of each early ballot cast in (a) TIFF format, (b) PDF format, and (c) JPG format (multiple ballot images **may not** be combined into a single file).

18.     From the Dominion electronic election management system, each of the following must be provided as (a) an XML file, (b) a JSON file, and (c) a TXT file:

- Dominion Electronic Cast Vote Record
- Ballot Images – Raw Images
- Ballot Images – Ballot Audit and Review
- Early Ballot Report
- Provisional Ballot Report
- Conditional Voter Registration Ballot Report
- Cast Vote Record (raw data) – JSON
- ImageCast Central Logs
- Ballot Scanning/Tabulation Machine Logs
- Ballot Scanning/Tabulating Machine Tape

Any electronically stored information contained in this Exhibit A shall be electronically uploaded to one or more computer drives supplied by the Senate Judiciary Committee or its agents.

# ARIZONA SENATE

*Fifty-Fifth Arizona Legislature*
*First Regular Session*

### Senate Judiciary Committee

SUBPOENA *DUCES TECUM*

TO:    Stephen Richer, Maricopa County Recorder

YOU ARE COMMANDED TO APPEAR at the time, date and place set forth below to provide testimony concerning the items set forth in Exhibit A attached hereto. You must designate one or more of your officers, agents or representatives who consent to testify on your behalf about the same.

**Date & Time:**        January 13, 2021 at 9:00 a.m.

**Place:**        Arizona Senate
Arizona State Capitol
1700 West Washington Street
Phoenix, Arizona 85007

You or your representative must also produce, and permit inspection, testing or sampling of the items set forth in Exhibit A at the date, time and location set forth above.

**FAILURE TO COMPLY WITH THIS SUBPOENA MAY CONSTITUTE CONTEMPT OF THE LEGISLATURE, PURSUANT TO A.R.S. § 41-1153**

Executed this 12th day of January, 2021.

*President Karen Fann*
Karen Fann, President of the Arizona Senate

Warren Petersen, Chairman
Senate Judiciary Committee

# EXHIBIT A

For the November 2020 general election in Maricopa County, Arizona:

1.      The ballot tabulation and processing equipment from each polling place and tabulation center.

2.      The software for the equipment described above and the election management system used.

3.      Hardware and Forensic Images of Election Servers, Desktops, Removable Media (such as thumb drives, USB, memory cards, PCMIA cards, Compact Flash, CD/DVD etc.) used to transfer ballots to tabulation centers from voting locations and to load software/programming.

4.      Election Log Files, in XML, EML, JSON, DVD and XSLT formats, and any other election files and logs for the:
- Tabulators
- Result Pair Resolution
- Result Files
- Provisional Votes
- RTMLogs
- SQL Database Files
- Signature Checking & Sorting Machine

5.      Election Settings
- Rejected Ballots Report by Reason Code

6.      Accounts and Tokens
- Username & Passwords (Applications, Operation Systems)
- Encryption Passwords (Bitlocker, Veracrypt, Etc)
- Security Tokens (iButton, Yubikey, SmartCard, Etc)

7.      Windows Server & Desktop
- Windows software log
- Windows event log and Access logs
- Network logs
- FTP Transfer Points Log
- Usernames & Passwords
- Application specific usernames and passwords (Election Software, Database Access)

8.      Dominion Equipment
- The Administrator & Audit logs for the EMS Election Event Designer (EED) and EMS Results Tally & Reporting (RTR) Client Applications.

9.      Dominion Network

- Identity of each person accessing the domain name Admin.enr.dominionvoting.com and *. dominionvoting.com domains.
- Windows security log of the server that is hosted at Admin.enr.dominionvoting.com
- Internal admin.enr.dominionvoting.com logs

10. Election Systems & Software (ESS) Specific
- The Administrator & Audit logs for the Electionware election management system, Ballot on Demand - BOD printing system, DS200 scanner and tabulator, DS450 scanner and tabulator, DS850 scanner and tabulator, and Voting Systems (ExpressPoll, ExpressVote, ExpressVote XL).

11. Voter rolls
- Database of voter rolls
- Forensic image of computers/devices used to work with voter rolls
- Copy of media device used to transfer voter rolls

12. Daily and cumulative voter records for those who voted, with sufficient information to determine for each voter:
- Name and voter registration address;
- Mailing address
- Date of birth;
- Voter ID number;
- Manner of voting (*e.g.*, early by mail, early in-person, in-person on Election Day)
- Voting location (if applicable)
- Date voted
- Political party affiliation (if applicable);
- Early ballot request date (if applicable)
- Early ballot sent date (if applicable)
- Voted early ballot return or receipt date (if applicable)
- Ballot canceled date (if applicable)
- Image of ballot envelope or pollbook entry in .RAW, HTML, XHTML, SVG, or other format

13. Access or control of ALL routers, tabulators or combinations thereof, used in connection with the administration of the 2020 election, and the public IP of the router.

14. Voter Rally Paper Rolls, Test Ballots, Ballot Test Matrix.

15. Access to all original, paper ballots (including but not limited to early ballots, Election Day ballots, and provisional ballots).

16. Each original, unique native electronic image of each early ballot cast, with the original associated metadata (multiple ballot images **may not** be combined into a single file and no metadata associated the original electronic ballot image shall be deleted, removed or altered).

17.     Each image of each early ballot cast in (a) TIFF format, (b) PDF format, and (c) JPG format (multiple ballot images **may not** be combined into a single file).

18.     From the Dominion electronic election management system, each of the following must be provided as (a) an XML file, (b) a JSON file, and (c) a TXT file:

- Dominion Electronic Cast Vote Record
- Ballot Images – Raw Images
- Ballot Images – Ballot Audit and Review
- Early Ballot Report
- Provisional Ballot Report
- Conditional Voter Registration Ballot Report
- Cast Vote Record (raw data) – JSON
- ImageCast Central Logs
- Ballot Scanning/Tabulation Machine Logs
- Ballot Scanning/Tabulating Machine Tape

Any electronically stored information contained in this Exhibit A shall be electronically uploaded to one or more computer drives supplied by the Senate Judiciary Committee or its agents.

# ARIZONA SENATE

*Fifty-Fifth Arizona Legislature*
*First Regular Session*

### Senate Judiciary Committee

SUBPOENA *DUCES TECUM*

TO:   John M. Allen, Maricopa County Treasurer

YOU ARE COMMANDED TO APPEAR at the time, date and place set forth below to provide testimony concerning the items set forth in Exhibit A attached hereto.  You must designate one or more of your officers, agents or representatives who consent to testify on your behalf about the same.

**Date & Time:**   January 13, 2021 at 9:00 a.m.

**Place:**   Arizona Senate
Arizona State Capitol
1700 West Washington Street
Phoenix, Arizona 85007

You or your representative must also produce, and permit inspection, testing or sampling of the items set forth in Exhibit A at the date, time and location set forth above.

**FAILURE TO COMPLY WITH THIS SUBPOENA MAY CONSTITUTE CONTEMPT OF THE LEGISLATURE, PURSUANT TO A.R.S. § 41-1153**

Executed this 12th day of January, 2021.

*President Karen Fann*
Karen Fann, President of the Arizona Senate

Warren Petersen, Chairman
Senate Judiciary Committee

# EXHIBIT A

For the November 2020 general election in Maricopa County, Arizona:

      1.     All ballots (including but not limited to early ballots, Election Day ballots, and provisional ballots).

      2.     Each original, unique native electronic image of each early ballot cast, with the original associated metadata (multiple ballot images **may not** be combined into a single file and no metadata associated the original electronic ballot image shall be deleted, removed or altered).

      3.     Each image of each early ballot cast in (a) TIFF format, (b) PDF format, and (c) JPG format (multiple ballot images **may not** be combined into a single file).

Any electronically stored information contained in this Exhibit A shall be electronically uploaded to one or more computer drives supplied by the Senate Judiciary Committee or its agents.

# Exhibit B

222 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, AZ 85003
WWW.MARICOPACOUNTYATTORNEY.ORG

PH   (602) 506-8541
FAX   (602) 506-8567



# Maricopa County Attorney
## ALLISTER ADEL

January 15, 2021

Kory Langhofer, Esq.
Tom Basile, Esq.
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003

**RE:** **Your Subpoena *Duces Tecum*, January 12, 2021 (Responses, Objections, and Requests for Clarification)**

Kory and Tom:

The Maricopa County Attorney represents the Board of Supervisors, the Recorder, and the Treasurer. Steve Tully, of Hinshaw & Culbertson, LLP, represents the Board of Supervisors. Together, we write to provide our clients' initial responses to your clients' subpoenas *duces tecum* (collectively, the "Subpoenas"), which you served on January 12, 2021, on behalf of your clients, Senate President Fann and Senator Peterson.

Before turning to the substance of the Subpoenas, we note our clients' general objections to the Subpoenas. Despite these objections, which are not being waived, our clients will be producing records in response to the demands of the Senators.

## <u>GENERAL OBJECTIONS</u>

### A.     Lack of Reasonable Notice in Violation of A.R.S. § 41-1154.

Our clients object to the lack of "reasonable notice" provided by the Subpoenas, which required production of multiple-millions of records a mere *seventeen hours* after being served.

The Senators served their subpoena *duces tecum* on the Board of Supervisors at 3:49 p.m. on January 12, 2021. A similar subpoena *duces tecum* was served on the Maricopa County Recorder and Maricopa County Treasurer, also in the afternoon of January 12, 2021. The Subpoenas commanded our clients to appear the next morning at 9 a.m. to provide testimony about multiple-millions of records sought by the Subpoenas. They also commanded our clients to produce those multiple-millions of records the next morning at 9 a.m.—less than seventeen hours from when the Subpoenas were served.

Pursuant to A.R.S. § 41-1154, a subpoena *duces tecum* must provide "reasonable notice" to the person commanded to produce documents in order to be enforceable. The law does not state how much notice is necessary to satisfy the "reasonable notice" requirement. Regardless, we are confident that requiring the production of multiple-millions of records, over the course of one night—when government offices are closed—is not reasonable.

### B.   Lack of Scheduled Meeting in Violation of A.R.S. § 41-1151.

Additionally, our clients object to the Subpoenas commanding our clients' attendance at a hearing that was not scheduled, and which was never intended to be scheduled.

Pursuant to A.R.S. § 41-1151, legislative subpoenas "may be issued by the presiding officer of either house or the chairman of any committee before whom the attendance of a witness is desired." The Subpoenas commanded our clients to appear to provide testimony on a particular date and at a particular time. Our clients appeared. Yet, as just stated, no hearing was scheduled, and no testimony was requested and therefore the subpoenas were not issued in compliance with the law.

### C.   Our Clients will provide documents to the Legislature.

Without waiving the foregoing objections, and reserving our right to make further objections, our clients will, as they would have done without a subpoena, voluntarily produce records sought in the Subpoenas. Our clients do this because they respect the Legislature and want to help it accomplish its important legislative purpose of crafting laws to govern Arizona, including its elections. Our clients look forward to partnering with President Fann and Senator Peterson and  providing them as many of the requested records as is reasonable and legal, just as our clients have voluntarily done, and are doing, for the House of Representatives without the need for any subpoenas.

 Our clients believe it is important to note that the House has not served a subpoena on our clients, but has worked with the County to get answers to its questions and obtain  documents related to the November 3, 2020, general election that it deems informative. Our clients tried to do the same with the Senate. When the Senate Judiciary Committee asked the Board of Supervisors to provide testimony concerning the general election, Supervisor Clint Hickman voluntarily appeared, as did the Board of Supervisor's Election Director, Scott Jarrett. Together, they testified voluntarily on December 14, 2020, for nearly six hours concerning the November 3, 2020, election.

The County looks forward to a resumption of mutual cooperation and respect. Accordingly, in a good faith effort to provide the Arizona Senate with documents relevant to Elections, a topic in which the Arizona House and Senate have express—and, universally acknowledged—constitutional authority, Maricopa County, duly empowered by the State of Arizona to administer elections, produces the following records identified in the next section.

Furthermore, the County will continue to work with the Senate President Fann and Committee Chairman Peterson to provide additional documents and information they require to fulfill their constitutional duty to consider, propose and pass, as it deems necessary, new and/ or amended election legislation.

Letter to Kory Langhofer
January 15, 2021
Page 3 of 7

## <u>RESPONSES AND REQUESTS FOR CLARIFICATION</u>

Without waiving any of the foregoing general objections, and reserving our right to make further objections, our clients hereby respond to the document demands.  They anticipate providing additional documents as they identify those records that are responsive to the requests and confirm they can be produced without violating state or federal election or confidentiality laws or prevent them from performing their ongoing elections duties.

Our clients also ask herein for clarification regarding certain requested items and records.

Our clients also herein identify certain items sought by the Subpoenas which either do not exist or which our clients do not possess.

Additionally, our clients today provide additional documents that they believe may be helpful to the Senate.  These documents were not requested by the Subpoenas, but we encourage the Senate President, Senator Peterson, and the Judiciary Committee to review them.

Again, we hope this disclosure is the beginning of a dialog with the Senate.  We anticipate supplementing our responses, and may also identify additional items that either do not exist or are not within our clients' possession. We also invite the Senate to request any additional information it may find of assistance as it goes through its election analysis.

**I.     The Subpoena to the Board of Supervisors.**

     **A.     Request No. 4.**

          1.     The Board of Supervisors today  produces:

               a.     Election Log Files for the Tabulators

               b.     Election Log Files for the Result Files

               c.     Provisional Votes Files (included in the Election Log Files for the Tabulators)

          2     The Board of Supervisors requests that you clarify the meaning of:

               a.     "Signature Checking & Sorting Machine"

          3.     The Board of Supervisors states that it has none of the following requested items:

               a.     "RTMLogs"

               b.     "Result Pair Resolution"

Letter to Kory Langhofer
January 15, 2021
Page 4 of 7

**B.      Request No. 5.**

    1.      The Board of Supervisors today  produces:

        a.      Rejected Ballots Report by Reason Code (included in the Election Log Files for the Tabulators,  produced in response to Request No. 4)

**C.      Request No. 7.**

    1.      The Board of Supervisors today  produces:

        a.      Windows event log and Access logs

    2.      The Board of Supervisors requests that you clarify the meaning of:

        a.      "FTP Transfer Points Log"

        b.      "Windows software log"

        c.      "Network logs"

**D.      Request No. 8.**

    1.      The Board of Supervisors today  produces:

        a.      The Administrator & Audit logs for the EMS Election Event Designer (EED) and EMS Results Tally & Reporting (RTR) Client Applications.

**E.      Request No. 9.**

    1.      The Board of Supervisors requests that you clarify the meaning of:

        a.      "the domain name Admin.enr.dominionvoting.com and "*.dominionvoting.com domains."  The Board of Supervisors, their Election Department Staff, and their contacts at Dominion Voting Systems are not familiar with those URLs.

**F.      Request No. 10.**

    1.      The Board of Supervisors states that it has none of the items requested in Request No. 10.  These items relate to Election Systems & Software (ESS) voting systems. The County does not use ESS voting systems.

Letter to Kory Langhofer
January 15, 2021
Page 5 of 7

**G.**    **Request No. 11.**

1.    The items requested in Request No. 11 all concern the Voter Registration Database. The Board of Supervisors states that none of the requested items are within the custody and control of the Board of Supervisors.

**H.**    **Request No. 12.**

1.    The items requested in Request No. 12 all concern the Voter Registration Database. The Board of Supervisors states that none of the requested items are within the custody and control of the Board of Supervisors.

**I.**    **Request No. 14.**

1.    The Board of Supervisors requests that you clarify the meaning of "Voter Rally Paper Rolls" and "Ballot Test Matrix."

**J.**    **Request No. 18.**

1.    The Board of Supervisors today  produces:

   a.    Early Ballot Report (included in the response to the requested production in Item No. 4, "Results File")

   b.    Provisional Ballot Report (included in the response to the requested production in Item No. 4, "Results File")

   c.    ImageCast Central Logs (included in the response to the requested production in Item No. 8)

   d.    Ballot Scanning/Tabulation Machine Logs (included in the response to the requested production in Item No. 4)

2.    The Board of Supervisors requests that you provide clarification as follows:

   a.    What are "Ballot Images – Raw Images" and "Ballot Images – Ballot Audit and Review," and how are these items different or distinguishable from the items requested in Request No. 16 and Request No. 17?

Letter to Kory Langhofer
January 15, 2021
Page 6 of 7

## II.      The Subpoena to the Recorder.

### A.      Requests Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, and 18.

1.      The Recorder states that, to the extent any of the items requested in the above-identified Requests exist, they are not in the custody or control of the Recorder.

### B.      Request No. 11.

1.      The Recorder today voluntarily produces all the items requested in this Request, subject to lawfully-required redactions.  The Recorder respectfully reminds the Senators that these records are protected by law from disclosure for purposes not authorized by law, and that anyone who allows these records to be disclosed for such purposes is guilty of a class six felony.  A.R.S. § 16-168(F).  The Recorder asks that should it receive a public records request for these documents, the Senate insure that the release is in accordance with law.

### C.      Request No. 12.

1.      The Recorder today voluntarily produces all the items requested in this Request, subject to lawfully-required redactions.  The Recorder respectfully reminds the Senate that these records are protected by law from disclosure for purposes not authorized by law, and that anyone who allows these records to be disclosed for such purposes is guilty of a class six felony.  A.R.S. § 16-168(F).  The Recorder asks that should it receive a public records request for these documents, the Senate insure that the release is in accordance with law.

## III.      The Subpoena to the Treasurer.

A.      The Treasurer respectfully notifies President Fann and Senator Peterson  that none of the items requested from him in their subpoena were within his custody or control on January 13, 2021, when the Subpoena commanded him to appear and produce these documents. Further, none of the items requested have ever been within his custody or control, and are not in his custody or control today.  Accordingly, the Treasurer has nothing to produce in response to the subpoena..

## IV.      Additional Documents Voluntarily Provided by the County.

A. Final General Election Manual – Poll worker Training (2020)
B. Final November 2020 General Election Day and Emergency Voting Plan
C. Hands on Activity Outline.
D. Tabulator Aid (09/14/2020)
E. Certified letter from Secretary of State re pre-election L&A
F. Certified letter from Secretary of State re post-election L&A

Case 2:22-cv-00677-JJT   Document 92-1   Filed 07/28/22   Page 28 of 45

G. Certification letter from Secretary of State, accepting recommendation from the Certification Committee that Dominion tabulators with electronic adjudication capabilities are certified for use in Arizona elections.
H. Arizona Secretary of State List of Voting Equipment by County
I. Arizona Secretary of State Certified Vote Tabulating Equipment List
J. Arizona Secretary of State Certification Advisory Committee Minutes
K. Combined correspondence between Attorney General's Office and Maricopa County pertaining to Sharpie Markers (3 letters) (Nov. 2020)
L. Image Cast Evolution Internal Memorandum regarding approved pens dated 06/04/2015
M. Maricopa County Adjudication Quick Reference Guide
N. Electronic Adjudication Board Procedures
O. Maricopa County General Election – November 3, 2020 Hand Count/Audit Report.
P. Signature Verification Training Materials.

///

We, the undersigned counsel and our team of attorneys, as well as our clients, look forward to continuing to partner with the Senate as well as the House in their pursuit of continuing improvement of Arizona's election laws.  We will be in communication with you in the near future about the remaining requests in the subpoenas.

Sincerely,

ALLISTER ADEL                                    HINSHAW & CULBERTSON LLP
MARICOPA COUNTY ATTORNEY

/s/Thomas P. Liddy                               /s/Stephen W. Tully
_____                        _____

Thomas P. Liddy, Civil Division Chief            Stephen W. Tully
*Attorneys for the Board of Supervisors,*        *Attorneys for the Board of Supervisors*
*the Recorder, and the Treasurer*

Cc:     The Honorable Rusty Bowers
        Speaker of the Arizona House of Representatives

# Exhibit C

222 NORTH CENTRAL AVENUE, SUITE 1100
PHOENIX, AZ 85003
WWW.MARICOPACOUNTYATTORNEY.ORG

TEL   (602) 506-8541
FAX   (602) 506-8567



# Maricopa County Attorney
## ALLISTER ADEL

January 21, 2021

Kory Langhofer, Esq.
Tom Basile, Esq.
STATECRAFT PLLC
649 North Fourth Avenue, First Floor
Phoenix, Arizona 85003

**RE:    Cast Vote Record**

Kory and Tom:

Senate President Fann has indicated that the Senate can benefit from a review of the following items in their effort to evaluate whether new election related litigation may be needed.  Please find enclosed, the Cast Vote Record, containing raw data, in JSON format.  The County is continuing to gather other materials that may be of similar use to the Senate in its ongoing effort to provide needed relevant documents and materials to the House and Senate.

Sincerely,

ALLISTER ADEL                          HINSHAW & CULBERTSON LLP
MARICOPA COUNTY ATTORNEY

/s/Thomas P. Liddy                     /s/Stephen W. Tully
_____              _____

Thomas P. Liddy, Civil Division Chief  Stephen W. Tully
*Attorneys for the Board of Supervisors,*  *Attorneys for the Board of Supervisors*
*the Recorder, and the Treasurer*

Cc:    The Honorable Rusty Bowers
       Speaker of the Arizona House of Representatives

# Exhibit D

## COVENANT OF INDEMNIFICATION

This covenant of indemnification is provided by the Arizona Senate (the "Senate") to Maricopa County (the "County"), a political subdivision of the State of Arizona, in exchange for the County's delivery of certain materials subpoenaed by the Senate to the Senate's preferred address instead of the address commanded by the subpoenas.

WHEREAS, the Senate has subpoenaed materials belonging to or in the possession of the County (the "Subpoenaed Materials"); and

WHEREAS, the Senate's subpoenas command production of the Subpoenaed Materials at the Senate Building, located at 1700 W. Washington Avenue in Phoenix; and

WHEREAS, the Senate, through counsel, has requested that the County instead produce the Subpoenaed Materials at the Arizona Veterans Memorial Coliseum, located at 1826 West McDowell Road in Phoenix ("Veterans Memorial Coliseum");

NOW THEREFORE, in consideration of the County delivering the Subpoenaed Materials to Veterans Memorial Coliseum, the Senate agrees to indemnify the County as follows:

## 1.      INDEMNIFICATION

**1.1      Indemnification of the County against third-party claims.**  The Senate shall defend, indemnify and hold harmless the County from any Damages actually incurred or finally adjudicated as to any third-party claim, action or allegation asserting that any action undertaken by the County in connection with the County's delivery of the Subpoenaed Materials to the Senate violates law or the rights of a third party under any theory of law, including without limitation claims or allegations related to the analysis of any third party's systems or processes or to the decryption, analysis of, collection, transfer, or use of the Subpoenaed Materials or data therefrom by the Senate or its Contractors, including without limitation Cyber Ninjas or any subcontractor employed by Cyber Ninjas.

**1.2      Indemnification of the County against expenses the County incurs as a result of damage and/or alteration of the Subpoenaed Materials by the Senate or its agents.**  The Senate shall indemnify the County against any and all expenses it incurs as a result of the Subpoenaed Materials being damaged, altered, or otherwise compromised while in the Senate's custody and control, including without limitation expenses associated with procuring new equipment, certifying any such new equipment for use for elections in Arizona, and re-certifying its current equipment re-certified for use for elections in Arizona.

This Covenant of Indemnification shall be enforceable against the Senate by the County upon the County delivering the Subpoenaed Materials to Veterans Memorial Coliseum, as requested by the Senate.

Accepted and entered into on this __20th__ of April, 2021, by:

The Arizona Senate

By: _Karen Fann_, President _____

Title: _Arizona State Senate President_____

# Exhibit E



**KATIE HOBBS**
SECRETARY OF STATE

May 20, 2021

**VIA EMAIL ONLY**

Maricopa County Board of Supervisors
Chairman Jack Sellers, District 1
Jack.Sellers@maricopa.gov
Supervisor Steve Chucri, District 2
Steve.Chucri@maricopa.gov
Supervisor Bill Gates, District 3
Bill.Gates@maricopa.gov
Supervisor Clint Hickman, District 4
Clint.Hickman@maricopa.gov
Supervisor Steve Gallardo, District 5
Steve.Gallardo@maricopa.gov

### RE: SUBPOENAED ELECTION EQUIPMENT

Dear Supervisors,

I am writing to express my concerns about Maricopa County's election equipment that was turned over to Senate President Karen Fann and Senator Warren Petersen and their agent, Cyber Ninjas, pursuant to the January 12, 2021 subpoena, including components of the certified Dominion Democracy Suite 5.5B voting system. I understand Cyber Ninjas has begun returning the election equipment to the County. I have grave concerns regarding the security and integrity of these machines, given that the chain of custody, a critical security tenet, has been compromised and election officials do not know what was done to the machines while under Cyber Ninjas' control.

Indeed, such loss of custody constitutes a cyber incident to critical infrastructure—an event that could jeopardize the confidentiality, integrity, or availability of digital information or information systems.[1] Therefore, my Office consulted with election technology and security experts, including at the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, regarding the appropriate next steps, and each unanimously

---

[1] *See* Dep't of Homeland Security, Cyber Incident Reporting, *available at* https://www.dhs.gov/sites/default/files/publications/Cyber%20Incident%20Reporting%20United%20Message.pdf.

advised that once election officials lose custody and control over voting systems and components, those devices should not be reused in future elections. Rather, decommissioning and replacing those devices is the safest option as no methods exist to adequately ensure those machines are safe to use in future elections. As such, my Office is urging the County not to re-deploy any of the subpoenaed machines that it turned over to the Senate in any future elections. Instead, the County should acquire new machines to ensure secure and accurate elections in Maricopa County going forward.

A fundamental requirement to ensure the security and integrity of election equipment includes maintaining strict access limitations and a clear chain of custody to prevent both intentional and inadvertent tampering. Arizona's election procedures enumerate detailed requirements to protect voting equipment from these threats.[2] Federal election standards also set best practices, which require voting equipment to remain securely stored in facilities that prevent unauthorized access.[3] As you know, the Maricopa County Elections Department upholds strict chain of custody procedures for its voting equipment by securing equipment in limited-access facilities, logging access to the equipment, and air-gapping equipment at all times.

However, once the subpoenaed machines were turned over to the Senate and Cyber Ninjas, it is unclear what, if any, procedures were in place or followed to ensure physical security and proper chain of custody. Indeed, our expert observers, as well as multiple news reports, have noted troubling security lapses. And Cyber Ninjas has failed to provide full transparency into what they did with the equipment. No election official or expert observer designated by my Office was allowed to remain with the equipment for the duration of the Cyber Ninjas' processing and handling of the equipment, nor did Cyber Ninjas provide a continuous, clearly visible livestream of the area where voting equipment was stored and handled. The lack of physical security and transparency means we cannot be certain who accessed the voting equipment and what might have been done to them.

Unfortunately, after a loss of physical custody and control, no comprehensive methods exist to fully rehabilitate the compromised equipment or provide adequate assurance that they remain safe to use. While the machines could be put through an intensive and costly forensic examination by an accredited, national forensics laboratory, even after such forensic examination, machines are generally not recommissioned given that the forensic analysis cannot be guaranteed to locate all potential problems.

Considering the potential impact of decommissioning the subpoenaed equipment, including on taxpayer dollars and County operations, my Office did not reach this decision lightly. However, given the circumstances and ongoing concerns regarding the handling and security of the equipment, I believe the County can agree that this is the only path forward to ensure secure and accurate elections in Maricopa County in the future.

To be clear, this letter pertains only to the specific pieces of subpoenaed election equipment that the county turned over to the Senate and its contractors, and not to the underlying

---

[2] Elections Procedures Manual, Chapter 4, Section III, at pages 95 - 98.
[3] *See, e.g.*, U.S. Election Assistance Commission, Election Management Guidelines, Chap. 3, *available at* https://www.eac.gov/sites/default/files/eac_assets/1/6/260.pdf.

Dominion voting system, which remains certified for use in Arizona, nor any other election equipment that the County did not turn over to the Senate and its contractors.

If the County intends to re-deploy the subpoenaed equipment, over which the County lost custody and control, for use in future Arizona elections, please notify my Office as soon as possible, and no later than July 1, 2021, so that we may properly consider decertification proceedings pursuant to A.R.S. § 16-442 as to the subpoenaed equipment.

Thank you for your prompt attention to this important matter.

Sincerely,

Katie Hobbs
Arizona Secretary of State

cc:

Stephen Richer, Maricopa County Recorder
sricher@risc.maricopa.gov

Scott Jarrett, Director of Election Day and Emergency Voting,
Maricopa County Elections Department
sjarrett@risc.maricopa.gov

# Exhibit F

## AMENDMENT No. 3
To

## SERIAL 190265-RFP ELECTIONS TABULATION SYSTEM
Between

## DOMINION VOTING SYSTEMS, INC.
&
## MARICOPA COUNTY, ARIZONA

WHEREAS, Maricopa County, Arizona ("County") and Dominion Voting Systems, Inc. ("Contractor") have entered into a Contract for the purchase of Elections Tabulation System dated June 26, 2019 ("Agreement") County Contract No: 190265-RFP.

WHEREAS, County and Dominion Voting Systems, Inc. have agreed to further modify the Agreement by changing certain terms and conditions;

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, receipt of which is hereby acknowledged, the parties hereto agree as follows:

1. On May 20, 2021, Secretary of State Katie Hobbs wrote a letter to the Maricopa County Board of Supervisors (Exhibit 1), stating the following in paragraph two of the letter:

   "Therefore, my Office consulted with election technology and security experts, including at the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, regarding the appropriate next steps, and each unanimously advised that once election officials lose custody and control over voting systems and components, those devices should not be reused in future elections. Rather, decommissioning and replacing those devices is the safest option as no methods exist to adequately ensure those machines are safe to use in future elections. As such, my Office is urging the County not to re-deploy any of the subpoenaed machines that it turned over to the Senate in any future elections. Instead, the County should acquire new machines to ensure secure and accurate elections in Maricopa County going forward."

2. Following the Secretary's guidance, the Maricopa County Board of Supervisors has chosen to amend the Agreement by purchasing from Contractor all voting system components provided to the Arizona State Senate pursuant to the January 12, 2021 subpoena (the "Subpoenaed Equipment"). A list of the Subpoenaed Equipment is detailed in Schedule A. The "Subpoenaed Equipment" will no longer be used by the County and the County is authorizing the Contractor to remove, inspect and properly dispose of the "Subpoenaed Equipment." The pricing and payment information related to the purchase are outlined in Schedule A.

SERIAL 190265-RFP

3. The County will acquire new voting system components to replace the Subpoenaed Equipment pursuant to the existing lease terms of the Agreement. The new equipment description, quantities and delivery information are outlined in Schedule A. The "Payment Term" of "Net 30 Days" and the "Unit Lease Price per Month" payment/pricing schedule for the new equipment shall remain as specified in Exhibit A to the Agreement.

4. **ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

**IN WITNESS WHEREOF**, this Contract Amendment is executed on the date set forth below when executed by Maricopa County Office of Procurement Services.

**DOMINION VOTING SYSTEMS, INC.**

_____
Authorized Signature

John Poulos, President & CEO
_____
Printed Name and Title

1590 Wynkoop St, Denver, CO 80202
_____
Address

8/10/2021
_____
Date

**MARICOPA COUNTY:**

_____          8/10/2021
Jack Sellers, Chairman                             Date
Maricopa County Board of Supervisors

Approved as to form on August 6, 2021 by the Maricopa County Attorneys Office:

_____          August 6, 2021
Joseph La Rue, Deputy County Attorney          Date

Maricopa County, Arizona                          County Contract No: 190265-RFP
Amendment No. 3                                    Page 2 of 7

## SCHEDULE A

1.  **Pricing and Itemized Summary** – Description, quantities and pricing for the purchase of the Subpoenaed Equipment and related services.  All pricing in U.S. Dollars

| Product/Service | Qty | Unit Price | Extension |
|---|---|---|---|
| **Central Scanning: Absentee / Vote By Mail Hardware** | | | |
| ImageCast Central Kit - G1130 | 5 | $25,000.00 | $125,000.00 |
| ImageCast Central Kit - HSS | 4 | $200,000.00 | $800,000.00 |
| | | | |
| | | **Sub-Total** | **$925,000.00** |
| **In-Person Voting: Polling Location Hardware** | | | |
| ImageCast Precinct 2 Tabulator | 385 | $4,500.00 | $1,732,500.00 |
| | | **Sub-Total** | **$1,732,500.00** |
| **Election Management Hardware** | | | |
| EMS Standard Server Kit (R630/WS2012/SS2016) | 2 | $17,000.00 | $34,000.00 |
| EMS Client Workstation Kit (3440 XE) | 4 | $1,700.00 | $6,800.00 |
| EMS Adjudication Workstation Kit (3431) | 20 | $1,700.00 | $34,000.00 |
| | | **Sub-Total** | **$74,800.00** |
| | | | **$75,000.00** |
| **Estimated Shipping** | n/a | | **$25,920.00** |
| **Purchase Total** | | | **$2,833,220.00** |

2.  **Payment Schedule** - Contractor shall provide invoices to the County as described below.  The County shall pay invoices in a timely manner and no later than thirty (30) calendar days from receipt of a Contractor invoice.

| ID | Payment Invoice Issued | Payment Amount |
|---|---|---|
| 1 | Amendment No. 3 Signing | $2,833,220.00 |

3. **Itemized Summary** – Description and quantities for new replacement leased system equipment.

| Product/Service | Qty |
|---|---|
| **Central Scanning: Absentee / Vote By Mail Hardware** | |
| ImageCast Central Kit - G1130 | 5 |
| ImageCast Central Kit - HSS | 4 |
| **In-Person Voting: Polling Location Hardware** | |
| ImageCast Precinct 2 Tabulator | 385 |
| **Election Management Hardware** | |
| EMS Standard Server Kit (R630/WS2012/SS2016) | 2 |
| EMS Client Workstation Kit (3440 XE) | 4 |
| EMS Adjudication Workstation Kit (3431) | 20 |

4. **Delivery Details.**

TBD

# EXHIBIT 1



## KATIE HOBBS
SECRETARY OF STATE

May 20, 2021

VIA EMAIL ONLY

Maricopa County Board of Supervisors
Chairman Jack Sellers, District 1
Jack.Sellers@maricopa.gov
Supervisor Steve Chucri, District 2
Steve.Chucri@maricopa.gov
Supervisor Bill Gates, District 3
Bill.Gates@maricopa.gov
Supervisor Clint Hickman, District 4
Clint.Hickman@maricopa.gov
Supervisor Steve Gallardo, District 5
Steve.Gallardo@maricopa.gov

RE: SUBPOENAED ELECTION EQUIPMENT

Dear Supervisors,

I am writing to express my concerns about Maricopa County's election equipment that was turned over to Senate President Karen Fann and Senator Warren Petersen and their agent, Cyber Ninjas, pursuant to the January 12, 2021 subpoena, including components of the certified Dominion Democracy Suite 5.5B voting system. I understand Cyber Ninjas has begun returning the election equipment to the County. I have grave concerns regarding the security and integrity of these machines, given that the chain of custody, a critical security tenet, has been compromised and election officials do not know what was done to the machines while under Cyber Ninjas' control.

Indeed, such loss of custody constitutes a cyber incident to critical infrastructure—an event that could jeopardize the confidentiality, integrity, or availability of digital information or information systems.[1] Therefore, my Office consulted with election technology and security experts, including at the Department of Homeland Security's Cybersecurity and Infrastructure Security Agency, regarding the appropriate next steps, and each unanimously

---

[1] *See* Dep't of Homeland Security, Cyber Incident Reporting, *available at*
https://www.dhs.gov/sites/default/files/publications/Cyber%20Incident%20Reporting%20United%20
Message.pdf.

Page 1 of 3

advised that once election officials lose custody and control over voting systems and components, those devices should not be reused in future elections. Rather, decommissioning and replacing those devices is the safest option as no methods exist to adequately ensure those machines are safe to use in future elections. As such, my Office is urging the County not to re-deploy any of the subpoenaed machines that it turned over to the Senate in any future elections. Instead, the County should acquire new machines to ensure secure and accurate elections in Maricopa County going forward.

A fundamental requirement to ensure the security and integrity of election equipment includes maintaining strict access limitations and a clear chain of custody to prevent both intentional and inadvertent tampering. Arizona's election procedures enumerate detailed requirements to protect voting equipment from these threats.[2] Federal election standards also set best practices, which require voting equipment to remain securely stored in facilities that prevent unauthorized access.[3] As you know, the Maricopa County Elections Department upholds strict chain of custody procedures for its voting equipment by securing equipment in limited-access facilities, logging access to the equipment, and air-gapping equipment at all times.

However, once the subpoenaed machines were turned over to the Senate and Cyber Ninjas, it is unclear what, if any, procedures were in place or followed to ensure physical security and proper chain of custody. Indeed, our expert observers, as well as multiple news reports, have noted troubling security lapses. And Cyber Ninjas has failed to provide full transparency into what they did with the equipment. No election official or expert observer designated by my Office was allowed to remain with the equipment for the duration of the Cyber Ninjas' processing and handling of the equipment, nor did Cyber Ninjas provide a continuous, clearly visible livestream of the area where voting equipment was stored and handled. The lack of physical security and transparency means we cannot be certain who accessed the voting equipment and what might have been done to them.

Unfortunately, after a loss of physical custody and control, no comprehensive methods exist to fully rehabilitate the compromised equipment or provide adequate assurance that they remain safe to use. While the machines could be put through an intensive and costly forensic examination by an accredited, national forensics laboratory, even after such forensic examination, machines are generally not recommissioned given that the forensic analysis cannot be guaranteed to locate all potential problems.

Considering the potential impact of decommissioning the subpoenaed equipment, including on taxpayer dollars and County operations, my Office did not reach this decision lightly. However, given the circumstances and ongoing concerns regarding the handling and security of the equipment, I believe the County can agree that this is the only path forward to ensure secure and accurate elections in Maricopa County in the future.

To be clear, this letter pertains only to the specific pieces of subpoenaed election equipment that the county turned over to the Senate and its contractors, and not to the underlying

---

[2] Elections Procedures Manual, Chapter 4, Section III, at pages 95 - 98.
[3] See, e.g., U.S. Election Assistance Commission, Election Management Guidelines, Chap. 3, available at https://www.eac.gov/sites/default/files/eac_assets/1/6/260.pdf.

SERIAL 190265-RFP

Dominion voting system, which remains certified for use in Arizona, nor any other election equipment that the County did not turn over to the Senate and its contractors.

If the County intends to re-deploy the subpoenaed equipment, over which the County lost custody and control, for use in future Arizona elections, please notify my Office as soon as possible, and no later than July 1, 2021, so that we may properly consider decertification proceedings pursuant to A.R.S. § 16-442 as to the subpoenaed equipment.

Thank you for your prompt attention to this important matter.

Sincerely,

Katie Hobbs
Arizona Secretary of State

cc:

Stephen Richer, Maricopa County Recorder
sricher@risc.maricopa.gov

Scott Jarrett, Director of Election Day and Emergency Voting,
Maricopa County Elections Department
sjarrett@risc.maricopa.gov

Page 3 of 3