Emily Craiger (Bar No. 021728)
emily@theburgesslawgroup.com
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona  85016
Telephone: (602) 806-2100


RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:     Thomas P. Liddy (019384)
        Joseph J. Branco (031474)
        Joseph E. LaRue (031348)
        Karen J. Hartman-Tellez (021121)
        Deputy County Attorneys
        MCAO Firm No. 0003200

CIVIL SERVICES DIVISION
225 West Madison St.
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-8567
liddyt@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
laruej@mcao.maricopa.gov
hartmank@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for the Defendant
Maricopa County Board of Supervisors*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake and Mark Finchem, | No. 2:22-cv-00677-JJT |
| Plaintiffs, | |
| vs. | **MARICOPA COUNTY DEFENDANTS' RULE 11 AND 28 U.S.C. § 1927 MOTION FOR SANCTIONS** |
| Kathleen Hobbs, et al., | |
| Defendants. | (Honorable John J. Tuchi) |

Defendants Bill Gates, Clint Hickman, Jack Sellers, Thomas Galvin, and Steve Gallardo in their official capacities as members of the Maricopa County Board of Supervisors ("the County") respectfully move for sanctions against Plaintiffs' counsel and Plaintiffs under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Plaintiffs' First Amended Complaint ("FAC") and Motion for Preliminary Injunction ("MPI") publicly assert and represent to the Court allegations against the County that are unfounded, asserted without a reasonable inquiry, and asserted for an improper purpose. Most blatant are Plaintiffs' repeated assertions that Arizonans do not vote on paper ballots. This is false. Arizona law requires paper ballots. Either Plaintiffs' counsel failed to do the bare minimum factual investigation required by Rule 11 - speaking to their own clients who have each voted on paper ballots for nearly 20 years - or they knowingly alleged the fact anyway and pursued these frivolous claims anyway. Under either scenario, Plaintiffs and their counsel violated Rule 11.

Moreover, the entire foundation of Plaintiffs' case – the alleged need for court intervention to implement their preferred method of ballot tabulation because they fear possible, invisible, undetectable invaders into Arizona counties' ballot tabulation equipment that will allegedly improperly manipulate the vote count – is based purely on speculation, conjecture, and unwarranted suspicion. Because no actual facts or evidence exist to support Plaintiffs' assertion that tabulation equipment ever has or will incorrectly count ballots in Arizona, to support their claims Plaintiffs' FAC instead sets forth demonstrably false allegations made without any basis or reasonable factual inquiry in violation of Rule 11. Fed. R. Civ. P. 11(b). Likewise, Plaintiffs' counsel violated both Rule 11 and 28 U.S.C. § 1927 by unreasonably multiplying the proceedings with their untimely and unsupported MPI filed months after filing their initial Complaint and after the County filed its MTD.

Plaintiffs' and their counsels' use of the Court to further a disinformation campaign and false narrative concerning the integrity of the election process in Arizona by asserting demonstrably false allegations is repugnant. This improper use of the courts is

1    unacceptable, detrimental to the entire election process, subjects election officials and

2    workers to threatening and harassing conduct, and violates Rule 11. Accordingly, this court

3    should issue sanctions against Plaintiffs and their counsel to deter future filings of similarly

4    frivolous lawsuits.

5        I.    **Notice to Plaintiffs**

6        On May 20, 2022, by written correspondence, County counsel alerted Plaintiffs'

7    counsel of its intention to file a Motion to Dismiss and seek Rule 11 sanctions. (*See* Ex.

8    1, May 20, 2022 Correspondence.)  On May 27, 2022, County Counsel, having received

9    no response, sent e-mail correspondence to Plaintiffs' counsel requesting a meet and

10   confer. (*See* Ex. 2, May 27, 2022 Correspondence.) On May 31, 2022, counsel for the

11   Parties participated in a telephonic meet and confer. At that time, Plaintiffs' counsel stated

12   it had not considered whether amending the FAC could remedy the issues raised in the

13   County's May 20, 2022, correspondence. Accordingly, the Parties filed a stipulated request

14   for extension of Defendants' responsive pleading deadline, so Plaintiffs could consider the

15   issues raised by County counsel nearly two weeks prior. (Doc. 24) On June 6, 2022, the

16   Parties participated in a second meet and confer in which Plaintiffs' counsel stated that it

17   "disagreed" with the County's position and would not amend or dismiss the FAC, except

18   they would no longer pursue Plaintiffs' claims based on A.R.S. § 11-251. The following

19   day, on June 7, 2022, the County filed its MTD. (Doc. 27). One day later, on June 8, 2022,

20   Plaintiffs filed their MPI. (Doc. 33) On July 18, 2022, County counsel served the instant

21   motion on Plaintiffs' counsel.

22   **II.    Plaintiffs' false allegations and misleading "evidence".**

23       Plaintiffs' FAC is premised on three broad allegations that are demonstrably false,

24   which any reasonable factual investigation would have revealed.  <u>First</u>: that Arizona voters

25   do not vote by hand on paper ballots. (FAC, ¶¶ 7, 58-60, 153).  *They do*. <u>Second</u>: that

26   Arizona's election equipment is not independently tested by experts. (FAC, ¶¶ 20, 57, 69).

27   *It is*. <u>Third</u>: that Arizona's tabulation results are not subject to vote-verifying audits. (FAC,

28   ¶¶ 23, 72, 144-52.) *They are*. The County's MTD addressed each of these provably false

allegations in detail, using publicly available and widely circulated information. (County's MTD at 1-6)

In addition, the allegations in the FAC relating specifically to Maricopa County elections are demonstrably false. For example, the allegation that "[t]he recent hand count in Maricopa County, the second largest voting jurisdiction in the United States, offers Defendant Hobbs a proof-of-concept and a superior alternative to relying on corruptible electronic voting systems" is untrue. (FAC, ¶ 155.)  As set forth in detail in the MTD, the Cyber Ninjas counted only two contests (of more than 60 on each ballot), it took them more than three months, it cost millions of dollars, they claim that they went bankrupt as a result, and the hand count results were so problematic the Arizona Senate was forced to purchase paper-counting machines in an attempt to reconcile the hand counts' botched numbers. (MTD at 13-14) Moreover, the baseless "findings" of the Cyber Ninja's "reports," including those in paragraphs 70, 132, and 164 of the FAC, have been debunked. For instance, Plaintiffs' assertion that the Final Voted file (VM55) contained significant discrepancies is blatantly false, (*see* FAC, ¶ 70); among other things, the Cyber Ninjas did not understand that there are protected voters who are prohibited by state law from being included in any public voter file. (County's MTD, Ex. 13 at 65) Plaintiffs repeatedly assert that election files were "missing," "cleared," or "deleted." (FAC, ¶¶ 70, 132, 164) However, all the hard drives and corresponding data files from the November 2020 General Election were maintained and safely secured by Maricopa County; the files the Cyber Ninjas claimed were missing were either not subpoenaed and so not provided, or were not located because of the Cyber Ninjas' ineptitude. (County's MTD, Ex. 13 at 5)

In spite of being clearly alerted to these factual misrepresentations both in the County's May 20, 2022, correspondence and the County's subsequently-filed MTD, Plaintiffs doubled-down by filing their untimely MPI. In it, in addition to relying on the false allegations previously asserted in the FAC, they asserted, among other things, that "[e]xperience has now shown the move to computerized voting in Arizona was a mistake." (MPI at 2); and that, "[a] return to the tried-and-true paper ballots of the past – and of the

present, in countries like France, Taiwan, and Israel – is necessary." (MPI at 2) But Arizona does not use computerized voting, and never has. Arizona law requires paper ballots.[1] *See* Ariz. Rev. Stat. ("A.R.S.") §§ 16-462 (primary election ballots "shall be printed"), 16-468(2) ("Ballots shall be printed in plain clear type in black ink, and for a general election, on clear white materials"), 16-502 (general election ballots "shall be printed with black ink on white paper"). A fact that would have been easily learned by doing the most *de minimis* factual investigation required by Rule 11(b), namely talking to their own clients who have each voted on paper ballots for nearly 20 years.

In addition to the repeated factual misrepresentations, both the FAC and MPI were riddled with testimony and allegations that are entirely unrelated to elections in Arizona and seem designed to muddy the waters in an attempt to mislead the Court. For instance, FAC ¶¶ 73-89, 125-131, 133 and 134 contain allegations concerning elections in Alabama, North Carolina, Nebraska, Texas, Georgia, Wisconsin, Michigan, and Colorado conducted with equipment that is not used in Arizona and so have nothing to do with Arizona and its certified tabulation equipment. Plaintiffs' blanket allegations concerning alleged foreign manufacturing of components by hostile nations is similarly inapposite; the allegations do not identify specific machines or parts. (FAC, ¶¶ 90-92) Likewise, Plaintiffs' discussion of their beliefs regarding "open source" technology has nothing to do with the claims asserted or relief requested. (*Id.*, ¶¶ 108-24)

Likewise, Plaintiffs heavily rely on a Georgia case addressing voting systems that do not use paper ballots or lack appropriate paper back up, unlike the systems used in Arizona. (Response to MPI, 3-4)  Plaintiffs also repeatedly use out-of-context quotes from testimony in unrelated cases and proceedings to sow doubt about the integrity of elections in Arizona. (*Id.* at 4-5)  Further, Plaintiffs rely on a statement from the U.S. Cybersecurity

---

[1] The only exception is voters who are visually impaired may vote on accessible voting devices. § 16-442.01. But accessible voting devices must produce a paper ballot or voter verifiable paper audit trail, which the voter can review to confirm that the machine correctly marked the voter's choices and which can be used to audit the election. § 16-446(B)(7); (Elections Procedures Manual (2019) at 80.

4

and Infrastructure Agency ("CISA") to assert that vulnerabilities exist concerning Maricopa County's voting system, even though the system addressed in the report is different than the system used by Maricopa County (or any other county in Arizona). (*Id.* at 5-6)

Finally, the entire FAC is premised on the erroneous theory that machine counting of ballots is unreliable because the machines used are "potentially susceptible to malicious manipulation that can cause incorrect counting of votes" and these alleged vulnerabilities stem from the possibility that the machines "can be connected to the internet." (FAC, ¶¶ 26, 33.) Maricopa County's vote tabulation system is not, never has been, and cannot be connected to the Internet. The Arizona Senate's Special Master confirmed that Maricopa County uses an air-gapped system that "provides the necessary isolation from the public Internet, and in fact is in a self-contained environment" with "no wired or wireless connections in or out of the Ballot Tabulation Center" so that "the election network and election devices cannot connect to the public Internet." (County's MTD Ex. 12 at 8, 10–11) The Special Master's report discredits all of the Cyber Ninjas' speculative findings—relied on by the FAC—concerning alleged "unauthorized access, malware present or internet access to these systems" that "basic cyber security best practices and guidelines were not followed" or that in the past Maricopa County failed to ensure that "election management servers were not connected to the internet." (FAC, ¶¶ 70, 132, 164)

## III.   LEGAL ARGUMENT

### A.   Applicable Legal Standards

Rule 11 of the Federal Rules of Civil Procedure, and 28 U.S.C. § 1927, represent independent sources of authority for the imposition of sanctions by a federal court. *Truesdell v. S. Cal. Permanente Med. Grp*., 209 F.R.D. 169, 173 (C.D. Cal. 2002). Rule 11 is designed to deter attorneys and unrepresented parties from violating their certification that any pleading, motion or other paper presented to the court is supported by an objectively reasonable legal and factual basis. *Id*. Section 1927 is designed to deter attorney misconduct. *Id*. at 174. In the instant action, sanctions are warranted under both bases.

Rule 11 states, in pertinent part, that when an attorney presents a signed paper to a court, that person is certifying that to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—"

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery ...

Fed. R. Civ. P. 11(b).

Rule 11 permits a court to impose a sanction for any violation of these certification requirements, either upon the attorney or the party responsible for the violation. Fed. R. Civ. P. 11(c)(1). It is governed by an objective standard of reasonableness. *See, e.g., Conn v. CSO Borjorquez*, 967 F.2d 1418, 1421 (9th Cir. 1992). The court considering a request for Rule 11 sanctions should consider whether a position taken was "frivolous," "legally unreasonable," or "without factual foundation, even if not filed in subjective bad faith." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986); *see also Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362–65 (9th Cir. 1990) (en banc).

Further, a sanction should be "what suffices to deter repetition of such conduct or comparable conduct ...." Fed. R. Civ. P. 11(c)(4). Indeed, "the central purpose of Rule 11 is to deter baseless filings in district court." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). Thus, "[e]ven if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred[,]" and "the imposition of such sanctions on abusive litigants is useful to deter such misconduct." *Id.* at 398.

A federal court may also base an order of sanctions on authority granted by 28 U.S.C. § 1927, which states, in pertinent part, that:

Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

Thus, "Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc*., 210 F.3d 1112, 1117 (9th Cir. 2000). Because Section 1927 requires that an attorney's multiplication of proceedings be both "unreasonabl[e]" and "vexatious[ ]," the conduct of the attorney in question must have been somehow wrongful. *Truesdell*, 209 F.R.D. at 175. Unlike Rule 11, "[t]he imposition of sanctions under § 1927 requires a finding of bad faith." *Pacific Harbor,* 210 F. 3d at 1117. "We assess an attorney's bad faith under a subjective standard. Knowing or reckless conduct meets this standard." *MGIC Indem. Corp. v. Moore*, 952 F.2d 1120, 1122 (9th Cir. 1991); *see In re Keegan Mgmt. Co., Securities Litig*., 78 F.3d 431, 435–36 (9th Cir. 1996). Thus, "counsel must have a culpable state of mind but its conduct need not be intentional: [a court] may only award sanctions where it finds that counsel acted with 'intent, recklessly, or in bad faith.' " *Baneth v. Planned Parenthood*, 1994 WL 224382, *3 (N.D. Cal. May 12, 1994) (citations omitted). As is true for Rule 11, Section 1927 sanctions may be an award of reasonable attorneys' fees. *See Salstrom v. Citicorp Credit Servs.*, *Inc*., 74 F.3d 183, 185 (9th Cir.1996).

## B.   Plaintiffs and their counsel violated Rule 11.

"Rule 11 imposes a duty on attorneys to certify by their signature that (1) they have read the pleadings or motions they file and (2) the pleading or motion is 'well-grounded in fact,' has a colorable basis in law, and is not filed for an improper purpose." *Smith v. Ricks*, 31 F.3d 1478, 1488 (9th Cir. 1994). "The issue in determining whether to impose sanctions under Rule 11 is whether a reasonable attorney, having conducted an objectively reasonable inquiry into the facts and law, would have concluded that the offending paper was well-founded." *Schutts v. Bentley Nevada Corp*., 966 F. Supp. 1549, 1562 (D. Nev. 1997) (citation omitted). Where such a violation is found, Rule 11 authorizes sanctions

against persons—attorneys, law firms, or parties—responsible. *See Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 120 (1989). Here Plaintiffs' counsel has repeatedly violated the certification requirements of Rule 11. Worse, both counsel and Plaintiffs have pursued this matter for an improper purpose – namely to sow doubts about the reliability and trustworthiness of elections for their own financial and political benefit.

As an initial matter, Plaintiffs repeatedly made false allegations that Arizona does not use paper ballots, test its tabulation machines, and audit election results. They also made numerous factual misstatements concerning Maricopa County, its tabulation machines' internet connections and the Cyber Ninjas' audit findings. These false allegations and statements are sufficient alone, under Rule 11(b)(3), to support imposition of sanctions. Indeed, for the reasons set forth above and at length in Defendant's MTD and Response to MPI, these allegations are untrue and any reasonable inquiry using publicly-available information would have shown the falsity of these assertions. Yet, Plaintiffs and their attorneys made these false statements anyway.

Further, Plaintiffs violated Rule 11(b)(2) and (b)(3) because their constitutional claims are entirely untenable. Specifically, these claims fail because they are based on the complete fiction that "Arizona's use of electronic election equipment permits unauthorized persons to manipulate vote totals without detection, thereby infringing Plaintiffs' right to vote and have the vote counted accurately." (Response to Defendant's MTD at 12.) Plaintiffs bombard the Court with unnecessarily-voluminous filings and irrelevant averments, but, as set forth in detail above, fail to allege a single factual allegation that any Arizona ballot tabulation equipment has ever been hacked or manipulated or has improperly counted votes, or that any Arizona voters' ballot, including Plaintiffs', has ever been improperly counted by an electronic tabulation machine – because no such evidence exists. Plaintiffs' claims are based on mere speculation and conjecture but, as the court rightly stated in *King v. Whitmer,* in awarding sanctions for a factually deficient election-related challenge, "[w]hile there are many arenas—including print, television, and social media—where protestations, conjecture, and speculation may be advanced, such

expressions are neither permitted nor welcomed in a court of law." *King v. Whitmer*, 556 F. Supp. 3d 680, 689 (E.D. Mich. 2021).

Furthermore, Plaintiffs and their counsel merely asserting an alleged good faith belief in the merits of their claim is insufficient to prevent sanctions. Indeed, an "empty-head" but "pure-heart" does not justify pursuing Section 1983, Equal Protection Clause and Due Process Clause claims where the factual contentions asserted to support those claims lack any evidentiary support. *See* Fed. R. Civ. P. 11 Advisory Committee Notes (1993 Amendment) (noting that Rule 11's objective standard is "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments"); *Tahfs v Proctor*, 316 F.3d 584, 594 (6th Cir. 2003)("A good faith belief in the merits of a case is insufficient to avoid sanctions.").

Finally, Plaintiffs and their counsel violated Rule 11(b)(1) by pursuing this frivolous lawsuit that has no factual or legal basis for the improper purpose of undermining confidence in elections and to further their political campaigns.  Both Plaintiffs Lake and Finchem have voted on paper ballots for nearly 20 years; thus, their claims that Arizona does not use paper ballots are the very definition of "frivolous." (*See* Cnty. MTD, Ex. 15.) And, during the entire time that Plaintiffs have voted in Arizona, their votes were tabulated by machines. Yet, they did not challenge machine tabulation in the early 2000s, nor did they challenge it when the County began using Dominion equipment in 2019. *(See, e.g.*, FAC, ¶¶ 18, 137).  Instead, they waited until they were running for statewide political office, when a significant portion of their likely voters had become erroneously convinced that the 2020 election was "stolen."  Only then did they raise concerns about tabulation equipment, after having determined that promoting distrust in elections was politically profitable. Indeed, both Plaintiffs are actively stating their intentions "not to concede" and require a 100% hand recount of all ballots. Specifically, on June 28, 2020, Plaintiff Finchem publicly stated, "[a]in't gonna be no concession speech coming from this guy. I'm going to demand a 100% hand count if there's the slightest hint that there's an impropriety. And I will urge the next governor [referring to Lake] to do the same."

https://www.azcentral.com/story/news/politics/arizona/2022/07/13/arizona-gov-doug-ducey-endorses-beau-lane-secretary-state/10053166002/. Lake responded, stating she would "absolutely" do the same, noting that former president Trump never conceded his 2020 loss and stating "that was really smart." *Id.*

This Court should not countenance candidates filing a meritless lawsuit for political purposes, which asserts fictional violations of constitutional rights and is completely devoid of any factual basis, but furthers a false narrative that election results cannot be trusted.  As was the case in *King v. Whitmer*,

> This lawsuit represents a historic and profound abuse of the judicial process. It is one thing to take on the charge of vindicating rights associated with an allegedly fraudulent election. It is another to take on the charge of deceiving a federal court and the American people into believing that rights were infringed, without regard to whether any laws or rights were in fact violated.

*King*, 556 F. Supp.3d at 688 (E.D. Mich. 2021).

**C.  Plaintiffs' counsel violated Section 1927.**

"Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc*., 210 F.3d 1112, 1117 (9th Cir. 2000). Sanctions imposed pursuant to 28 U.S.C. § 1927 must be supported by a finding of bad faith. *See Blixseth v. Yellowstone Mountain Club*, *LLC*, 796 F.3d 1004, 1007 (9th Cir. 2015). "[A] finding that the attorney recklessly or intentionally misled the court" or "a finding that the attorney[ ] recklessly raised a frivolous argument which resulted in the multiplication of the proceedings" amounts to the requisite level of bad faith. *Franco v. Dow Chem. Co. (In re Girardi)*, 611 F.3d 1027, 1061 (9th Cir. 2010) (citations omitted). In addition, "recklessly or intentionally misrepresenting facts constitutes the requisite bad faith" to warrant sanctions, as does "recklessly making frivolous filings." *Id*. at 1061–62 (internal quotations and citations omitted).

Here Plaintiffs' counsels' numerous false allegations and misrepresentations of evidence, as well as their continued pursuit of baseless claims, especially after Defendants

repeatedly alerted them to these misrepresentations, are sufficient to justify sanctions pursuant to Section 1927.

Plaintiffs' improper conduct is further evidenced by their inexplicable years-long delay in seeking injunctive relief. Plaintiffs challenge a statutory scheme that has authorized counties to use vote tabulation machines to "automatically" count votes since at least 1966. (*See* Cnty. MTD, Ex. 14.) Plaintiffs allege problems with vote tabulation machines have occurred since 2002. (*See, e.g.*, FAC, ¶¶ 71–82.) Plaintiffs seek to invalidate a voting system certified by the Secretary on November 5, 2019. (*See id.*, ¶¶ 18, 137.) And Plaintiffs' voter files indicate they each have voted in elections in which vote tabulation machines were used for more than a decade. (*See* Cnty. MTD, Ex. 15.) Yet, despite the fact that Plaintiffs should have brought their lawsuit years earlier (if they really believed that their constitutional rights were being infringed by tabulation machines), they waited until a distrust of tabulation machines had become commonplace among some of their political party's base and they judged that a lawsuit such as this one would garner them political favor. Plaintiffs' counsel should have questioned why their clients only *now* decided to file this lawsuit, and should have recognized that something smelled funny. And even if they did not, Plaintiffs' counsel should have declined to continue prosecuting this matter after counsel for the County clearly explained that Plaintiffs' claims are barred by the applicable Section 1983 Statute of Limitations, Laches and the *Purcell* principle. (*See* Ex. 1 and Cnty. MTD)

By filing the request for injunctive relief, after the County alerted them to the utter lack of legal and factual support for Plaintiffs' claims, Plaintiffs' counsel violated Section 1927. Pursuing injunctive relief under these circumstances, with the resulting additional unnecessary briefing and an evidentiary hearing, is reckless and vexatious. Plaintiffs' counsel has acted in bad faith by completely disregarding the futility of their claims, taxing judicial resources, wasting the time of election employees on the eve of the August 2022 Primary election and forcing the unnecessary expenditure of taxpayer resources.

**CONCLUSION**

For the reasons addressed above, the County asks the Court to award its reasonable attorneys' fees incurred, pursuant to Rule 11 and Sections 1927, from the date that Plaintiffs filed the First Amended Complaint up until the Court's ruling on the present motion, or in an amount the Court deems sufficient "to deter repetition of such conduct or comparable conduct by others similarly situated." Fed R. Civ. P. 11(c)(4).

RESPECTFULLY SUBMITTED this 10th day of August, 2022.

THE BURGESS LAW GROUP

BY:  */s/ Emily Craiger*
      Emily Craiger


RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

BY: Thomas P. Liddy
     Joseph J. Branco
     Joseph E. La Rue
     Karen J. Hartman-Tellez
     Deputy County Attorneys


*Attorneys for the Defendant*
*Maricopa County Board of Supervisors*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 10, 2022, I electronically transmitted the foregoing document to the following:

Alan M Dershowitz
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
dersh@law.harvard.edu
alandersh@gmail.com

12

Andrew D Parker
Jesse Hersch Kibort
Parker Daniels Kibort LLC
123 N 3rd St., Ste. 888
Minneapolis, MN 55401
parker@parkerdk.com
kibort@parkerdk.com

Kurt B Olsen
Olsen Law PC
1250 Connecticut Ave. NW, Ste. 200
Washington, DC 20036
ko@olsenlawpc.com

Christine Bass
States United Democracy Center - Los Angeles, CA
506 S Spring St., Ste. 13308
Los Angeles, CA 90013
christinebass@statesuniteddemocracy.org

David Andrew Gaona
Kristen Michelle Yost
Roopali H Desai
Coppersmith Brockelman PLC
2800 N Central Ave., Ste. 1900
Phoenix, AZ 85004
Agaona@cblawyers.com
kyost@cblawyers.com
rdesai@cblawyers.com

Sambo Dul
States United Democracy Center
8205 South Priest Dr., Ste. #10312
Tempe, AZ 85284
480-253-9651
bo@statesuniteddemocracy.org

Daniel S Jurkowitz
Pima County Attorneys Office
32 N Stone Ave., Ste. 2100
Tucson, AZ 85701
Daniel.Jurkowitz@pcao.pima.gov

Michael Kielsky
Davillier Law Group LLC
4105 N 20th St., Ste. 110
Phoenix, AZ 85016
MK@USazLaw.com


/s/ Dana N. Troy

13