**PARKER DANIELS KIBORT**
Andrew Parker (028314)
Jesse H. Kibort (MN Bar No. 0328595)*
Joseph A. Pull (MN Bar No. 0386968)*
888 Colwell Building
123 Third Street North
Minneapolis, Minnesota 55401
parker@parkerdk.com
kibort@parkerdk.com
pull@parkerdk.com
Telephone: (612) 355-4100
Facsimile: (612) 355-4101

**OLSEN LAW, P.C.**
Kurt Olsen (D.C. Bar No. 445279)*
1250 Connecticut Ave., NW, Suite 700
Washington, DC 20036
Telephone: (202) 408-7025
ko@olsenlawpc.com

Alan M. Dershowitz (MA Bar No. 121200)*
1575 Massachusetts Avenue
Cambridge, MA 02138
* Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Kari Lake; Mark Finchem,<br><br>Plaintiffs,<br><br>v.<br><br>Kathleen Hobbs, as Arizona Secretary of State; Bill Gates; Clint Hickman; Jack Sellers; Thomas Galvin; and Steve Gallardo, in their capacity as members of the Maricopa County Board of Supervisors; Rex Scott; Matt Heinz; Sharon Bronson; Steve Christy; Adelita Grijalva, in their capacity as members of the Pima County Board of Supervisors,<br><br>Defendants. | No. 22-cv-00677-JJT<br>(Honorable John J. Tuchi)<br><br>**PLAINTIFFS' OPPOSITION TO MARICOPA COUNTY DEFENDANTS' MOTION FOR SANCTIONS** |

The Maricopa County Defendants' ("Maricopa") Rule 11 and 28 U.S.C. § 1927 Motion for Sanctions, Doc. 97 ("Motion"), mischaracterizes Plaintiffs' Amended Complaint and then asks the Court to sanction Plaintiffs merely because Maricopa disagrees with the straw-man caricature Maricopa manufactured. This mode of argument is highly improper, particularly in such a grave context. The Motion should be denied.

## I.
## THE AMENDED COMPLAINT PRESENTS STRONG, LEGALLY AND FACTUALLY SOUND CLAIMS.

The Amended Complaint ("Complaint") alleges Maricopa has deployed an electronic voting system that fails to "provide reasonable and adequate protection against the real and substantial threat of electronic and other intrusion and manipulation," and fails to "provide a reasonable and adequate method for voting by which Arizona electors' votes would be accurately counted." Compl. ¶ 180 (Doc. 3). It supports these summary allegations with detailed specific allegations concerning the equipment used by Maricopa, *id*. ¶¶ 64-69, 140-142; a partial history of electronic voting machine unreliability in reporting vote totals, *id*. ¶¶ 72-73, 85, 116; a partial history of electronic voting machine security vulnerabilities, *id*. ¶¶ 74-78, 81-83, 86-92, 95-98, 103-107, 110, 139; evidence of foreign attempts to electronically penetrate U.S. election-related computer systems, *id*. ¶¶ 79, 94, 99, 101; expert commentary predicting that U.S. electronic election equipment "will be" or is likely to be hacked, *id*. ¶¶ 80, 84, 94; and security failures and vote manipulation on electronic voting machines during the 2020 election, *id*. ¶¶ 125-134.

Evidence to substantiate these allegations was submitted to the Court in connection with Plaintiffs' Motion for Preliminary Injunction and supporting declarations and exhibits, *see* Docs. 33-44, and at the evidentiary hearing held by the Court on July 21, 2022, *see* Transcript (Doc. 98). The Court is doubtless well-aware of the evidence and needs no detailed reminder. It bears pointing out that Plaintiffs provided declarations and/or testimony from six expert witnesses concerning the substance of security vulnerabilities, including from two computer security professionals, Benjamin Cotton and Douglas Logan, who closely reviewed Maricopa's specific system. Maricopa, in contrast,

provided no contrary substantive expert declaration or testimony other than the testimony of Ryan Macias, an election "consultant" with no indicated expertise or experience reviewing computer hardware or software for security vulnerabilities. The Motion for Preliminary Injunction evidentiary record with respect to the technical facts of voting equipment security is entirely one-sided, and the Complaint tracks the evidence from the hearing and papers supporting the Motion for Preliminary Injunction.

Thus Plaintiffs provided not merely allegations but evidence to substantiate their legal claims that Maricopa's electronic voting system does not provide a constitutionally-satisfactory secure, correct, reliable means of counting votes in elections. Plaintiffs also provided legal authority showing they have a federal constitutional right to Maricopa using only a secure, correct, reliable means of counting their votes and the votes of others in future elections, including the 2022 general election in which both Plaintiffs will be candidates for elected office. Pls.' Mot. for Prelim. Inj. & Mem. 24-27 (Doc. 50).

Plaintiffs' Complaint easily clears the standard of Fed. R. Civ. P. 11. Rule 11(b) requires that a pleading not be presented "for any improper purpose," that it be "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that the "factual contentions have evidentiary support." *See also United Nat'l Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001); *Moore v. Keegan Mgmt. Co.*, 78 F.3d 431, 433-34 (9th Cir. 1996) (complaint which is "well-founded" is not sanctionable). Bringing claims in federal court to vindicate federal constitutional rights is a proper purpose, existing law warrants Plaintiffs' claims, and the factual contentions have evidentiary support. The only frivolous pleading identified in Maricopa's Motion is the Motion itself.

## II.
## MARICOPA'S RULE 11 MOTION IS BASELESS.

Because Plaintiffs' claims are legally sound and supported by strong evidence, they are proper. Maricopa's Motion is risible – itself an unreasonable and vexatious multiplication of these proceedings.

A. **<u>Plaintiffs' Pleadings Far Surpass the Standard of Rule 11.</u>**

Applying Fed. R. Civ. P. 11 "requires sensitivity to two competing considerations," the "perception underlying the Rule" that "on occasion attorneys engage in litigation tactics so vexatious as to be unjustifiable even within the broad bounds of our adversarial system," and also the principle that "both the Rule itself and our application of the Rule recognize that our system of litigation *is* an adversary one, and that presenting the facts and law as favorably as fairly possible in favor of one's client is the nub of the lawyer's task." *United Nat'l Ins. Co.*, 242 F.3d at 1115. Therefore, "sanctions on lawyers for their mode of advocacy" should be imposed "only in the most egregious situations, lest lawyers be deterred from vigorous representation of their clients." *Id*. "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Operating Eng'rs. Pension Trust v. A-C Co.*, 859 F.2d 1336, 1345 (9th Cir. 1988). As applied to "factual contentions," "sanctions may not be imposed unless a particular allegation is utterly lacking in support." *Storey v. Cello Holdings, L.L.C.*, 347 F.3d 370, 388 (2d Cir. 2003) (quoting *O'Brien v. Alexander*, 101 F.3d 1479, 1489 (2d Cir. 1996)).

Rule 11 itself requires that a pleading "not be[] presented for an improper purpose," "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law," and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(1)-(3). As noted above, Plaintiffs' Complaint and Motion for Preliminary Injunction far surpass this threshold. The Complaint alleges that electronic voting systems do not provide a secure, transparent, or reliable vote count. Compl. ¶¶ 71-89. In support of these allegations, Plaintiffs presented a multitude of evidence that voting machine software is flawed, vulnerable to cyber attacks that could change votes, regularly hacked to change votes in demonstrations, vulnerable notwithstanding attempted security precautions, likely targets for the now-routine tool of remote access operations used by foreign governments, and vulnerable to compromise at the time the electronic components are manufactured. Mot. for Prelim. Inj. at 8-14 & supporting exhibits (Doc. 50). Plaintiffs also presented evidence

3

that Maricopa County's specific electronic election equipment has serious security deficiencies, including a lack of security software updates, use of weak, shared passwords, lack of software monitoring capability to detect unauthorized activity, inadequate log management practices, and internet connectivity capability through wireless modems. *See id*. at 10-11, 15-18 and supporting exhibits.

### B. Maricopa Shows No Rule 11 Violation.

Ignoring the merits of Plaintiffs' claims and the extensive evidence, Maricopa asserts three arguments that the Complaint fails to meet Rule 11's standard: the Complaint purportedly makes "untenable" "constitutional claims," has an "improper purpose," and makes "false allegations." Mot. 8-10. None of these are correct.

#### 1. Maricopa Does Not Deny Plaintiffs' Claims Are Legally Sound.

Maricopa pretends to attack the legal basis of Plaintiffs' claims, asserting "their constitutional claims are entirely untenable." Mot. at 8. But the argument Maricopa advances is not a legal argument, merely a baseless assertion that Plaintiffs lack evidence. *Id*. ("these claims fail because they are based on the complete fiction that 'Arizona's use of electronic election equipment permits unauthorized persons to manipulate vote totals without detection.'"). To support this bold assertion of "complete fiction," Maricopa offers *no evidence*. *Id*. The entirety of its proof on this point is the argument that no facts were alleged that "any Arizona ballot tabulation equipment has ever been hacked or manipulated or has improperly counted votes, or that any Arizona voters' ballot, including Plaintiffs', has ever been improperly counted by an electronic tabulation machine." *Id*.

That is, Maricopa does not dispute the legal theory behind Plaintiffs' constitutional claims, merely their evidentiary basis, and Maricopa's entire evidentiary argument is a claim that there's no evidence the specific harm sought to be prevented by the Complaint has specifically happened in Arizona before. But Maricopa is incorrect. Plaintiffs provided the sworn testimony of Professor Walter Daugherity (Doc. 38) which provided a detailed analysis of cast vote records resulting in an expert conclusion that there was "artificial control" manipulation of ballots during the 2020 election in Maricopa County

4

and Pima County. *See id*. ¶¶ 42-44. None of the Defendants provided any evidence whatsoever to contradict Daugherity's analysis, leaving it undisputed in the record. Moreover, it is astounding that the point requires spelling out, but even if no past manipulation of Arizona ballots had not been shown, *an absence of undisputed evidence that a particular harm has happened before in a particular location does not prove that the harm cannot happen in the future, particularly where similar events have happened elsewhere.* For example, prior to February 2020 there was no evidence that any person in Arizona had ever been infected with Covid-19. By Maricopa's logic, it would have been *unreasonable* in January 2020 to warn that Arizona hospitals should prepare to treat Covid-19 patients – because *Covid-19* had *never* happened *here*. If, in January 2020, a hypothetical Cassandra had warned that Covid-19 could infect Arizonans, citing cases of Covid-19 elsewhere and the influenza pandemic that killed Americans in 1918, logical consistency would require Maricopa to say this warning was a frivolous false alarm, because there was (then) no evidence that *Covid-19* had ever occurred in *Arizona*.

"It hasn't happened here *yet*" does not prove "it *can't* happen here." It is not sanctionable to bring an action seeking to prevent a foreseeable and likely harm that has not yet happened here. If Maricopa's argument were sound, then *no* injunction could ever be entered against any wrongful conduct unless that particular conduct had already previously happened in exactly the same way at exactly the same place.

That is not the law.

Plaintiffs have provided evidence – not just allegations – that Maricopa's electronic election system (1) can be hacked (2) to manipulate votes (3) without detection. *E.g.* Decl. of Benjamin Cotton ¶¶ 16-18 (Doc. 35); Decl. of Douglas Logan ¶¶ 23-24, 34-42, 59-63, 81-84 (Doc. 39); Tr. of July 21, 2022 Mot. Hearing at 53:22-55:9 (Doc. 98) (Testimony of Benjamin Cotton); *id.* at 182:18-24 (Testimony of Scott Jarrett). Plaintiffs have further provided evidence that similar hacks have occurred in highly secured government computer systems, and in election-related systems, and that foreign governments attempted to interfere in the 2016 election, and that computer system remote

access operations are an ordinary part of international geopolitics and commerce. Decl. of John Mills ¶¶ 35-37, 42-44, 53 (Doc. 40); Parker Decl. ¶ 11 & Ex. J at 3, 15-22, 29-30 (Docs. 42, 44); Tr. of July 21, 2022 Mot. Hearing at 172:21-173:16, 178:19-179:10, 180:4-182:3 (Testimony of Scott Jarrett). While Maricopa argued against some of this evidence, it provided no contrary evidence from any technical expert. *See* Maricopa Opp. to Mot. for Prelim. Inj. 2-6 (Doc. 57). It is reasonable to infer from this record that an electronic intrusion designed to take advantage of the vulnerabilities in Maricopa's electronic system and manipulate votes is likely to occur in the future. The Complaint's allegations, including that Arizona's electronic election equipment permits unauthorized persons to manipulate vote totals without detection, are meritorious, not sanctionable.

### 2. Maricopa's Allegations of Improper Purpose Are Unsupported and False.

Maricopa accuses Plaintiffs of bringing this action for "the improper purpose of undermining confidence in elections and to further their political campaigns." Mot. at 9. To support this weighty accusation, Maricopa cites as evidence: (1) Plaintiffs have voted in the past on paper ballots and did not bring this action until now; (2) Plaintiffs have stated they would demand hand counts of ballots "if there's the slightest hint that there's an impropriety." *Id.* These items do not evidence an "improper purpose." They are evidence that Plaintiffs only recently became aware of the full extent of problems with electronic election equipment, that Plaintiffs genuinely believe hand counting is the only reliable means of counting votes, and that Plaintiffs will not concede defeat in their election contests without pursuing their rights to contest any impropriety.

"[C]omplaints are not filed for an improper purpose if they are non-frivolous." *CrossFit Inc. v. Martin*, No. CV-14-02277-PHX-JJT, 2017 U.S. Dist. LEXIS 154944, at *12 (D. Ariz. Sep. 22, 2017). A 'frivolous' filing is one that is both baseless and made without a reasonable and competent inquiry. . . . Rule 11 must be read in light of concerns that it will spawn satellite litigation and chill vigorous advocacy." *Id*. (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)) (quotations omitted). The Complaint

is not baseless, and was not made without reasonable and competent inquiry. The evidentiary presentation supporting Plaintiffs' Motion for Preliminary Injunction, and Maricopa's inability to provide any evidence of improper purpose, proves that.

Maricopa evidently dislikes Plaintiffs. But Maricopa's self-interested imputation of improper purposes to Plaintiffs, lacking any evidence other that Maricopa's distorted interpretation of benign, ordinary features of life – people sometimes attribute more importance to a problem when they learn more about it, and people who want to win an election intend to assert every legal right they possess in pursuit of that objective – does not provide any basis to sanction Plaintiffs for bringing an action to vindicate their constitutional right to vote, based on a legal theory that Maricopa cannot dispute is proper.

### 3. The Complaint Is Factually Sound.

Maricopa strains at gnats trying in nine different ways to show a false allegation in the Complaint, but there is nothing in the Complaint that remotely approaches a factual allegation "utterly lacking in support."

**Use of Paper Ballots**. Maricopa alleges the Complaint says that "Arizona does not use paper ballots," but Maricopa provides no citation or quotation in its legal argument to support this assertion. Mot. 8. It is improper that a party would accuse its opponent of making a "false allegation," *id*., without bothering to quote the allegedly false allegation or at minimum provide a citation to it. Maricopa perhaps declines to provide a quotation or citation because it cannot responsibly do so. Plaintiffs are left to guess that Maricopa's accusation is intended to rely on Maricopa's prior similar claim on page 2 of its Motion, which cites paragraphs 7, 58-60, and 153 of the Complaint. But none of those paragraphs say that Arizona does not use paper ballots.

- Paragraph 7 says that Plaintiffs "seek an Order that Defendants collect and count votes through a constitutionally acceptable process, which relies on tried and true precepts that mandates integrity and transparency. This includes votes cast by hand on verifiable paper ballots that maintains voter anonymity; votes counted by human beings, not by machines; and votes counted with transparency, and in

7

a fashion observable to the public."

- Paragraphs 58-60 discuss Arizona's transition from "paper-based voting systems" to "electronic, computer-based systems" – in context of the full Complaint, this allegation refers to the systems used to count and tabulate votes.
- Paragraph 153 sets forth a proposed method for hand-counting paper ballots securely and transparently.

Contrary to Maricopa's (presumed) claim, none of these paragraphs say that Arizona does not use paper ballots. In fact, the Complaint presumes that Arizona uses paper ballots. The Complaint attacks Arizona's use of optical scanners to count votes – and optical scanners necessarily scan paper ballots. *E.g.* Compl. ¶¶ 14 ("Every county in Arizona intends to tabulate votes cast in the Midterm Elections through optical scanners"), 23 ("All optical scanners and ballot marking devices certified by Arizona . . . have been wrongly certified"). Further, the Complaint presumes the use of paper ballots when it alleges that "some" or "many" Arizonans will use electronic voting systems to cast votes "while nearly *all* Arizonans will have their votes tabulated" with electronic machines. Compl. ¶ 16, 68. Arizonans who are not part of the "some" or "many" who cast votes using electronic voting systems (computerized ballot marking devices) are Arizonans who necessarily cast their votes directly on paper ballots.

In any event, Maricopa's arguments concerning references to paper ballots in the Complaint are immaterial, because the legal claims in the Complaint are not affected by Maricopa's use of paper ballots for voters to mark. An "immaterial discrepancy" does not "justify the 'harsh punishment' of Rule 11 sanctions." *Henok v. Chase Home Fin., LLC*, 922 F. Supp. 2d 110, 127 (D.D.C. 2013), *partially reversed on other grounds*, *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 411 (D.C. Cir. 2014) (quoting *Sharp v. Rosa Mexicano, D.C.*, 496 F. Supp. 2d 93, 100 (D.D.C. 2007)). *See Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010) (even literally false minor overstatement error "does not violate Rule 11" where "pleading as a whole remains well grounded in fact") (quotation omitted). The Complaint attacks Maricopa's use of computerized systems to count ballots, tabulate

8

results, and report vote totals. *E.g.* Compl. ¶ 67 ("After votes are tabulated at the county level using Dominion's electronic election management system in the Midterm Election, the vote tallies will be uploaded over the internet to an election reporting system"), ¶ 174 (tabulation of ballots using electronic system inflicts irreparable harm). *Arizona's use of paper ballots, which are then counted by computerized optical scanners and tabulated by a computerized Election Management System, has no effect on the substance of Plaintiffs' claims, and is presumed by Plaintiffs' claims.* If the Complaint had included another paragraph stating, "Arizonans, when they vote, create a paper ballot which is counted and tabulated by electronic equipment," this paragraph would not have contradicted any other in the Complaint or changed Plaintiffs' legal claims at all.

The Complaint seeks as relief an order that Arizona's election be "conducted by paper ballot." *Id*. ¶ 153. Maricopa (seemingly) reads into this request an inference that Arizona does not currently use paper ballots at all. *See* Mot. at 2. That inference is not reasonable, because the Complaint implicitly acknowledges that Arizona uses paper ballots, and because the focus of the Complaint is prohibition of the counting and tabulation of ballots using "centralized machine-counting or computerized optical scanners." *Id*. ¶ 154; *see id.* ¶¶ 14-15, 57, 67-68, 167, 170, 174.

The Complaint seeks elimination of reliance on electronic devices to count and tabulate ballots. Maricopa's unsupported claim that the Complaint alleges "Arizona does not use paper ballots," Mot. at 8, is wrong.

**Testing of Tabulation Machines**. Maricopa argues that the Complaint falsely alleges Arizona does not "test its tabulation machines," again without quotation or citation. Mot. at 8. Presumably, this argument refers back to Maricopa's prior citation – without quotation – of paragraphs 20, 57, and 69 in the Complaint. Mot. at 2. But none of these paragraphs say that Arizona does not test its tabulation machines.

- Paragraph 20 says "Defendant Hobbs's certification of the Dominion Democracy Suite 5.5b voting system, as well as its component parts, was improper, absent objective evaluation."

9

- Paragraph 57 says Arizona's electronic voting systems were not subjected to "neutral, expert analysis."
- Paragraph 69 says "Dominion has refused to disclose its software and other parts of its electronic voting system in order to subject it to neutral expert evaluation."

Seeking to controvert these allegations, Maricopa cites "County's MTD at 1-6," Mot. at 3, which cites Arizona statutory provisions and federal EAC documents, County's MTD at 3-4. A statutory requirement of testing does not prove that testing actually occurred. In any event, Plaintiffs dispute that the EAC process and Arizona's own certification process constitutes neutral, expert analysis. The two entities relied upon by the EAC to test electronic election systems are limited in their technical abilities and operate under strong incentives to approve equipment lest they lose business asking them to certify it, and they certify electronic election systems that can readily be hacked. *See* Tr. of July 21, 2022 Mot. Hearing at 115:7-19, 116:2-118:5, 126:3-127:3 (testimony of Clay Parikh); 32:8-14 (testimony of Benjamin Cotton); 62:11-63:21 (testimony of Douglas Logan); 161:15-22 (testimony of Ryan Macias); Logan Decl. ¶¶ 69, 78, 80, 87(d) (Doc. 39). Maricopa may have a different opinion, but Plaintiffs' allegations are reasonable and factually based. A party's disagreement whether a particular procedure constitutes "neutral, expert analysis" or "objective evaluation" is not sanctionable under Rule 11.

**Audit Election Results**. Maricopa asserts that the Complaint falsely alleges Arizona does not audit election results, again without quotation or citation. Mot. at 8. Presumably this assertion refers back to page 2 of the Motion, which without quotation claims the Complaint alleges "that Arizona's tabulation results are not subject to vote-verifying audits," citing paragraphs 23, 72, and 144-52 of the Complaint. Mot. 2. Again Maricopa mischaracterizes the Complaint.

- Paragraph 23 makes allegations concerning the characteristics of Arizona's electronic election equipment. It makes no allegation concerning whether Arizona's tabulation results are "subject to vote-verifying audits." Paragraph 23 does say that use of the equipment "without objective validation" violates

10

Arizonans' voting rights. That allegation means that it is inappropriate to rely on vote counts of optical scanners without an approval process conducted by truly neutral experts, as discussed above, and without objectively verifying them by hand counting all the ballots that pass through them in an election.

- Paragraph 72 similarly alleges that "vote tallies reported by electronic voting machines cannot, without objective evaluation, be trusted . . ."
- Paragraphs 144-52 allege that "Post-election audits do not and cannot remediate the security problems inherent in the use of electronic voting machines," and explain why this is the case.

Maricopa's assertion the Complaint falsely alleges "that Arizona's tabulation results are not subject to vote-verifying audits" is unfounded and mischaracterizes the Complaint.

Concerning audits, the Motion makes a generalized reference to "County's MTD at 1-6." Mot. at 3. Maricopa's previous motion to dismiss the Complaint claimed that Arizona's tabulation results are "subject to vote-verifying audits," citing "four audits of tabulations equipment and ballots." Doc. 27 at 4. But the "audits" that Maricopa cites are not *audits* of *a meaningful proportion of ballots*. The "audits" to which Maricopa refers are variously, "pre-election logic and accuracy tests" by the Arizona Secretary of State, "pre-election logic and accuracy test[s]" by individual counties, a "hand count audit of ballots following the election" citing "A.R.S. § 16-602(B)," and "post-election L&A conducted by the counties." Doc. 27 at 4-5. Three of these four purported "audits" are not audits of ballots at all; they are merely testing of electronic equipment.[1] The remaining item is a hand count of "up to five contested races" on the ballots of "At least two percent of the precincts" in each county, plus up to "five thousand early ballots." A.R.S. § 16-602(B)(1), (B)(2), (F). Such a minimal hand count is not by any reasonable

---

[1] Per software security expert Douglas Logan, logic and accuracy testing provides no assurance that computerized equipment will function correctly on Election Day. A computer can be programmed to count ballots accurately at all times except during specified conditions, such as on Election Day. *See* Logan Decl. ¶ 36 (Doc. 39).

11

characterization a "validation," "evaluation," or remediation of electronic election equipment. The minimal statutory hand count leaves 98% of Arizona's precincts *not* validated. Moreover, in 2020 over *1.9 million* early ballots were cast in Maricopa County, *see* Doc. 29-11 at 1, so hand counting a mere 5,000 of them would leave unchecked by hand counting in any way the computerized counting of 99.74% of early ballots. The statutory "audit" process that Maricopa cites does not prove any allegation in the Complaint false at all, much less "utterly without support." Maricopa's accusation that the Complaint falsely alleges "Arizona's tabulation results are not subject to vote-verifying audits," Mot. 2, mischaracterizes the Complaint and is baseless. Again, Plaintiffs have an abundance of evidence to support their allegations in the Complaint.

**Remaining Generalized Accusations**. Maricopa also accuses Plaintiffs of "numerous factual misstatements concerning Maricopa County, its tabulation machines' internet connections and the Cyber Ninjas' audit findings." Mot. 8. This accusation does not quote the alleged misstatements and does not provide any citation to identify them aside from a vague reference to "the reasons set forth above and at length in Defendant's MTD." *Id*. Presumably, these accusations are intended to relate back to the assertions on pages 3-5 of Maricopa's Motion. If so, it is understandable why Maricopa declines to precisely identify in its legal argument the alleged "misstatements," for pages 3-5 set forth a series of Maricopa County opinions and subjective judgments, not factual contradictions of any allegation in the Complaint. The actual allegations in the Complaint are powerful support for Plaintiffs' claims and are based on an abundance of evidence.

- Maricopa asserts that the Complaint speaks falsely when it characterizes 2020 Maricopa hand count as "a proof-of-concept and a superior alternative." Mot. 3. This statement, however, is a matter of judgment. A proof-of-concept is not a final, optimized system; it is a pilot project that demonstrates an idea is feasible. The 2020 Maricopa hand count showed a hand count can be done; it does not show the optimized method of doing it. Superiority can – and should, here – be judged based on the transparency of a vote counting process, not merely the speed or cost. The

12

Complaint does not make a misstatement of fact by characterizing the 2020 Maricopa hand count as a "proof-of-concept and a superior alternative."

- Maricopa unsurprisingly disagrees with the Cyber Ninjas' reports criticizing Maricopa's election administration practices. Mot. 3. The Cyber Ninjas provided reasoned explanations for their conclusions. Logan Decl. Ex. E (Doc. 39-1 at 122). A disagreement between two parties regarding the quality of work in which one criticized the other is not a misrepresentation; it is a routine feature of lawsuits.
- Maricopa claims that all its data from the 2020 election was preserved, citing to a public relations document published by the County. Mot. 3 (citing Doc. 29-14). This claim is not evidence of a misrepresentation by Plaintiffs. It is evidence that when the Arizona Senate subpoenaed all information about the 2020 election, Maricopa not only refused to comply with the subpoena, but further *kept secret the alleged existence of the data* in order to avoid being compelled to produce it. *Cf. id.* at 22 *with* Second Decl. of Benjamin R. Cotton Ex. V at p.4 of 24 (Doc. 89-1) (Arizona Senate Subpoena of "software for . . . the election management system used," "Forensic Images of Election Servers, Desktops," and "Election Log Files"). Maricopa's accusation, based on Maricopa's alleged secret trove of asked-for-but-undisclosed information, exhibits breathtaking chutzpah in addition to a fundamental misunderstanding what of a "misrepresentation" is. Maricopa faults Plaintiffs for concluding that data did not exist when the data was not produced by Maricopa in response to a state senate subpoena seeking it. If Plaintiffs erred, the error was trusting that Maricopa fulfilled its legal obligations in response to the Arizona Senate subpoenas.
- Maricopa claims that "Arizona does not use computerized voting." Mot. 4. Maricopa uses computerized ballot scanners to count votes, computerized ballot marking devices for some voters to cast ballots, and a computerized Election Management System to tabulate votes and report final results. *See* Tr. of July 21, 2022 Mot. Hearing at 172:21-173:16, 178:19-179:10, 180:4-182:3, 183:5-20

13

(Testimony of Scott Jarrett). This is a computerized voting system, notwithstanding the role that paper ballots play in it, because the *outcomes of the election contests* are determined by what computers *do* with the paper ballots. *E.g.* Compl. ¶¶ 14, 68, 151. Maricopa does not show – and cannot show – that the Complaint makes any false representation about computerized voting, or anything else. The allegations in the Complaint are supported by the record.

- Maricopa claims the Complaint and Plaintiffs' presentation in support of its Motion for Preliminary Injunction included evidence "unrelated to elections in Arizona." Mot. 4. This is false; evidence that computer networks elsewhere have been hacked and their security features defeated tends to make it "more . . . probable" that Arizona's election computers can and will be hacked or have their security features compromised, a fact which "is of consequence in determining" Plaintiffs' claims that Arizona's election computers can be and are likely to be hacked in future elections. *See* Fed. R. Evid. 401. Plaintiffs' evidence satisfies the test of Fed. R. Evid. 401, the governing standard.

- Maricopa claims its vote tabulation system "is not, never has been, and cannot be connected to the Internet." Mot. 5. Plaintiffs provided testimony from a highly qualified expert explaining how the system can be connected to the Internet, that there was evidence it *had* been connected to the Internet, and that (and how) it can be compromised even without connecting it directly to the Internet. Tr. of July 21, 2022 Mot. Hearing at 27:2-29:13 (Testimony of Benjamin Cotton).

Plaintiffs' discussion, in this memorandum, of Maricopa's accusations of unidentified, unquoted misrepresentations, Mot. at 8, is necessarily uncertain. <u>Plaintiffs do not know whether Maricopa is again playing hide-the-ball, as Maricopa claims to have done with respect to the Arizona Senate subpoena, and whether Maricopa intends to identify in its reply papers purported "misrepresentations" not covered here</u>. It should not matter. Neither Rule 11 nor 28 U.S.C. § 1927 permit imposition of sanctions without a movant precisely identifying what, purportedly, misrepresentation was made. *See* Fed. R.

14

Civ. P. 11(c)(2) (sanction motion must "describe the specific conduct"). The rule "neither penalizes overstatement nor authorizes an overly literal reading of each factual statement," *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993), so in order to meet its requirement of proving a "particular" allegation "is utterly lacking in support," *Storey*, 347 F.3d at 388, a party seeking sanctions must particularly identify the offending allegation and particularly explain why it contends the allegation is so egregiously wrong as to trigger sanctions. Instead of doing this, Maricopa has framed its legal argument around vague generalizations and mischaracterizations of the Complaint. Mot. at 8. Far from showing Plaintiffs violated Rule 11, Maricopa's accusations of misconduct are themselves a violation of its own obligations to the Court and to Plaintiffs.

### C. *King v. Whitmer* Is Not Remotely Similar to This Action.

Maricopa quotes *King v. Whitmer*, 556 F. Supp. 3d 680, 689 (E.D. Mich. 2021), broadly characterizing it as an "election-related challenge." Mot. at 8. *King* is not remotely on point with Plaintiffs' claims. The claims in *King* attempted to "decertify the election results" of a completed election, the *King* court found that plaintiffs' counsel "fail[ed] to dismiss this case when even they acknowledged it became moot," and the *King* court found that plaintiffs' counsel advanced factual assertions that were unsupported by "any evidence," submitted affidavits "based on conjecture, speculation, and guesswork," "failed to ask questions of the individuals who submitted affidavits that were central to the factual allegations," did not "engag[e] in a reasonable inquiry" as to the contents of affidavits from other lawsuits, and failed to inquire into "outlandish and easily debunked numbers" in another affidavit. *Id*. at 691, 708, 717-724.

None of these features of *King* are present in this action. Plaintiffs do not seek to decertify a completed election, do not present moot claims, do not lack evidence to support their allegations, do not rely on conjecture, speculation, or guesswork, and do not rely on affidavits that counsel failed to ask questions about. Plaintiffs have already presented testimony from multiple highly qualified expert witnesses, supporting their claims, in connection with their Motion for Preliminary Injunction.

15

Maricopa does not even attempt to show any meaningful similarity between this action and *King*. *See* Mot. at 8-9. Rather, Maricopa extracts language from *King*, calls both this case and *King* an "election-related challenge," and tries to tar Plaintiffs with its overbroad generalization. This is an attempt at rhetorical manipulation, not legal reasoning. By the same token, Plaintiffs' briefing cites many cases with "election-related challenges" in which the claims were meritorious, Pls.' Opp. to Sec. of State's Mot. to Dismiss at 4-5 (Doc. 58), which plainly shows that sanctions cannot be imposed here.

### III.
### MARICOPA'S 28 U.S.C. § 1927 MOTION IS BASELESS.

Maricopa concludes its frivolous sanctions motion by arguing the Court should impose sanctions on Plaintiffs' counsel under 28 U.S.C. § 1927. Mot. 10-11. This argument relies on Maricopa's same meritless assertions concerning Rule 11, Mot. 10, and additionally cites "inexplicable years-long delay in seeking relief." Mot. 11.

The "delay" issue was covered in detail in Plaintiffs' previous briefing. *See* Pls.' Opp. to Maricopa Defs.' Mot. to Dismiss 5-8 (Doc. 56). The same arguments apply here. There is nothing surprising, improper, or untoward about people learning facts about the election system that prompt them to take legal action concerning an issue they did not previously understand quite as fully. Again, it is hard to believe that Maricopa does not understand this. A defendant's unconstitutional conduct is not immunized against legal challenge merely because a certain amount of time passes before a plaintiff decides to challenge it. If that were the rule, cases like *Brown v. Board of Education* could not have overturned long-established but unconstitutional practices. As time passes, new information becomes available, and issues which may not have appeared important in the past gain new salience. Maricopa's "delay" argument would freeze in time as forever unchallengeable any government practice that is not immediately challenged in court. This is an absurd mischaracterization of the law, and Maricopa offers no authority to support the idea that a lawsuit is sanctionable as motivated by an improper purpose because the plaintiff did not bring the action as early as it could have. *See* Mot. at 11.

16

Section 1927 only applies if counsel "multiplies the proceeding" in a case "unreasonably and vexatiously" and does so with "subjective bad faith." 28 U.S.C. § 1927; *Kohler v. Flava Enters.*, 779 F.3d 1016, 1020 (9th Cir. 2015). Maricopa has not shown that any proceeding was "unreasonably" or "vexatiously" multiplied. Filing a motion seeking preliminary injunctive relief, supported by a wealth of evidence which the defendants do not provide any technical expert testimony or declaration to oppose, is neither unreasonable nor vexatious. Nor has Maricopa provided any evidence of subjective bad faith. *Even if* Plaintiffs' arguments were not ultimately successful, they are not frivolous. *Quantz v. Edwards*, 264 F. App'x 625, 629 (9th Cir. 2008) (unsuccessful claim not sanctionable); *United States v. Rico*, 619 F. App'x 595, 601-02 (9th Cir. 2015) ("inappropriately broad subpoena" not sanctionable).

The only unreasonable and vexatious multiplication of proceedings in this action is the Maricopa Motion itself. At least one federal court has denied a Rule 11 motion brought by a party that was "based on clear distortions of plaintiff's assertions" and "set up a straw man they could easily knock over" – and that court then imposed sanctions under 28 U.S.C. § 1927 *against the moving party* that engaged in such distortion. *Franklin v. H.O. Wolding, Inc., Grp. Health & Welfare Plan*, No. 1:04-cv-0367-DFH-WTL, 2004 U.S. Dist. LEXIS 26592, at *14, 18 (S.D. Ind. Dec. 8, 2004). In *Franklin* the court focused on the "essential thrust of this case" in evaluating the plaintiff's statements, rather than the moving party's distortions of the plaintiff's statements. *Id*. *Franklin* provides an appropriate model for the Court to follow in addressing Maricopa's Motion.

## IV.
## CONCLUSION

Maricopa County's Motion for Sanctions, at bottom, demands the Court sanction Plaintiffs for disagreeing with Maricopa's self-serving legal positions. This argument falls miles short of the standard for imposing sanctions. The Motion should be denied and Maricopa sanctioned under § 1927 for bringing it.

DATED: August 24, 2022

**PARKER DANIELS KIBORT LLC**

By */s/ Andrew D. Parker*
   Andrew D. Parker (AZ Bar No. 028314)
   Jesse H. Kibort (MN Bar No. 328595)*
   Joseph A. Pull (MN Bar No. 0386968)*
   888 Colwell Building
   123 N. Third Street
   Minneapolis, MN 55401
   Telephone: (612) 355-4100
   Facsimile: (612) 355-4101
   parker@parkerdk.com
   kibort@parkerdk.com
   pull@parkerdk.com

**OLSEN LAW, P.C.**
By */s/ Kurt Olsen*
   Kurt Olsen (D.C. Bar No. 445279)*
   1250 Connecticut Ave., NW, Suite 700
   Washington, DC 20036
   Telephone: (202) 408-7025
   ko@olsenlawpc.com

By */s/ Alan M. Dershowitz*
   Alan M. Dershowitz (MA Bar No. 121200)*
   1575 Massachusetts Avenue
   Cambridge, MA 02138
   * Admitted *Pro Hac Vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2022, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants on record.

                                                                   */s/ Andrew D. Parker*