Emily Craiger (Bar No. 021728)
emily@theburgesslawgroup.com
THE BURGESS LAW GROUP
3131 East Camelback Road, Suite 224
Phoenix, Arizona 85016
Telephone: (602) 806-2100

RACHEL H. MITCHELL
MARICOPA COUNTY ATTORNEY

By:   Thomas P. Liddy (019384)
      Joseph J. Branco (031474)
      Joseph E. LaRue (031348)
      Karen J. Hartman-Tellez (021121)
      Deputy County Attorneys
      MCAO Firm No. 0003200

CIVIL SERVICES DIVISION
225 West Madison St.
Phoenix, Arizona 85003
Telephone (602) 506-8541
Facsimile (602) 506-8567
liddyt@mcao.maricopa.gov
brancoj@mcao.maricopa.gov
laruej@mcao.maricopa.gov
hartmank@mcao.maricopa.gov
ca-civilmailbox@mcao.maricopa.gov

*Attorneys for the Defendant
Maricopa County Board of Supervisors*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Kari Lake and Mark Finchem,<br><br>Plaintiffs,<br><br>vs.<br><br>Kathleen Hobbs, et al.,<br><br>Defendants. | No. 2:22-cv-00677-JJT<br><br>**MARICOPA COUNTY DEFENDANTS' REPLY IN SUPPORT OF RULE 11 AND 28 U.S.C. § 1927 MOTION FOR SANCTIONS**<br><br>(Honorable John J. Tuchi) |

Defendants Bill Gates, Clint Hickman, Jack Sellers, Thomas Galvin, and Steve Gallardo in their official capacities as members of the Maricopa County Board of Supervisors ("the County") respectfully reply in support of their motion (the "Motion") for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. Plaintiffs' Response in Opposition (the "Response") further demonstrates the frivolous nature of this suit and sanctionable conduct on the part of Plaintiffs' counsel. The Response regurgitates the same baseless allegations in the First Amended Complaint ("FAC"), and claims factual allegations in the FAC do not have their plain meaning. Moreover, the Response itself contains numerous misrepresentations, providing further bases for an award of sanctions.

**I. Plaintiffs' brought a frivolous lawsuit with no factual or legal basis in violation of Rule 11.**

Rule 11 requires that before an attorney files a pleading, motion or other paper in court, the attorney must first determine that the allegations therein are supported by an objectively reasonable legal and factual basis. *Truesdell v. S. Cal. Permanente Med. Grp.*, 209 F.R.D. 169, 173 (C.D. Cal. 2002). Plaintiffs' counsel did not meet their Rule 11 obligations.

**a. Plaintiffs' counsel knew or should have known there was no evidence to support the allegations in their FAC that Arizona voting systems are vulnerable to hacking and malicious manipulation.**

The Response consists primarily of Plaintiffs restating the same erroneous factual assertions contained in the FAC and making conclusory statements that, for example, "Plaintiffs' Complaint and Motion for Preliminary Injunction far surpass" the Rule 11 threshold. (Response at 3) As evidenced by this Court's August 26, 2022, Order dismissing this case in its entirety, Plaintiffs' conclusory statements are incorrect and insufficient to show they have met their Rule 11 obligations. (Doc. 100)

For instance, in dismissing this case, the Court found no factual basis for the allegations in the FAC that Arizona's "electronic voting systems do not provide a secure, transparent, or reliable vote count." (Response at 3, citing FAC paragraphs 71-89). The

1

Court made its determination based on publicly available information that is *"not subject to reasonable dispute* pursuant to Fed. R. Evid. 201(b)(2)." (Doc. 100 at 7 n.5) Indeed, the Court held there was no plausible basis for Plaintiffs' claims that Arizona's ballot tabulation equipment is vulnerable to security failures. Specifically finding,

> Defendants have taken numerous steps to ensure such security failures do not exist or occur in Arizona or Maricopa County. As the Court chronicled in painstaking detail in Section I.B., every vote cast can be tied to a paper ballot (*see* A.R.S. §§ 16-442.01; § 16-446(B)(7); 2019 EPM at 80), voting devices are not connected to the Internet (*see* Doc. 29, Ex. 6) any ports are blocked with tamper evidence seals (*see* Tr. 177:5-20), and access to voting equipment is limited (*see* Tr. at 179:15-20)

(*Id*. at 15 n.13)

Had Plaintiffs' counsel engaged in the bare minimum Rule 11 factual and legal investigation required, they would have come to the same conclusion. Thus, they either failed to do so—or, they did the proper investigation, but improperly pursued their claims anyway. Under either scenario, they have violated Rule 11.

Worse, County counsel raised these concerns with Plaintiffs' counsel at the outset of this case, in its May 20, 2022 correspondence, giving them ample opportunity to either amend or withdraw the FAC. (Motion, Ex. 1, May 20, 2002, Correspondence) Among other things, County's counsel explained that it "disputes these unfounded assertions regarding the unreliability of machine counting and that the Amended Complaint contains a single plausible factual allegation that supports the existence of these vulnerabilities in Maricopa County." *Id*. The County also provided the link to the publicly available final report of the Special Master arranged for by the Arizona Senate and Maricopa County that debunked the baseless assertions in the FAC. *Id*.  Nevertheless, Plaintiffs continued to pursue these frivolous claims, wasting valuable time, taxpayer money and judicial resources. Plaintiffs' counsels' conduct violated Rule 11.

### b. **Plaintiffs' counsel knew or should have known there was no legal basis for their claims.**

Plaintiffs' bizarre comparison of elections in Arizona to the Covid-19 pandemic further evidences their failure to do the bare minimum legal analysis before bringing their claims. (Response at 5) Specifically, they assert their baseless pleading in Federal Court is akin to a fictional "Cassandra" telling hospitals in Arizona to prepare to treat Covid-19 patients in Arizona in January of 2020. *Id*. As an initial matter, Defendants wonder, again, whether Plaintiffs have any communication at all with their own clients, in particular Mr. Finchem who has publicly questioned the existence of Covid-19. https://www.cnn.com/2022/02/16/politics/trump-mark-finchem-arizona-secetary-state-kfile/index.html.

But, more importantly, Plaintiffs' statement, on page 5 of the Response, that they were not required to provide any evidence of ballot manipulation and they had sufficient basis to pursue their claims because, "an absence of undisputed evidence that a particular harm has happened before in a particular location does not prove that the harm cannot happen in the future, particularly where similar events have happened elsewhere" shows that Plaintiffs ignored the basic pleading standards necessary in Federal Court. *See e.g. Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (to meet the standing requirement a threatened injury must be "actual or imminent" and "certainly impending", "allegations of possible future injury are not sufficient"). The most basic legal research concerning the threshold issue in any litigation – whether a party has standing - easily would have revealed that this theory of the case, based on pure conjecture and speculation, is insufficient to give Plaintiffs standing to pursue their claims in Federal Court. Plaintiffs' counsel violated Rule 11.

## II. Plaintiffs Cannot Rewrite the FAC Now.

In its Motion, Defendants identified three specific areas in which counsel for Plaintiffs asserted clearly erroneous facts: (1) that Arizona voters do not vote by hand on paper ballots. (FAC, ¶¶ 7, 58-60, 153). (2): that Arizona's election equipment is not

independently tested by experts. (FAC, ¶¶ 20, 57, 69) and (3) that Arizona's tabulation results are not subject to vote-verifying audits. (FAC, ¶¶ 23, 72, 144-52.) Plaintiffs' Response attempts to rewrite the FAC, asserting that words to do not have their plain meaning.  These misguided efforts are insufficient to overcome Rule 11 sanctions.

Indeed, Plaintiffs inexplicably assert that they knew all along that Arizona uses paper ballots and the FAC "presumed" this fact. (Response at 8) A review of FAC paragraph 153 alone belies this assertion; it states, "Plaintiffs seek for the Court to Order (sic), an election conducted by paper ballots, as an alternative to the current framework." (FAC ¶ 153) This sentence could not be more clear.  Further, if, in fact, Plaintiffs requested relief - requiring paper ballots - that they knew already existed and was legally required in Arizona, the County is hard-pressed to find a more frivolous claim for relief or larger waste of judicial resources.

Plaintiffs also assert that the County unreasonably "read" into their request for an order that Arizona's election be "conducted by paper ballot", an "inference that Arizona does not currently use paper ballots". (Response at 9) If that is the case then, evidently (according to Plaintiffs' theory) the Court is similarly unreasonable. Indeed, the Court's Order dismissing this case specifically addresses that "every Arizona voter casts a ballot by hand on paper" and explains in detail that this is both currently required by Arizona law and the practice in Arizona. (Doc. 11 at 8-9) Moreover in its Order dismissing this matter, the Court states, "[i]n any event, insofar as Plaintiffs argue a constitutional violation grounded in Arizona's failure to require voting by paper ballots, there allegations are flatly wrong…" (Doc. 100 at 17 n.15)

Plaintiffs also assert that their references to paper ballots in the FAC are "immaterial" and that "immaterial discrepanc[ies]" do not justify Rule 11 sanctions. (Response at 8-9)  As an initial matter, Plaintiffs cite to inapposite cases, none involving election administration, from outside the 9th Circuit for this proposition.[1] *Id*. Nevertheless,

---

[1] For instance, *Kiobel v. Millson*, 592 F. 3d 78 (2d. Cir. 2010) involved a factual error regarding a party unintentionally adding $3,000 to a damages figure at issue.  The Court

4

even if this were the status of the law in the 9th Circuit, Plaintiffs' allegations concerning paper ballots are not "immaterial." Arizona's use of paper ballots is a critical component of Arizona's election administration because they "can be used in event of an audit." (Doc. 100 at 8) Moreover, Plaintiffs heavily relied on *Curling v. Raffensperger*, No. 1:17-CV-2989-AT (N.D. Ga. Feb. 3, 2022), throughout their pleadings, both the findings of the court in that matter and the expert testimony provided by Professor J. Alex Halderman. But that case hinged, in large part, on the fact that Georgia did not use paper ballots or have an auditable paper trail. But, as the Court rightly pointed out, Professor Halderman clearly indicated that a state could "eliminate or greatly mitigate" most of the risks and concerns upon which he opined by the use of paper ballots, and "[t]his is already the practice in Arizona." (Doc. 100 at 8 n.7 (*citing Curling*, No. 1:17-CV-2989-AT (N.D. Ga. Feb. 3, 2022)). Plaintiffs did not inform the Court of this fact. Their failure to do so, coupled with the way they chose to characterize the *Raffensperger* decision and the Halderman declaration, constitute a material misrepresentation of law and fact that might have been an attempt to mislead this Court.

Plaintiffs similarly assert that they never claimed Arizona does not test its machines or audit its elections results. (Response at 8-9) They also attempt to re-write their FAC by claiming that their allegation was only that Arizona's election equipment is not tested by neutral experts. But, as just one example, Paragraph 2 of the FAC states, "[t]he use of <u>untested</u> and <u>unverified</u> voting machines violates the rights of Plaintiffs and their fellow voters and office seekers, and it undermines public confidence in the validity of election results." The terms "untested" and "unverified" could not be more clear. Plaintiffs may concede *now*, when facing a motion for sanctions, that the election equipment used by the County and all the counties in Arizona undergo testing. But that is not what the FAC alleged.

---

found it was an "isolated factual error" made in good faith, nothing like the numerous and blatant misstatements at issue in this matter. *Id*. at 83.

Likewise as to Plaintiffs' allegation that "[t]he recent hand count in Maricopa County, the second largest voting jurisdiction in the United States, offers Defendant Hobbs a proof-of-concept and a superior alternative to relying on corruptible electronic voting systems" (FAC, ¶ 155) Plaintiffs assert this is a "matter of judgment" and "superiority can – and should, here – be judged based on the transparency of a vote counting process, not merely the speed or cost." (Response at 12) This nonsensical explanation has nothing to do with the actual allegations in Plaintiffs' FAC or the claims they assert. Plaintiffs claimed that Arizona's machine tabulation of ballots cannot be trusted to provide accurate election results and asserted the Cyber Ninjas "audit" proves hand counting is more accurate. But, this is incorrect and the Court found accordingly when it addressed Plaintiffs' request for Preliminary Injunction via footnote. Specifically, the Court found,

> Not only do Plaintiffs fail to produce any evidence that a full hand count would be more accurate, but a hand count would also require Maricopa County to hire 25,000 temporary staff and find two million square feet of space..."

(Doc 100 at 2 n.1).

### III. Representations in the Response Alone Justify an Award of Sanctions.

Plaintiffs assert that "Maricopa does not dispute the legal theory behind Plaintiffs' constitutional claims[.]" (Response at 4) This is patently false. Maricopa County moved for dismissal of this matter, on several bases, including Plaintiffs' failure to allege a cognizable legal theory. Specifically, the County's motion to dismiss separately addressed the absence of any legal basis for Plaintiffs' "fundamental right to vote," equal protection, § 1983, and § 2201 claims. (Doc. 27 at 14-19) The County also articulated its intended bases for requesting dismissal in its May 20, 2022, correspondence. (Motion, Ex. 1, May 20, 2002, Correspondence)

Plaintiffs' Response also misrepresents the record in this matter. Plaintiffs assert that the specific harm they sought to prevent in the FAC "has specifically happened in Arizona before" claiming that Professor Walter Daugherity's nonsensical report proves that there was "'artificial control' manipulation of ballots during the 2020 election in

6

Maricopa County." (Response at 4) Plaintiffs falsely assert that "[n]one of the Defendants provided any evidence whatsoever to contradict Daugherity's analysis, leaving it undisputed in the record." *Id*. This is absolutely false.

First, Mr. Jarrett's testimony along with the Maricopa County Defendants' detailed rebuttal to the Cyber Ninjas' report entirely rebuts any allegation that any manipulation of vote totals occurred in Maricopa County in 2020. In addition, all Defendants in this matter moved to strike Daugherity's testimony in its entirety because, among other reasons, "[h]is methodology defies all explanation and logic, and Daugherity provides no evidence that it has ever been subject to peer review or has any level of acceptance within the scientific community." (Doc. 74, Motion to Strike, at 7. *See also* Doc. 75, Maricopa County's Joinder) Further, as the Court pointed out in its Order, even Cyber Ninja's own report, that Plaintiffs offered into evidence, contradicts Daugherity's alleged theory in finding,

> [T]here were no substantial differences between the hand count of the ballots provided and the official election canvass results for Maricopa County. This is an important finding because the paper ballots are the best evidence of voter intent and there is no reliable evidence that the paper ballots were alter to any material degree."

(Doc. 100 at 4 n.2 (*quoting Maricopa County Forensic Election Audit*, Volume I at 1-3).

### IV. Plaintiffs' Counsel Violated Section 1927.

Plaintiffs' continued pursuit of its claims, long after the Maricopa County Defendants' counsel alerted them to their futility, violates Section 1927 and Plaintiffs offer no reasonable basis for the Court to find otherwise. "Section 1927 authorizes the imposition of sanctions against any lawyer who wrongfully proliferates litigation proceedings once a case has commenced." *Pacific Harbor Capital, Inc. v. Carnival Air Lines, Inc.*, 210 F.3d 1112, 1117 (9th Cir. 2000).

In particular, Plaintiffs violated Section 1927 when they moved for injunctive relief after the County clearly alerted them, especially in its May 20, 2022 correspondence and also its Motion to Dismiss, to the fact that there was no legal basis and, even if there was, the *Purcell* principle barred an injunction in this matter. (Motion, Ex. 1, May 20, 2002,

Correspondence).  This Court agreed, finding Plaintiffs could not meet a single *Winter* factor and their request was barred by *Purcell* . (Doc. 100 at 2 n.1 and 18-20)

Plaintiffs' improper conduct forced the Court to hold a lengthy preliminary injunction hearing that wasted judicial resources. Most troubling is that Plaintiffs, their financial backer, Michael Lindell, and their counsel attempted to use this hearing as a further effort to promote their disinformation campaign about Arizona elections and election integrity. Sadly, this resulted in the County's witness and counsel being confronted upon exiting the courtroom by someone who had watched the proceedings, who called them "liars" and "traitors." These events were subsequently posted on the internet, furthering this false narrative that the election equipment and results cannot be trusted. https://rumble.com/v1dip13-no-evidence-of-election-fraud-gail-golec-challenges-attorneys.html. The video shows that Mr. Lindell participated in these verbal attacks. This likely would not have happened had Plaintiffs and their counsel not filed a baseless lawsuit alleging nonexistent problems with Arizona's election equipment. This is just one example of the unfortunate and detrimental consequences of attorneys violating their Rule 11 obligations and filing baseless and frivolous lawsuits concerning election integrity. Attorneys must be held to a higher standard.

**V.     Conclusion**

Plaintiffs' counsel has shown a pattern of improper conduct throughout this litigation.  As addressed above and in the Motion, they have continued to pursue baseless and frivolous claims and sought injunctive relief that was time-barred.  In addition, as the Court pointed out in its Order, Plaintiffs falsely asserted in open court that they were not asserting claims based on state law when the FAC repeatedly made such allegations. (Doc. 100 at 18 n.16) Further, they engaged in "potential gamesmanship" by requesting to supplement the record after the hearing in this matter. (*Id*. at 21 n.17) For these reasons, pursuant to Rule 11 and Section 1927, the County seeks its reasonable attorneys' fees incurred from the date that Plaintiffs filed the First Amended Complaint up until the Court's ruling on the present motion, or in an amount the Court deems sufficient "to deter

8

repetition of such conduct or comparable conduct by others similarly situated." Fed R. Civ. P. 11(c)(4).

RESPECTFULLY SUBMITTED this 31st day of August, 2022.

                                      THE BURGESS LAW GROUP

                                      BY: */s/ Emily Craiger*
                                              Emily Craiger


                                      RACHEL H. MITCHELL
                                      MARICOPA COUNTY ATTORNEY

                                      BY: Thomas P. Liddy
                                             Joseph J. Branco
                                             Joseph E. La Rue
                                             Karen J. Hartman-Tellez
                                             Deputy County Attorneys


                                      *Attorneys for the Defendant*
                                      *Maricopa County Board of Supervisors*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2022, I electronically transmitted the foregoing document to the following:

Alan M Dershowitz
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
dersh@law.harvard.edu
alandersh@gmail.com

Andrew D Parker
Jesse Hersch Kibort
Parker Daniels Kibort LLC
123 N 3rd St., Ste. 888
Minneapolis, MN 55401
parker@parkerdk.com
kibort@parkerdk.com

```
 1  Kurt B Olsen
    Olsen Law PC
 2  1250 Connecticut Ave. NW, Ste. 200
    Washington, DC 20036
 3  ko@olsenlawpc.com

 4  Christine Bass
    States United Democracy Center - Los Angeles, CA
    506 S Spring St., Ste. 13308
 5  Los Angeles, CA 90013
    christinebass@statesuniteddemocracy.org
 6
    David Andrew Gaona
 7  Kristen Michelle Yost
    Roopali H Desai
 8  Coppersmith Brockelman PLC
    2800 N Central Ave., Ste. 1900
 9  Phoenix, AZ 85004
    Agaona@cblawyers.com
10  kyost@cblawyers.com
    rdesai@cblawyers.com
11

12  Sambo Dul
    States United Democracy Center
13  8205 South Priest Dr., Ste. #10312
    Tempe, AZ 85284
14  480-253-9651
    bo@statesuniteddemocracy.org
15
    Daniel S Jurkowitz
16  Pima County Attorneys Office
    32 N Stone Ave., Ste. 2100
17  Tucson, AZ 85701
    Daniel.Jurkowitz@pcao.pima.gov
18
    Michael Kielsky
19  Davillier Law Group LLC
    4105 N 20th St., Ste. 110
20  Phoenix, AZ 85016
    MK@USazLaw.com
21

22

23  /s/ Dana N. Troy
```

10